Shawn C. Groff (SBN 248022)
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile: (510) 272-0174    .

Attorneys for Defendants San Francisco Culinary Bartenders and
Service Employees Pension Fund

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANITA E. SUGUITAN AND JOHN SUGUITAN, | Case No. C 07-05113 JSW |
| Plaintiffs, | DECLARATION OF KIRSTEN BROOKS |
| v. | |
| SAN FRANCISCO CULINARY BARTENDERS AND SERVICE EMPLOYEES PENSION FUND, | |
| Defendants. | |

I, Kirsten Brooks, am employed by Associated Third Party Administrators, which provides administrative and record keeping services for the San Francisco Culinary, Bartenders and Services Employees Trust Funds ("Trust Funds"). These Trust Funds include the San Francisco Culinary Bartenders and Service Employees Pension Fund ("Pension Fund"). I am the Fund Manager for the Trust Funds and have worked in this capacity for over 25 years. I have personal knowledge of the facts set forth below and could and would competently testify to them if called as a witness in this matter .

1.    Associated Third Party Administrators is responsible for the record keeping of all of the Pension Fund's records.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

2.    On or about May 1, 1971, Pedro Suguitan, a former Participant in the Pension Fund, retired from employment and applied for his pension benefits from the Pension Fund.

3.    At the time of Pedro Suguitan's retirement the available forms of pension benefit from the Pension Fund were a single life annuity, which consisted of lifetime monthly payments to the participant with no survivor benefit, or a joint pension, which consisted of lifetime payments to the participant and a survivor benefit to his spouse at the time of his retirement. The joint pension was a benefit form added to the Pension Fund Plan document by a 1969 Amendment to the Plan document, which was previously enacted in 1958. A copy of Amendment No. Eleven to the Pension Fund Plan Document, which became effective on November 11, 1969, is attached hereto as Exhibit A. These benefit form provisions are also set forth in Article 4 and 6 of the current Pension Fund's Summary Plan Description ("SPD") and Plan document, a true and accurate copy of which is attached hereto as Exhibit B.

4.    The Pension Fund's records reflect that at the time of Pedro Suguitan's retirement he was married to Prudencia Suguitan.

5.    The Pension Fund's records also indicate that Pedro Suguitan elected to receive his benefit in the form of a life annuity.

6.    The Pension Fund's records indicate that Prudencia Suguitan died on July 24, 1972.

7.    Pedro Suguitan continued to receive monthly pension benefits from the Pension Fund until his death on December 27, 1997. A true and accurate copy of Pedro Suguitan's Certificate of Death is attached hereto as Exhibit C.

8.    The monthly pension benefits paid to Pedro Suguitan from 1971 to his death in 1997 were the only benefits payable to anyone based upon Pedro Suguitan's employment and corresponding contributions made to the Pension Fund resulting in the accrued benefit paid to Pedro Suguitan.

9.    Neither the current Pension Fund Plan document nor the Plan document in effect at the time of Pedro Suguitan's retirement  provided for any "Family Protection Plan" for any participant, former participant or retiree of the Plan or their dependents. A true and accurate

2

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

copy of the Pension Trust's Plan document in existence in 1971, at the time of Pedro Suguitan's retirement, is attached hereto as Exhibit D.

10. Neither the current Pension Fund Plan document nor the Plan document in effect at the time of Pedro Suguitan's retirement provide for any benefit to surviving children or dependents of a Participant, including John Suguitan.

11.    Because Pedro Suguitan chose the life annuity form of benefit, no survivor or spousal benefits were available or owed to Prudencia Suguitan or any future spouses and/or dependents including, but not limited to, Juanita E. Suguitan and John Suguitan.

12.    Even if Pedro Suguitan had elected to receive his pension benefits in the joint pension form, the only individual who would have been eligible for any survivorship benefits would have been Prudencia Suguitan, had she survived Pedro Suguitan.

13.    On or about April 21, 2006, Juanita E. Suguitan sent a letter to the Pension office requesting benefits from the Pension Fund. A true and accurate copy of the April 21, 2006 letter from Juanita E. Suguitan is attached hereto as Exhibit E.

14. On June 27, 2006 Juanita E. Suguitan's request for life insurance, widow and educational benefits was denied by the Pension Fund office. A true and accurate copy of the June 27, 2006 letter from the Pension Fund office is attached hereto as Exhibit F.

15.    On July 11, 2006, Juanita E. Suguitan submitted an additional letter to the Pension Fund office in request of survivor and death benefits. A true and accurate copy of this July 11, 2006 letter is attached hereto as Exhibit G.

16.    On August 17, 2006, Juanita E. Suguitan sent an additional letter to the Pension Fund , in support of her claim for benefits. A true and accurate copy of this August 17, 2006 letter is attached hereto as Exhibit H.

17.    On September 6, 2006 the Pension Fund office sent another letter to Juanita E. Suguitan, again explaining the denial of benefits and advising her of her appeal rights. A true and accurate copy of this September 6, 2006 letter is attached hereto as Exhibit I.

DECLARATION OF KIRSTEN BROOKS

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

18.    On September 29, 2006, Juanita E. Suguitan essentially appealed the Pension Fund office's decision to the Board of Trustees. A true and accurate copy of Juanita E. Suguitan's September 29, 2006 request is attached hereto as Exhibit J.

19.    On October 18, 2006, the Pension Fund office sent Juanita E. Suguitan a letter requesting additional information regarding her appeal of the denial of benefits. A true and accurate copy of the Pension Fund's October 18, 2006 letter is attached hereto as Exhibit K.

20.    On October 31, 2006, the Pension Fund office sent Juanita E. Suguitan another letter indicating that her appeal would be heard at the Pension Fund's November, 2006 Board of Trustees meeting. A true and accurate copy of this October 31, 2006 letter is attached hereto as Exhibit L.

21.    On November 30, 2006, the Board of Trustees for the San Francisco Culinary, Bartenders and Services Employees Pension Fund considered the appeal filed by Juanita E. Suguitan and, upon a full and fair review, denied Juanita E. Suguitan's appeal.

22.    On December 7, 2006, the Plan office forwarded a letter to Juanita E. Suguitan informing her of the Board of Trustee's denial of her appeal regarding survivor benefits related to Pedro Suguitan. A true and accurate copy of the December 7, 2006 letter is attached hereto as Exhibit M.

23.    On December 22, 2006 Juanita E. Suguitan sent the Plan office a letter regarding the denial of any benefits to be paid to her. A true and accurate copy of this December 22, 2006 letter is attached hereto as Exhibit N.

24.    On February 5, 2007, I sent Juanita E. Suguitan another letter reiterating that her appeal regarding her claim for benefits had been denied and the reasons for such denial. A true and accurate copy of this February 5, 2007 letter is attached hereto as Exhibit O.

25.    On April 5, 2007 the Pension Fund's counsel sent a letter to Juanita E. Suguitan to again explain the Pension Fund's denial of her appeal. A true and accurate copy of Shawn C. Groff's April 5, 2007 letter is attached hereto as Exhibit P.

26.    On April 6, 2007 the Pension Fund's counsel sent a letter to John Suguitan to explain the Pension Fund's denial of Juanita E. Suguitan's appeal and inviting John Suguitan to

notify the Fund office of any claim for benefits from the Pension Fund. A true and accurate copy of Shawn C. Groff's April 6, 2007 letter is attached hereto as Exhibit Q.

27.    On May 11, 2007 the Pension Fund's counsel sent a letter to John Suguitan to explain the Pension Fund's denial of Juanita E Suguitan's appeal and again inviting him to notify the Fund office of any claim for benefits. A true and accurate copy of Shawn C. Groff's May 11, 2007 letter is attached hereto as Exhibit R.

28.    On July 5, 2007, John Suguitan sent a letter to counsel for the Pension Fund setting forth his "claim for benefits." A true and accurate copy of this February 5, 2007 letter is attached hereto as Exhibit S.

29.    On July 25, 2007 the Pension Fund's counsel sent a letter to John Suguitan acknowledging the receipt of his "claim for benefits." A true and accurate copy of Shawn C. Groff's July 25, 2007 letter is attached hereto as Exhibit T.

30.    On September 27, 2007 the Fund office sent John Suguitan a letter denying his request for survivorship or any other benefits from the Pension Fund. A true and accurate copy of this letter is attached hereto as Exhibit U.

31.    To date, John Suguitan has not filed an appeal of the Pension Fund's September 27, 2007 denial of benefits with the Pension Fund office.

32.    The only death benefit available to any survivors of Pedro Suguitan was the $2,000 death benefit which was paid to Juanita E. Suguitan by the San Francisco Culinary Bartenders and Service Employees Health and Welfare Fund. A true and accurate copy of a January 7, 2008 letter from Mutual of Omaha which indicates that death benefits, in the amount of $2,000, were paid to Juanita E. Suguitan on March 24, 1998, is attached hereto as Exhibit V.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this _8th_ day of August, 2008, in ___Alameda___, California.

Kirsten Brooks

DECLARATION OF KIRSTEN BROOKS

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612
TELEPHONE: (510) 272-0169    FAX (510) 272-0174

**PROOF OF SERVICE**

I am a citizen of the United States and am employed in Alameda County. I am over the age of eighteen (18) years and not a party to the within action. My business address is 1330 Broadway, Suite 1450, Oakland, CA 94612. On August 11, 2008 I served the following document(s):

### DECLARATION OF KIRSTEN BROOKS

by placing a true copy thereof enclosed in a sealed envelope and served in the manner and/or manners described below to each of the parties herein and addressed as below or stated on the attached service list:

<table>
<tr><td>John Suguitan</td><td>Juanita Suguitan</td></tr>
<tr><td>2509 La Union</td><td>2509 La Union</td></tr>
<tr><td>Gonzales, Tubao</td><td>Gonzales, Tubao</td></tr>
<tr><td>Philippines 601</td><td>Philippines 601</td></tr>
<tr><td>Email: john_suguitan12@yahoo.com.ph</td><td></td></tr>
</table>

___X___ **BY ELECTRONIC MAIL:** I caused said document(s) to be transmitted to email address(es) designated.

_____ **BY FACSIMILE:** I caused said document(s) to be transmitted to the fax number(s) of the addressee(s) designated.

___X___ **BY MAIL:** I caused such envelope to be deposited in the mail at my business address, addressed to the addressee(s) designated. I am readily familiar with LEONARD, CARDER's practice for collection and processing of correspondence and pleadings for mailing. It is deposited with the United States Postal Services on that same day in the ordinary course of business.

___X___ **BY UPS INTERNATIONAL COURIER SERVICE:** I caused such envelope(s) to be delivered via UPS International courier service to the addressee(s) designated.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Oakland, California, on August 11, 2008.


_____/s/ Kathleen Hayes_____
Kathleen Hayes

**EXHIBIT A**





# AMENDMENT NUMBER ELEVEN TO SAN FRANCISCO CULINARY, BARTENDERS AND SERVICE EMPLOYEES PENSION PLAN AND TRUST AGREEMENT

Article X of the SAN FRANCISCO CULINARY, BARTENDERS AND SERVICE EMPLOYEES PENSION PLAN AND TRUST AGREEMENT is hereby amended by adding thereto a new Section, Section (6) as follows:

"Section 6.  Joint-and-Survivor Option.  In lieu of the pension otherwise payable to him, a member entitled to a normal or early retirement pension may elect to receive payment on a joint-and-survivor option, in accordance with which he will receive a lower monthly amount, but with 50 per cent of that lower amount continuing after his death for the lifetime of a contingent annuitant named by him.  The adjustment in benefit amount shall be determined on the basis of actuarial equivalence considering the sex of the member and his age when payment in the optional form is to commence and the age and sex of his contingent annuitant.

Election of the joint-and-survivors option shall be subject to the following conditions.

a.   It must be made in writing and filed with the Trustees.

b.   Such election may be made up to the date of retirement.

c.   The contingent annuitant may only be the member's spouse.

d.   Once elected, and payments started, the joint-and-survivor option may not be revoked.

e.   Such option is not available if application is made and subsequently granted for a disability pension."

**EXHIBIT B**

# San Francisco Culinary Bartenders and Service Employees

## PENSION TRUST FUND
Restated Pension Plan

Fondo de Pensiones de los Empleados
Culinarios, Cantineros y Empleados
de Servicio de San Francisco.

### PLAN DE
### PENSIONES ENMENDADO

三藩市廚業、酒吧及
侍應職員們
工積信託基金
新工積金計劃

*Summary Plan Description*
*Resumen Descriptivo del Plan*

計劃內容簡介

**APRIL 1, 1994**

# San Francisco Culinary, Bartenders and Service Employees Pension Plan

## Introduction

This booklet consists of three (3) parts. Part I is a series of questions and answers explaining the main features of the Pension Plan and how it affects the members. Part II is the Plan document itself as amended through April 1, 1993. Part III is the supplement consisting of the information required by the Employee Retirement Income Security Act (ERISA).

If you have any questions about the operation of the Plan, information may be obtained from the Fund Manager whose office is located at 501 Second Street, Suite 212, San Francisco, California 94107 (Telephone (415) 777-3707).

**YOU SHOULD KEEP THIS SUMMARY PLAN DESCRIPTION FOR FUTURE REFERENCE.**

This booklet contains a summary in English of your plan rights and benefits under the San Francisco Culinary, Bartenders and Service Employees Pension Plan. If you have difficulty understanding any part of this booklet, contact the Fund Manager's office, 501 Second Street, Suite 212, San Francisco, California 94107. Office hours are from 8:30 to 5:00, Monday through Thursday and 9:00 to 2:00, Friday. You may call the Fund Manager's office at (415) 777-3707 for assistance.

i

# Fondo de Pensiones de Empleados Culinarios, Cantineros y de Servicio de San Francisco

## Introducción

Este folleto consta de tres partes: la primera parte es una serie de preguntas y respuestas explicando las características principales del plan de pensiones y de cómo éste afecta a sus miembros. La segunda parte es el documento en sí enmendado al 1° de abril de 1993. La tercera parte es el suplemento que consiste en la información requerida por el Acta de Seguridad de Ingresos de Jubilación de Empleados (ERISA).

Si usted tuviera alguna pregunta con respecto al funcionamiento de este plan, puede obtener información en las oficinas de la Administración del Fondo en la siguiente dirección: 501 Second Street, San Francisco, California 94107 (teléfono (415)777-3707).

**MANTENGA ESTE RESUMEN DESCRIPTIVO DEL PLAN PARA FUTURA REFERENCIA.**

Este folleto contiene un resumen en inglés de sus derechos y beneficios bajo el plan del Fondo de Pensiones de Empleados Culinarios, Cantineros y de Servicio de San Francisco. Si tiene dificultades para comprender alguna de las partes de este folleto, diríjase a la Administración del Fondo, 501 Second Street, Suite 212, San Francisco, California 94107. Las horas de oficina son de 8:30 a 5:00 de lunes a jueves, y de 9:00 a 2:00 los días viernes. También puede llamar a las oficinas de la Administración del Fondo al teléfono (415) 777- 3707 si necesita ayuda.

---

# 三藩市廚業、酒吧及侍應職員們
# 工積金計劃

## 序言

本手冊由三部份組成。第一部份用一系列問答來解釋工積金計劃的主要特點及其對僱員的影響。第二部份是至 1993 年 4 月 1 日所修改定為補的附加說明。

如欲對本計劃的運作方面有任何疑問，可向基金經理公室取資料，其辦公室地址：
501 Second Street, San Francisco, California 94107 電話(415)777-3707

請保存此計劃簡介以便將來參考之用

三藩市廚業、酒吧及侍應職員們工積金計劃所賦予你的權利和利益，在本手冊中用英語簡要說明，你如果對手冊中任何一部份有不明白之處，請洽基金經理辦公室，地址是：501 Second Street, Suite 212, San Francisco, California 94107, 辦公時間：星期一至星期五每日上午八時半至下午五時，星期五上午九時至下午二時。或打電話到基金經理辦公室以求協助，號碼是：(415)777-3707。

# San Francisco Culinary, Bartenders and Service Employees

## Pension Plan

WHEREAS, the Trustees of the San Francisco Culinary, Bartenders and Service Employees Pension Fund have established and adopted a Pension Plan as of January 1, 1956 which has been subsequently amended, restated in July of 1979, and thereafter amended and restated on April 1, 1986, and was thereafter amended from time to time; and

WHEREAS, said Trustees desire to restate and amend said Plan pursuant to the provisions thereof; and

WHEREAS, it is the intention of said Trustees that said Plan as hereinafter restated be continued and maintained as a pension plan in full compliance with ERISA, as amended, and related applicable laws and be continued and maintained as a qualified Plan under Section 401 of the Internal Revenue Code of 1986, as amended;

NOW, THEREFORE, said Plan is hereby restated and amended as of April 1, 1993 in the form set forth in the attached document. This restated and amended Plan has been completely and fully approved by said Trustees.

| UNION TRUSTEES | EMPLOYER TRUSTEES |
| --- | --- |
| Sherri Chiesa | Douglas N. Cornford |
| Michael Casey | John P. Monestere |
| Charles Gilchrist | Lester Abercrombie |
| Tho Thi Do | Robert Berger |

iv

# Table of Contents

Page

INTRODUCTION ... i

PART I – QUESTIONS AND ANSWERS ... 1

PART II – RESTATED PENSION PLAN ... 10

ARTICLE I – DEFINITIONS ... 10
Section 1.01 "Actuarial Equivalence" and "Lump Sum Present Value" ... 10
Section 1.02 "Beneficiary" ... 10
Section 1.03 "Contributing Employer" ... 10
Section 1.04 "Covered Employment" ... 10
Section 1.05 "Continuous Non-Covered Employment" ... 11
Section 1.06 "Covered Establishment" ... 11
Section 1.07 "Employee" ... 11
Section 1.08 "Employer Associations" ... 11
Section 1.09 "Employer Contribution" or "Contributions" ... 11
Section 1.10 "ERISA" ... 11
Section 1.11 "Hours of Work" ... 12
Section 1.12 "Normal Retirement Age" ... 12
Section 1.13 "Participant" ... 12
Section 1.14 "Pension Fund" ... 12
Section 1.15 "Pension Plan" or "Plan" ... 12
Section 1.16 "Pensioner" ... 12
Section 1.17 "Plan Year" ... 13
Section 1.18 "Predecessor" ... 13
Section 1.19 "Spouse" ... 13
Section 1.20 "Union(s)" ... 13
Section 1.21 Other Terms ... 13

ARTICLE 2 – EMPLOYER CONTRIBUTIONS ... 13
Section 2.01 Monthly Contributions ... 13
Section 2.02 Union Contributions ... 13
Section 2.03 Association Contributions ... 14
Section 2.04 Payment of Contributions ... 14
Section 2.05 Working for More Than One Employer ... 14
Section 2.06 Limitation to One Contribution Per Month ... 14
Section 2.07 Use of Contributions ... 14
Section 2.08 Reporting Requirements ... 14

ARTICLE 3 – PARTICIPATION ... 15
Section 3.01 Purpose ... 15
Section 3.02 Participation ... 15
Section 3.03 Termination of Participation ... 15
Section 3.04 Reinstatement of Participation ... 15
Section 3.05 Participation Credit for Family Medical Leaves ... 16

ARTICLE 4 – PENSION ELIGIBILITY AND AMOUNTS ... 16
Section 4.01 General ... 16
Section 4.02 Eligibility For a Normal Pension Benefit ... 16
Section 4.03 Monthly Amount of the Normal Pension ... 17
Section 4.04 Early Retirement Pension - Eligibility ... 19

v

Page

Section 4.05  Amount of the Early Retirement Pension ... 19
Section 4.06  Disability Pension - Eligibility ... 20
Section 4.07  Amount of the Disability Pension ... 20
Section 4.08  Total Disability Defined ... 20
Section 4.09  Disability Pension Payments ... 20
Section 4.10  Recovery by a Retired Employee on a Disability Pension ... 21
Section 4.11  Reemployment of a Retired Employee on a Disability Pension ... 21
Section 4.12  Conversion of an Early Retirement Pension to a Disability Pension ... 21

ARTICLE 5 – ACCUMULATION OF PENSION CREDIT AND YEARS OF VESTING SERVICE ... 21
Section 5.01  General ... 21
Section 5.02  Pension Credit for Periods Before January 1, 1956 [Past Service Pension Credit] ... 21
Section 5.03  Pension Credit for Periods from January 1, 1956 through March 31, 1986 [Future Service Pension Credit] ... 21
Section 5.04  Maximum Pension Credit ... 23
Section 5.05  Vesting Service ... 23
Section 5.06  Breaks in Service - General ... 24
Section 5.07  Vested Status ... 27
Section 5.08  Military Service ... 28

ARTICLE 6 – JOINT PENSION AND PRE-RETIREMENT SURVIVOR ANNUITY ... 29
Section 6.01  Joint Pension After Retirement ... 29
Section 6.02  Pre-Retirement Survivor Annuity ... 30
Section 6.03  Adjustment of Pension Amount ... 31
Section 6.04  Additional Conditions ... 31

ARTICLE 7 – APPLICATIONS, BENEFIT PAYMENTS ... 32
Section 7.01  Applications and Payment ... 32
Section 7.02  Information Required ... 32
Section 7.03  Action of Board of Trustees ... 33
Section 7.04  Right of Appeal and Determination of Disputes ... 33
Section 7.05  Benefit Payments Generally ... 33
Section 7.06  Lump-Sum Payment in Lieu of Monthly Benefit ... 34
Section 7.07  Distribution of Vested Zero Balance ... 36
Section 7.08  Retirement and Employment After Retirement ... 36
Section 7.09  Non-Forfeitability and Vested Status ... 37
Section 7.10  Incompetence, Incapacity, or Minority of Payee ... 37
Section 7.11  Non-Assignment of Benefits ... 38

vi

Page

Section 7.12  No Actuarial Increase for Delayed Pension Applicants ... 39
Section 7.13  Roll-Over Distributions ... 39

ARTICLE 8 – MISCELLANEOUS ... 40
Section 8.01  Gender ... 40
Section 8.02  Minimum Funding Standard Account ... 40
Section 8.03  Merger or Consolidation ... 40

ARTICLE 9 – AMENDMENT AND TERMINATION ... 40
Section 9.01  Amendment ... 40
Section 9.02  Termination of the Plan ... 41
Section 9.03  Priorities on Total Termination ... 41
Section 9.04  Procedures for Allocation Priority ... 42

ARTICLE 10 – PRO-RATA PENSIONS ... 43
Section 10.01  Purpose ... 43
Section 10.02  Related Plans ... 43
Section 10.03  Related Credit ... 43
Section 10.04  Combined Credited Service ... 43
Section 10.05  Eligibility for a Pro-Rata Pension ... 43
Section 10.06  Amount of the Pro-Rata Pension ... 43
Section 10.07  Payment ... 43

ARTICLE 11 – EMPLOYER WITHDRAWAL LIABILITY ... 44
Section 11.01  General ... 44
Section 11.02  Calculation of Withdrawal Liability ... 44
Section 11.03  Special Rules With Respect to Employer Contributions ... 44
Section 11.04  Actuarial Assumptions ... 45
Section 11.05  Payment of Withdrawal Liability ... 45
Section 11.06  Temporary Contribution Periods ... 46
Section 11.07  Arbitration of Withdrawal Liability Disputes ... 46

PART III – SUMMARY PLAN DESCRIPTION SUPPLEMENT ... 48

vii

viii

# Part I

## QUESTIONS AND ANSWERS

*These questions and answers represent examples of the Restated Plan in effect on April 1, 1993. The current benefits, eligibility, grace periods, etc., in effect are found in Part II. Most prior plan rules are set forth or summarized in Part II. For detailed information or prior plan rules contact the Fund Manager. Please consider these questions and answers as an aid to your understanding of the Plan. To the extent anything in this Part is inconsistent with the terms of the Restated Plan set forth in Part II, the terms of the Restated Plan shall apply.*

**1. What is the purpose of the Pension Plan?**
The purpose of the Plan is to provide a regular monthly pension to eligible Participants when they retire.

**2. Where does the money to provide the benefits come from?**
The money comes from contributions made by the Contributing Employers under their collective bargaining agreements with the Union(s) and from investment earnings on such contributions.

**3. Who are the Contributing Employers?**
(a) Those employers who are parties to collective bargaining agreements requiring contributions who belong to the Hotel Employers' Association of San Francisco and the San Francisco Hotel Association, Inc.; or,

(b) An employer, not a member of the above Associations, who is a party to a collective bargaining agreement with the Union(s) requiring it to make contributions to the Pension Fund or who agrees in writing to be bound by the Pension Plan; or

(c) The Union(s) - for their officers or other employees; or

(d) The two (2) Associations, the Hotel Employers' Association of San Francisco and the San Francisco Hotel Association, Inc., in (a) above, for regular full-time or regular part-time employees.

**4. When did the Plan originally become effective?**
The Plan became effective January 1, 1956. It has been restated and modified several times. The most recent restatement was made as of April 1, 1993.

**5. When do I become a Participant of the Plan?**
You will become a Participant of the Plan when you have worked sufficient time as provided in the collective bargaining agreement under which you work, to have three (3) months of Employer Contributions made within a Plan Year (April 1 through March 31). The date your Participation commences is the first of the month following the month that you complete the third month, even if no contribution is received on your behalf for that month. (See Section 3.02 for becoming a Participant in Non-Covered Employment).

1

**6. How much must I work each month in order that my employer shall make a contribution?**

Your collective bargaining agreement contains the rules for determining how much you work in order to earn an Employer Contribution. Such agreement sets forth the detailed eligibility rules. If you are not employed by a member of one of the named associations in Question 3, consult the collective bargaining agreement between your employer and your Union. In no case shall a Participant qualify for more than one contribution per month. [See Section 5.05(b)(2) for service credit in Non-Covered Employment].

**7. Are contributions made if I am absent from my job?**

Many collective bargaining agreements provide that the first thirty (30) days of absence from work due to bona fide sickness or disability, leave of absence, vacation, holidays, or temporary layoff by the employer shall be considered time worked. And are counted toward qualifying for a contribution. Absence from extra and banquet work is not counted as time worked.

**8. When may I become entitled to Pension Benefits?**

You will become entitled to a Normal Retirement Pension Benefit if you are at least age 65, have retired and terminated employment, have not received a distribution under Section 7.07(a) unless benefit was restored under Section 7.07(b) and have completed one (1) of the following:

(i) completed ten (10) years of Vesting Service without a Permanent Break-in-Service,

(ii) if you have service in Plan Years beginning on or after April 1, 1988, you have reached your fifth (5th) anniversary of Participation in the Plan without a Permanent Break-in-Service, or

(iii) have reached your tenth (10th) anniversary of Participation in the Plan without a Permanent Break-in-Service.

(See Section 4.02 for eligibility requirements prior to March 31, 1974 and for eligibility of Participants employed by Contributing Employers but not covered by collective bargaining agreements.)

You may elect an Early Retirement Pension Benefit if you retire from the industry on or after age 62 and before age 65, provided you have completed ten (10) years of Vesting Service without a Permanent Break-in-Service. You may also be entitled to a disability pension. (See Question and Answer 18.)

You will receive your first pension check after your application for benefits has been processed and your eligibility for a pension has been established. See Section 7.01 for the latest date that the benefit payments to you can begin. No matter when you receive your first pension check, your Normal Pension will be effective and payable as of the first day of the month following the month you completed all the eligibility requirements for a pension.

**9. How are Normal Pension Benefits Computed?**

Normal Retirement Pension Benefits are computed based on your years of service and the benefits in effect for

certain periods specified in the Plan. Service before this Plan started on January 1, 1956 is called "Past Service", service on or after that date is called "Future Service". Except as otherwise stated in the Plan and below, your years of Past and Future Service earned between your specified dates are multiplied by a level of benefits per year of service in effect for such period. (See Section 4.03(b).) Please note that the benefit levels set forth in the Plan are subject to amendment, which may or may not affect you, except that your benefits will not be reduced.

Prior to April 1, 1983, no Pension Credit will be given for more than 35 years of service. However, all Pension Credit earned on or after April 1, 1983 beyond 35 years of service will be included in the calculation of your Pension Benefit.

Example:

You retire on March 31, 1994 and records indicate you have accumulated 40 years of continuous service. Your monthly benefit is based on $6.65 for each Plan Year through March 31, 1982. For the Plan Years April 1, 1982 to March 31, 1987 the monthly benefit is based on $8.75. For Plan Years April 1, 1987 through March 31, 1990, the monthly benefit is based on $11.75. For Plan Years April 1, 1990 through March 31, 1994, the monthly benefit is based on $15.70 if your employer contributed at the maximum contribution rate. Otherwise, the benefit for Plan Year April 1, 1990 through March 31, 1994, is based on $12.10.

In this example, twenty-eight (28) years at $6.65; five (5) years at $8.75; three (3) years at $11.75; and, if your employer contributed at the maximum contribution rate, four (4) years at $15.70 produces a monthly benefit of $310.70; otherwise, four (4) years at $12.10 produces a monthly benefit of $325.00; (See Section 4.03.)

**10. How do I determine my Pension Credits?**

(a) Past service Pension Credit earned before January 1, 1956:

In general, Pension Credit for service before 1956 shall be granted for each month for which a contribution would have been made by your Employer if there had been a plan in effect during that time. (See Section 5.02(a); see also Section 5.02(b)(2) for certain presumptions and rules used to determine whether you are entitled to Past Service Pension Credit.) Also note that all nonvested Pension Credit earned prior to a Permanent Break-in-Service will not be counted. (See Question and Answer 12 and Section 5.06), and that prior to April 1, 1983, no Pension Credit will be given for more than 35 years of service (See Question and Answer 9 and Sections 4.03 and 5.04).

(b) Future Service earned after January 1, 1956:

Pension Credit for service on or after January 1, 1956 shall be granted for each month for which a contribution is owed by a Contributing Employer on account of your service in that month, subject to the 35 year maximum for pension credit earned before April 1, 1983 (see Sections 4.03 and 5.04) and the occurrence of a Permanent Break-in-Service, which has the effect of canceling previously

earned, nonvested Pension Credit (See Section 5.06 for the Break-in-Service Rules and Sections 5.05 and 5.07 for the Vesting Rules.)

Each Participant must prove he is entitled to Pension Credit. The Fund Manager will assist you in this matter.

**11. Can I lose credits already accumulated?**

Yes. If you are not a Vested Participant and you have a Permanent Break-in-Service, you will lose all previously accumulated credit. (See Section 5.06.)

**12. What is a Permanent Break-in-Service?**

There are different Break-in-Service and Grace Period rules which may apply to your service. (See Section 5.06(a), (b), (c) and (d).)

(a) Before April 1, 1976, you had a Permanent Break-in-Service if you did not earn three (3) months of Pension Credit during any two (2) consecutive Plan Years, in which case you lost all credit accumulated prior to the Permanent break-in-Service.

(b) Between April 1, 1976 and March 31, 1987, you incurred a Temporary Break-in-Service at the end of a Plan Year in which you did not earn at least three (3) months of Vesting Service (see Section 5.05 regarding Vesting Service, or 500 Hours of Work in Covered or Continuous Non-Covered Employment or a combination thereof. (See Section 1.04 and 1.05 regarding Covered Employment and Continuous Non-Covered Employment.) A Temporary Break-in-Service will become a Permanent Break-in-Service, and you will lose all Pension Credit accumulated prior to the Break-in-Service, unless you are reinstated as a Participant under Section 3.04 within a period of time equal to the greater of your previously accumulated Vesting Service or five (5) consecutive Plan Years. (See Section 3.04 regarding Participation in the Plan.)

(c) On or after April 1, 1987, you shall incur a Temporary Break-in-Service at the end of a Plan Year in which you do not earn at least four (4) months of Vesting Service or 500 hours of work in Covered or Continuous Non-Covered Employment or a combination thereof. A Temporary Break-in-Service will become a Permanent Break-in-Service, and you will lose all Pension Credit accumulated prior to the Break-in-Service, unless you are reinstated as a Participant under Section 3.04 within a period of time equal to the greater of your previously accumulated Vesting Service or five (5) consecutive Plan Years. (See Section 5.06.)

(d) If you terminate service when the present value of your vested accrued Past and/or Future Service Pension Credit is zero, you will be deemed to have received an immediate distribution of your Pension Credit of $800. If you resume Covered Employment before you have a Permanent Break-in-Service (see (c) above), your Pension Credit will be restored. (See Section 5.06.)

4

**13. What are grace periods?**

There are a number of specific grace periods allowed by this Plan and by the prior plans which may prevent a Permanent Break-in-Service. The grace periods under the current Plan cover such subjects as military service, disability, involuntary unemployment, pregnancy or childbirth, family medical leave, leaves of absence, and other subjects, which are set forth in Article 5 of the Pension Plan. For example, you may be eligible for a grace period of up to 36 consecutive months if you fail to earn Pension Credit because of total, involuntary unemployment or disability under the current Plan. While it is up to you to establish that a particular grace period applies, the Fund Manager's office is available to answer questions about current and prior plan rules. (See Section 5.06(d).)

**14. How can I tell if I have earned a Pension Credit or if my Employer is contributing on my behalf?**

Many of the collective bargaining agreements between the unions and employers participating in the Pension Plan require employers to post a copy of the employer remittance form the Fund Manager sends each month to the Fund Manager with its monthly payments.

If the collective bargaining agreement at your place of employment so provides, you should check this form and immediately inform the Union and/or the Fund Manager's office if you believe you are not eligible for contributions but your employer is not making them on your behalf. Also, you can request a statement from the Fund Manager concerning the amount of your Pension Credits and whether or not your employer is making monthly contributions on your behalf.

**15. What is vesting of benefits?**

Vesting of benefits is the process by which your accumulated Pension Credits cannot be lost or forfeited even if you leave Covered Employment prior to becoming eligible for retirement. Between April 1, 1976 and March 31, 1989 you become 100 percent vested when you accumulate ten (10) years of Vesting Service without an intervening Permanent Break-in-Service or upon attaining Normal Retirement Age, as provided in Sections 1.12 and 5.07. For Participants employed by a Union or an Association, or employed by a collective bargaining employer not covered by a collective bargaining agreement, on or after April 1, 1998, and are still a Plan Participant who has not received a zero cash out of benefits under Section 7.07, you become 100 percent vested when you accumulate five (5) years of Vesting Service or upon attaining Normal Permanent Break-in-Service or upon attaining Normal Retirement Age, as provided in Sections 1.12 and 5.07. (See Question 16 and Answer 16 regarding the definition of Normal Retirement Age; see Question 16 and Answer 16 and Section 5.05 regarding the definition and accumulation of Vesting Service; see Section 5.07 for vesting rules prior to April 1, 1976).

**16. What is Vesting Service?**

(a) Before April 1, 1976, Vesting Service equals accumulated Pension Credit.

5

(b) For Covered Employment on and after April 1, 1976, you are entitled to one (1) year of Vesting Service if you have six (6) or more monthly Employer Contributions made, or to be made, on your behalf in a Plan Year. If you are entitled to less than six (6) monthly Employer Contributions in a Plan Year, pro-rata partial credit toward a year of Vesting Service will be granted. Note that the above applies for purposes of vesting, and not for purposes of computing the amount of your benefit credit. (See Section 5.05.)

(c) For Continuous Non-Covered Employment with a Contributing Employer on or after April 1, 1976, each 45 Hours of Work or more during a Calendar month will be counted as a Monthly Employer Contribution in determining Vesting Service in paragraph (b) above. (See Section 5.05 (b)(2).)

**17. May I retire before age 65?**
If you are a vested Participant, you may retire on the first day of any month after reaching age 62. Because of the longer period of time during which you may be expected to receive benefits if you retire early, a reduced amount will be payable to you on such Early Retirement. The amount payable to you on Early Retirement will be equal to the Normal Pension to which you would be entitled (if you were age 65 when you retired reduced by 6/10ths of 1 percent for each month that you are younger than age 65 on the date that you are first entitled to receive an Early Retirement Benefit. (See Section 4.05.)

**18. If I become disabled, will I be entitled to any disability benefits?**
If you have at least fifteen (15) years of Vesting Service without an intervening Permanent Break-in-Service and are totally disabled (as defined in the Social Security Act or as determined by the Trustees based upon other relevant evidence of disability), you will be entitled to a benefit when you reach age 65. The benefit amount is based upon your total Pension Credits. (Refer to Section 4.09(b) regarding the commencement of disability benefits.) If you die before reaching age 62, see Question and Answer 23.) Effective April 1, 1987, upon reaching age 65, a married participant's disability retirement benefit automatically converts to a Joint Pension unless you and your lawful Spouse formally waive this Joint Pension. Note that a Joint Pension provides for a reduced monthly pension. (See Sections 4.09(a) and 6.01.)

**19. Who decides whether I am entitled to a pension?**
The Board of Trustees of the Pension Plan has discretionary authority to decide whether or not you are eligible for a pension and will determine the amount of the pension, according to the Plan. All decisions by the Board of Trustees are final. You must make application at the office of the Fund Manager.

6

**20. May I work after retirement?**
On and after April 1, 1989, you may work after retirement. If you are receiving pension benefits and you worked at least one (1) hour of Covered Employment in any Plan Year beginning on or after April 1, 1986, then so long as you are under age 65, you will continue to receive Pension Credit. However, if you are over age 65, your benefits will be offset to take into account the in-service distribution of your pension benefits. (See Section 7.08(b) for one (1) hour of Covered or after April 1, 1988; see Section 7.08(b) for work after retirement before April 1, 1989; see also Section 7.08(c) and your Union contract.)

**21. Will payments from the Plan prevent my being entitled to Social Security benefits?**
No, benefits which you receive under the Plan are in addition to those to which you may be entitled under the Social Security program.

**22. If I die after retirement, what benefits are available to my Spouse?**
The Joint and Survivor Annuity (Joint Pension) is the normal form of benefit under the Plan for a married participant. There shall be a reduction in the single life annuity benefit amount payable to you on retirement if you have a Joint Pension determined on the basis of the age of both you and your legal Spouse.

If you are married on the date of Normal or Early Retirement, you will receive a 50 percent Joint and Survivor benefit unless you and your Spouse elect in writing not to receive such benefit. This election must be witnessed by a Plan representative or notary public prior to your benefit commencement date. If you and your Spouse waive the Joint Pension, you will be treated upon your death as a single Beneficiary and your Spouse will not be entitled to any benefit.

Effective April 1, 1987, if you retire on a disability benefit (based on a single life annuity) and you are alive at age 65, your benefit automatically becomes a Normal Retirement Benefit and you will receive a 50 percent Joint and Survivor Annuity benefit, unless you and your spouse elect in writing not to receive such Joint Pension. This election must be witnessed by a Plan representative or notary public prior to your benefit commencement date. If you and your Spouse waive the Joint Pension, you will be treated as a single Beneficiary and upon your death your Spouse will not be entitled to any benefit.

Such election to waive a Joint Pension may be revoked in writing, witnessed as provided above, at any time prior to the commencement date of pension benefit. (See Article 6.)

**23. What benefits will my Spouse be entitled to if I die before retirement?**
On and after August 23, 1984, your lawful Spouse will be entitled to a pension if you die before attaining age 62 in an amount equal to one-half the amount that would have been payable to you if you had separated from Covered Employment on the date of your death and you.

7

(a) retired with a Joint Pension;

(b) survived to age 62;

(c) died the day after you reached age 62.

Your Spouse will be eligible for such a benefit if you are:

(a) married, and

(b) earned an hour or more in Covered Employment on or after April 1, 1976, and

(c) died after August 23, 1984 before receiving an annuity, and

(d) are entitled to a vested benefit.

Such spousal benefit will be payable to your Spouse at the time you would have reached age 62. Benefits are paid on the first of the month following the month in which the Spouse fulfills all the conditions of entitlement to benefits and files an application for such benefits.

**24. Who takes care of the money contributed by the employers?**

Employer contributions are deposited to the account of the Pension Fund and are held for the benefit of the Participants and their lawful Spouses.

The Board of Trustees, composed of Employer and Union representatives, manages the Pension Fund.

**25. Where and how do I apply for retirement?**

All claims for benefits must be filed on forms provided by the Trustees. Information and application forms can be obtained at the Pension Plan Fund office, 501 Second Street, Suite 212, San Francisco, California 94107, Monday through Friday; telephone (415) 777-3707.

While all possible assistance will be given in completing application forms, the applicant must provide the following information:

(a) Social Security number.

(b) As complete a list as possible of all past employers with addresses and approximate dates of employment.

(c) Proof of birth date for yourself and your Spouse.

(d) Marriage certificate, if applicable.

(e) Medicare card (65 or over).

**26. If my application is denied, how do I appeal the decision?**

You have the right to appeal a denial of your pension application for pension payments in whole or in part to the Board of Trustees. For procedures and time limits, please refer to the Summary Plan Description Supplement in Part III, beginning, page 48.

**27. What are my obligations as a Participant of the Plan?**

It is important that you keep your Union and the Fund Manager informed of any change in address or, in the case of life insurance, a desired change of Beneficiary. This is your obligation, and failure to fulfill it could delay the payment of your benefits. Without your current address, the Fund will not be able to keep in touch with you regarding Plan changes and other developments affecting your interest in the Plan.

**28. Can I count on the Plan being in existence forever?**

It is expected that the Plan will remain in effect indefinitely, and that each employer will continue to make contributions required by the applicable collective bargaining agreement(s). However, the Trustees do have the right under the Trust Agreement to effect a partial or total termination of the Plan. Moreover, the parties to the Trust Agreement have the power to amend the Trust Agreement, which might affect the current or future status of the Plan. (See Article 9 for Amendment and Termination provisions.)

**29. What happens to my accrued Pension Credits if the Plan terminates, either in part or totally?**

In the event of a partial or total termination of the Plan, the Normal Pension Benefit credited to each affected Participant will be non-forfeitable to the extent funded as of the date of termination, and, in the event of total termination of the Plan, distribution will take place in accordance with the priorities set forth in Section 9.03.

# Part II
## Restated Pension Plan

The Pension Plan was effective January 1, 1956 and has been amended from time to time. This Plan was last restated as of April 1, 1986. This restated plan, as amended, is effective as of April 1, 1993.

## ARTICLE 1 – DEFINITIONS

**Section 1.01. "Actuarial Equivalence" and "Lump Sum Present Value"**

(a) "Actuarial Equivalence" or "Actuarially" shall mean values determined through use of the 1984 Unisex Pension Mortality Table, with ages set back one year and a 6½ percent interest rate.

(b) Effective January 1, 1986, the "Lump Sum Present Value" shall be determined using the 1984 Unisex Pension Mortality Table, with ages set back one year and an interest rate equal to the rate which would be used by the Pension Benefit Guaranty Corporation in valuing a lump sum distribution for a plan terminating on the April 1 preceding the date of determination.

**Section 1.02.** "Beneficiary" means a person who is receiving or is entitled to receive benefits under this Plan because of his designation for such benefits by a Participant or by the terms of this Plan.

**Section 1.03.** "Contributing Employer" means:

(a) an employer who is a member of one of the Employer Associations (defined in Section 1.08) and is bound by a collective bargaining agreement between an Association and the Union(s)(defined in Section 1.20) to make contributions to the Pension Fund;

(b) an employer who, while not a member of any of the Employer Associations identified in Section 1.08 is a party to a collective bargaining agreement with the Union(s) requiring him to make contributions to the Pension Fund or who agrees in writing to be bound by this Pension Plan and any amendments hereto; or

(c) the Union(s), for coverage of Employees and/or officers defined in Section 1.20, and any of the Employer Associations, for coverage of regular full-time or regular part-time Employees.

**Section 1.04.** "Covered Employment" means:

(a) for purposes of Past Service Credit, employment in a Covered Establishment by a Contributing Employer or a Predecessor of a Contributing Employer in a position covered by any collective bargaining agreements with the Union(s) in effect as of January 1, 1956, or which would be, or have been, covered by any of said agreements if the same were, or had been, in effect in such establishment at the time of such employment; and

(b) employment by the Union(s) or as an elective or appointive officer of the Union(s) or employment by any of the Associations; and,

(c) employment in a Covered Establishment by a Contributing Employer in a position covered by any collective bargaining agreement or agreements with the Union(s) in effect after January 1, 1956.

**Section 1.05.** "Continuous Non-Covered Employment" means employment for a Contributing Employer in a job not covered by a collective bargaining agreement with a Union which is continuous with a Participant's Covered Employment with the same Contributing Employer. A period of Non-Covered Employment will be considered to be continuous with Covered Employment only if there is no quit, discharge, or other termination of employment between the periods of Covered and Non-Covered Employment effective April 1, 1976.

**Section 1.06.** "Covered Establishment" means:

(a) with respect to any period commencing on or after January 1, 1956, a restaurant, hotel, club, or other establishment in the City and County of San Francisco being operated by a Contributing Employer under an Association or other collective bargaining agreement with the Union(s) requiring contributions by it to the Pension Fund; and

(b) with respect to any period prior to January 1, 1956, an establishment which was a Covered Establishment as of January 1, 1956.

**Section 1.07.** "Employee" means any Employee of a Contributing Employer covered by a collective bargaining agreement with a Union. The term "Employee" may also include:

(a) Employees of Local Union(s) covered by collective bargaining agreements in effect between a Union and a labor organization representing Employees of the Union(s) requiring contributions to this Fund; any other Employees of the Union(s) approved by the Board of Trustees and/or elected or appointed officers of the Union(s), provided the inclusion of any of said officers is not a violation of any existing law or regulation;

(b) Regular full-time and regular part-time Employees of an Employer Association.

**Section 1.08.** "Employer Associations" means the Hotel Employers' Association of San Francisco and the San Francisco Hotel Association, Inc. Prior to the date of their withdrawal from participation in the Plan, the Golden Gate Restaurant Association and the San Francisco Club Institute were "Employer Associations" within the meaning of this Plan.

**Section 1.09.** "Employer Contribution" or "Contributions" mean a payment made or to be made to the Fund by any Contributing Employer required under the provision of a collective bargaining agreement or any other payment of contributions to this Fund required by a written agreement executed by a Union(s) or Association(s).

**Section 1.10.** "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, including the Multiemployer Pension Plan Act of 1980; the Tax Equity

and Fiscal Responsibility Act of 1982; the Retirement Equity Act; the Tax Reform Act, and any lawful regulations issued thereunder.

**Section 1.11.** "Hours of Work" or "hours worked" mean all hours for which an Employee is paid, or entitled to payment for the performance or non-performance of duties for the Contributing Employer during the applicable computation period, and hours for which back pay, irrespective of mitigation of damages, is awarded or agreed to by a Contributing Employer, to the extent that such award or agreement is intended to compensate an Employee for periods during which the Employee would have been engaged in the performance of duties for the Contributing Employer. Such hours shall be credited as provided in Department of Labor Regulation 2530.200b-2 and -3.

**Section 1.12.** "Normal Retirement Age" means age 65, or if later, the age of the Participant after the attainment of a set number of years of participation in the Plan without an intervening Permanent Break-In-Service. Effective April 1, 1993, Participants will be deemed to have attained "Normal Retirement Age" if they attain the fifth anniversary of their participation in the plan without an intervening Permanent Break-in-Service, after they attain age 65. However, this rule applies only with respect to plan years beginning on or after April 1, 1988, and only with respect to service performed on or after such date. Except as so provided, Participants were and will be deemed to have attained "Normal Retirement Age" if they attained their tenth anniversary of participation in the Plan without an intervening Permanent Break-In-Service after age 65.

**Section 1.13.** "Participant" means a Pensioner, or an Employee who meets the requirements for Participation in the Plan as set forth in Article 3, or a former Employee who has acquired a right to a Pension under this Plan and has separated from Covered Employment. A "Vested Participant" is an Employee who has achieved Vested Status in accordance with the provisions of Section 5.07.

**Section 1.14.** "Pension Fund" means the trust estate of the Plan. The corpus of the Pension Fund shall include all contributions made or payable by Contributing Employers including, in the hands of said agents, and all other money, assets, claims, or property held by the Trustees for the uses and purposes set forth in the Agreement and Declaration of Trust establishing this Fund.

**Section 1.15.** "Pension Plan" or "Plan" means this San Francisco Culinary, Bartenders and Service Employees Pension Plan.

**Section 1.16.** "Pensioner" means a person to whom a pension is being paid from the Fund or to whom a pension would be paid but for the time required for administrative processing.

**Section 1.17.** "Plan Year" means the period from April 1 through March 31 of the following year. For the purposes of ERISA regulations, the Plan Year shall serve as the vesting computation period, the benefit accrual computation period, and, after the initial period of employment,

12

the computation period for eligibility to participate in the Plan. For different Plan Years in effect prior to April 1, 1976, the Fund shall use the different Plan Year only for the specific period for which the different Plan Year was in effect, if it is more beneficial to the Participant.

**Section 1.18.** "Predecessor" of a Contributing Employer means an employer who operated a Covered Establishment.

**Section 1.19.** "Spouse" means a person to whom a Participant or Pensioner is legally married.

**Section 1.20.** "Union(s)" shall mean the Hotel Employees and Restaurant Employees and Bartenders Union Local 2 and Service Employees Union Local 14.

**Section 1.21.** Other terms are specifically defined as follows:

| Term | Section(s) |
| --- | --- |
| a. Normal Pension | 4.02 and 4.03 |
| b. Early Retirement Pension | 4.04 and 4.05 |
| c. Disability Pension | 4.06 and 4.07 |
| d. Total Disability | 4.08 |
| e. Pension Credit: | |
| Past Service Pension | 5.02 |
| Future Service Pension Credit | 5.03 |
| f. Vesting Service | 5.05 |
| g. Break in Service: | |
| Permanent Break in Service) | 5.06 |
| h. Vested Status | 5.07 |
| i. Joint Pension | 6.01 |
| j. Effective Date of Pension | 7.01 |
| k. Retired or Retirement | 7.07 |
| l. Related Plans | 10.02 |
| m. Related Credit | 10.03 |

## ARTICLE 2 – EMPLOYER CONTRIBUTIONS

**Section 2.01 – Monthly Contributions.** The amount of the monthly contribution to the Pension Fund, and the employment required to render a Contributing Employer, other than the Union(s) and Associations, liable for a contribution, are as set forth in the applicable collective bargaining agreements. It is understood and agreed that no employer other than the Union(s) and Associations is or shall be obligated to contribute to the Pension Fund, except as provided in its collective bargaining agreement between such employer and the Union(s). It, therefore, is agreed that there shall be no change in the amount of the monthly contribution, unless the respective collective bargaining agreements provide for a change in the amount of the monthly contribution to the Fund.

**Section 2.02 – Union Contributions.** The Unions which have executed a written agreement requiring contributions to the Fund on behalf of Employees shall make monthly contributions to the Pension Fund in the amounts and according to the eligibility rules set forth in any collective bargaining agreements in effect between the Union(s) and any labor organization representing Employees of the Union(s) on behalf of the Employees in

13

the bargaining unit covered by such collective bargaining agreement. In addition, the Union(s) shall make monthly contributions to the Pension Fund on behalf of any other Employees of the Union(s) approved by the Board of Trustees and/or elected or appointed officers of the Union(s), if lawful, in the amount prevailing among other Contributing Employers, if the Union(s) have executed written agreement(s) requiring such contributions.

**Section 2.03 – Association Contributions.** The monthly contributions to the Pension Fund required by a written agreement from an Association for the coverage of regular full-time and regular part-time Employees members of the Association shall be the same as the employer members of the Association pay for their Employees under the collective bargaining agreement between the Association and the Union(s).

**Section 2.04 – Payment of Contributions.** Employer Contributions hereunder accruing shall be paid to the Pension Fund between the first and tenth day of the month following the month of performance of the service on account of which the contribution is payable, unless the collective bargaining agreement provides otherwise.

**Section 2.05 – Work For More Than One Employer.** It is contemplated that an Employee may perform service during a single month for more than one Contributing Employer and not qualify by sufficient shifts or hours worked for a contribution to be made to the Pension Fund by any one Contributing Employer but, nevertheless, work enough time for more than one employer to qualify for such contribution to be made. In such case the Fund shall bill each Contributing Employer for his proportionate share of the contribution.

**Section 2.06 – Limitation To One Contribution Per Month.** It is contemplated that an Employee may perform service during a single month for more than one Contributing Employer and qualify by sufficient shifts or hours worked for more than one contribution to be made to the Pension Fund. In such case, each Contributing Employer making a contribution for the same individual shall be entitled to a refund of, or credit for, so much of his contribution as shall exceed the amount thereof divided by the number of such contributions.

**Section 2.07 – Use of Contributions.** The Employer Contributions shall be used by the Trustees for the exclusive purpose of providing benefits to Participants and their beneficiaries and defraying reasonable expenses of administering the Plan.

**Section 2.08 – Reporting Requirements.** Each Contributing Employer shall assist in the preparation and cooperate in the execution of any and all forms, applications or other data, including reporting all Hours of Work by all Employees in the bargaining unit, necessary in the establishment and operation of the Plan, and in this connection shall promptly furnish all necessary information upon demand by the Trustees or their agents and to all persons entrusted with the operation and administration of the Plan.

14

## ARTICLE 3 – PARTICIPATION

**Section 3.01 – Purpose.** This Article describes the requirements which must be met to become a Participant in the Plan. For Temporary and Permanent Breaks-in-Service which affect Participation, see Section 3.06.

**Section 3.02 – Participation.** On and after April 1, 1986, an Employee who works in Covered Employment shall become a Participant effective the first day of the month he has performed enough Shifts or Hours of Work in Covered Employment within a Plan Year to have had three (3) months of Employer Contributions made or due to be made on his behalf within a plan year. This requirement may be completed by 135 Hours of Work in Continuous Non-Covered Employment within the same Plan Year in which a contribution was required for Covered Employment.

From September 1, 1980 through March 31, 1986, an Employee who worked in Covered Employment became a Participant as soon as he had performed enough Shifts or Hours of Work in Covered Employment during any twelve consecutive month period to have had three (3) months of Employer Contributions made or due to be made on his behalf. This requirement could have been completed by 135 Hours of Work in Continuous Non-Covered Employment within any twelve consecutive month period.

Prior to September 1, 1980, an Employee who worked in Covered Employment became a Participant as soon as he performed enough Hours of Work to have one (1) month of contribution made or due to be made on his behalf. This requirement could have been completed as above by completing forty-five (45) Hours of Work in Continuous Non-Covered Employment within any twelve consecutive month period.

Notwithstanding the above paragraphs and effective April 1, 1976, an Employee will become a Participant effective on the first of the month after he earns 1,000 hours of work in Covered Employment during the twelve (12) months following his first date of employment. If the Employee does not work 1,000 hours in such initial twelve (12) month period, the Employee will qualify as a Participant effective on the first of the month after he earns 1,000 hours in any Plan Year following the first date of employment.

**Section 3.03 – Termination of Participation.** A Participant who incurs a one-year Temporary Break-in-Service shall cease to be a Participant as of the last day of the Plan Year which constituted such one-year Break-in-Service, unless he is a Pensioner or Vested Participant.

**Section 3.04 – Reinstatement of Participation.** An Employee who has lost his status as a Participant in accordance with Section 3.03 shall again become a Participant by meeting the requirements of Section 3.02 effective immediately in his or her date of re-employment, or retroactively as of his date of re-employment, upon completion of the earlier of the period of employment specified in Section 3.02, or upon completion of "a year of

15

service" (as defined and provided in IRC Sections 410(a)(5)(C) and (D) and Regulations Section 1.410(a)(5)-7(c)(iii) and 1.410(a)-7(c)(iii)) measured by his or her date of re-employment commencement date. In addition and so long as there has not been a Permanent Break-in-Service, a Participant shall receive Pension Credit and Vesting Credit earned in the period prior to and during his Temporary Break-in-Service.

**Section 3.05 – Participation Credit for Family Medical Leaves.** Credit for Participation in the Plan shall be credited up to the maximum(s) recognized in Section 5.06(d)(4) for Family Medical Leaves, as defined and specified in said Section.

## ARTICLE 4 – PENSION
## ELIGIBILITY AND AMOUNTS

**Section 4.01 – General.** This Article sets forth the eligibility conditions and benefit amount payable for the various types of pensions provided by this Plan. The accumulation and retention of Pension Credits and Participation and Vesting Service are subject to the provisions of Article 5. The benefit amounts are subject to reduction on account of the joint Pension under the provisions of Article 6. An eligible Participant is entitled to pension benefits, subject to his retirement and application for benefits as provided in Article 7.

**Section 4.02 – Eligibility For A Normal Pension Benefit.**
(a) A Participant who has retired and terminated employment shall be entitled to receive a Normal Pension Benefit if he or she has attained age 65, satisfies one of the three rules, (1) through (3), set forth immediately below, and has not received a distribution in accordance with Section 7.07(a) unless his benefit has been restored in accordance with Section 7.07(b):

(1) The Participant has ten (10) years of Vesting Service without an intervening Permanent Break-in-Service, or

(2) The Participant has attained the fifth anniversary of his or her Participation in the Plan without an intervening Permanent Break-in-Service, providing, this rule applies only with respect to service performed on or after April 1, 1989, and only with respect to plan years beginning on or after April 1, 1986, or

(3) Participants who do not qualify under (1) or (2) above. The Participant has attained the tenth anniversary of Participation in the Plan without an intervening Permanent Break-in-Service.

(b) Effective April 1, 1989, only five years of vesting service without an intervening Permanent Break-in-Service shall be required for Participants employed by a Union or Association or other Participant employed in employment with a contributing employer not covered by a Collective Bargaining Agreement, as required by federal law.

(c) Prior to March 31, 1974, a Member of the Plan was eligible for Normal Pension Benefits upon attainment of age 65 if he had fifteen (15) years of Credited Service and

was in continuous Credited Service until the date of retirement. However, a Member of the Plan who completed ten (10) years of continuous Credited Service on or after April 1, 1974 was eligible for Normal Pension Benefits upon attainment of age 65. To be entitled to a Normal Pension Benefit prior to April 1, 1974, a Member of the Plan had to satisfy the requirements summarized in Section 5.07(c).

The terms "Member of the Plan," "continuous Credited Service," and "continuous Credited Service" were defined in the Plan in effect prior to April 1, 1976.

**Note:** Non-retired Participants who attained age 70½ on or after January 1, 1988, shall be eligible for the pension benefits provided by this Article 4 to which they are otherwise qualified, and such benefits shall be distributed to such persons, effective upon the earlier of actual retirement, or April 1 following the calendar year in which such Participants attain age 70½. (See Section 705.)

**Section 4.03 – Monthly Amount of the Normal Pension.**
(a) For Participants who retired before April 1, 1994:

The monthly amount of the Normal Pension benefit was the benefit under the terms of the Plan in effect at the time of the Participant's retirement, plus any subsequent increases in benefits authorized by the Trustees.

(b) **Method for Calculating Pension Benefits for Participants Who Retired on Or After April 1, 1994:**

The monthly amount of the Normal Pension benefits for all Participants was and shall be determined by multiplying the sum of all the Participant's years of Past and Future Service Credit accrued, during the period of service indicated in the tables below, by the benefit levels in effect for such periods. Note that the benefit levels indicated below for each period of Credited Service depend upon the retirement or Pension Effective Date.

(1) For Participants Who Retired On Or After April 1, 1984 But Before April 1, 1987:

| Period of Credited Service | Benefit Level |
| --- | --- |
| Prior to April 1, 1982 | $6.40 (per yr.) |
| April 1, 1982 – March 31, 1983 | 6.88 (per yr.) |
| April 1, 1983 – March 31, 1987 | 8.75 (per yr.) |

(2) For Participants Who Retired On Or After April 1, 1987 But Before April 1, 1988:

| Period of Credited Service | Benefit Level |
| --- | --- |
| Prior to April 1, 1982 | $6.65 (per yr.) |
| April 1, 1982 – March 31, 1983 | 6.88 (per yr.) |
| April 1, 1983 – March 31, 1987 | 8.75 (per yr.) |
| April 1, 1987 – March 31, 1988 | 8.88 (per yr.) |

(3) For Participants Who Retired On Or After April 1, 1988 But Before April 1, 1990:

| Period of Credited Service | Benefit Level |
| --- | --- |
| Prior to April 1, 1982 | $6.65 (per yr.) |
| April 1, 1982 – March 31, 1983 | 6.88 (per yr.) |
| April 1, 1983 – March 31, 1987 | 8.75 (per yr.) |
| April 1, 1987 – March 31, 1990 | 11.35 (per yr.) |

**(4) For Participants Who Retired On Or After April 1, 1990 But Before April 1, 1991:**

| Period of Credited Service | Benefit Level |
| --- | --- |
| Prior to April 1, 1982 | $6.65 (per yr.) |
| April 1, 1982 – March 31, 1983 | 6.88 (per yr.) |
| April 1, 1983 – March 31, 1987 | 8.75 (per yr.) |
| April 1, 1987 – March 31, 1989 | 11.35 (per yr.) |
| April 1, 1989 – March 31, 1990 | 11.55 (per yr.) |

(i) Whereas different contribution rates already have been negotiated between the Union sponsors to the Plan and certain contributing Employers effective April 1, 1990. Participants who are employed by Employers obligated to contribute at the highest monthly contribution rate under the Plan, shall have the level of benefits computed according to the level of benefits set forth in column "A" below; but only for months in which they received the maximum rate of contribution. All other months of credited service for which a lower rate of contribution was paid shall result in benefits being computed according to the level of benefits set forth under column "B" below:

(ii) In the event a Participant earns two or more contributions from contributing Employers in a single month at different rates of contributions including, one contribution at the highest rate or maximum rate, Pension Credit was computed at the higher rate (Column "A") for such month(s).If a Participant had contributions paid on his or her behalf at different rates of contribution in a Plan Year, e.g. they changed jobs, the amount of pension credits accrued each month was calculated at 1/12 the annual accrual rate shown in Column "A" for each month in which a Contributing Employer contributed at the highest rate, pension accrual for all other months in which a lower contribution rate was paid was calculated at 1/12 the annual accrual rate shown in Column "B" above.

**(5) For Participants Who Retired On Or After April 1, 1991 But Before April 1, 1993:**

| Period of Credited Service | Benefit Levels Column "A"* (maximum employer contribution rate) | Column "B"* (lower employer contribution rate) |
| --- | --- | --- |
| Prior to April 1, 1982 | $6.65 (per yr.) | $6.65 (per yr.) |
| April 1, 1982 – March 31, 1987 | 8.75 (per yr.) | 8.75 (per yr.) |
| April 1, 1987 – March 31, 1990 | 11.75 (per yr.) | 11.75 (per yr.) |
| April 1, 1990 to March 31, 1991 | $15.00 (per yr.) | $11.55 (per yr.) |
| April 1, 1991 forward | $15.00 (per yr.) | $11.75 (per yr.) |

*(See explanation in §4.03 (b) (i) and (ii) above.)

**(6) For Participants who retired on or after April 1, 1993:**

| Period of Credited Service | Benefit Levels Column "A"** (maximum employer contribution rate) | Column "g"** (lower employer contribution rate) |
| --- | --- | --- |
| Prior to April 1, 1982 | $6.65 (per yr.) | $6.65 (per yr.) |
| April 1, 1982 – March 31, 1987 | 8.75 (per yr.) | 8.75 (per yr.) |
| April 1, 1987 – March 31, 1990 | 11.75 (per yr.) | 11.75 (per yr.) |
| April 1, 1990 to March 31, 1994 | $15.70 (per yr.) | $12.10 (per yr.) |
| April 1, 1994 and later | $17.60 (per yr.) | $13.55 (per yr.) |

*(See explanation in §4.03 (b) (i) and (ii) above.)

**(c) Flat Rate Increases In Pension Benefits and Lump Sum Payments:**

Effective on the dates indicated below, all Pensioners and Beneficiaries receiving benefits whose benefits were effective on the dates also indicated below, received an "across-the-board" increase in their benefits regardless of the form of benefits (normal, early, disability or joint and survivor) or the amount of credited service, in the amounts shown below. These benefits were in addition to any previous increases in benefits authorized by the Trustees and the benefits provided according to the benefit tables set forth in subparagraphs (a) through (b) above, or the benefit tables established in the predecessor plan.

| Pensions Effective Date Prior To: | Amount of Benefit: |
| --- | --- |
| April 1, 1993: | $120 lump sum paid 12/93 |
| | $120 lump sum paid 1/94 |
| April 1, 1991: | $2.25 increase in monthly benefit |
| April 1, 1988: | $4.25 increase in monthly benefit |

(d) No more than 35 years of Pension Credit is allowed for computing Pension Credits accrued prior to April 1, 1983. This 35-year limitation is not applicable to Pension Credit accrued on or after April 1, 1983.

**Section 4.04 – Early Retirement Pension – Eligibility.** A Participant who has retired shall be entitled to an Early Retirement Pension, if:

(a) he has attained age 62; and
(b) he has at least ten (10) years of Vesting Service without a Permanent Break-in-Service.

**Section 4.05 – Amount of the Early Retirement Pension.** The Early Retirement Pension shall be a monthly amount determined as follows:

(a) The first step is to determine the amount of the

Normal Pension to which the Participant would be entitled if he were 65 years of age on the Effective Date of his Pension.

(b) The second step, to take account of the fact that the Participant is younger than 65, is to reduce the first amount by 6/10ths of 1 percent for each month that the Participant is younger than 65 on the date, on or after retirement, that he is first entitled to receive an Early Retirement Pension.

**Section 4.06 — Disability Pension — Eligibility.** An Employee who is totally disabled and who has retired shall be entitled to receive a Disability Pension if he has at least fifteen (15) years of Vesting Service without an intervening Permanent Break-in-Service and he has attained age 55 but has not yet attained age 65. If he is totally disabled before age 55 and has fifteen (15) years of Vesting Service without a Permanent Break-in-Service, he will receive Disability Pension upon attaining age 55. Payment under this section shall commence as provided in Section 4.09.

**Section 4.07 — Amount of the Disability Pension.** The monthly amount of the Disability Pension is determined in the same way as the monthly amount of the Normal Pension is determined.

**Section 4.08 — Total Disability Defined.** "Total Disability" as used in this Plan shall be defined as that term is defined in the Social Security Act, as amended from time to time. The Board may accept as sole proof of total disability a determination by the Social Security Administration that the Employee is entitled to a Social Security Disability Benefit in connection with his Old Age, Survivors, and Disability Coverage. The Board may, from time to time, permit other evidence of disability as it may deem just and appropriate. The Board may at any time, and from time to time, require evidence of an Employee's continued entitlement to Disability Pension Benefits by requiring evidence of entitlement to Social Security Disability Benefits, independent medical examinations, or other requirements as it may deem just and proper.

**Section 4.09 — Disability Pension Payments.**
(a) Except as stated in subsection (b) hereof, payment of the Disability Pension shall commence with the month following the month in which the Employee qualifies and applies for the Disability Pension, and shall continue thereafter for as long as such disability continues (i.e., the retired Employee remains entitled to a Social Security Disability Benefit, if that was the basis for the award), except that, effective April 1, 1987, a retired married Employee on a Disability Pension shall, upon attainment of age 65, have his Disability Pension converted to a Joint Pension, unless such retiree and his lawful Spouse waive such benefit in accordance with Section 6.01(d) of the Plan. (The Joint Pension shall commence on the first day of the month following the month such retiree attains age 65.) Upon attainment of age 65, a retired non-married Employee on a Disability Pension shall have his benefits continued, regardless of whether he remains totally disabled.

20

(b) If an application for disability benefits is filed no later than sixty (60) days following the determination by the Social Security Administration of entitlement to a Social Security Disability Benefit, such application will be deemed timely filed and the first monthly Disability Pension Benefit shall be payable to the Employee as of the first day of the month coincident with or next following the later of: 1) the date the Employee has complied with the provisions of Section 4.06; or 2) the effective date of the Employee's disability insurance benefits under the federal Social Security Act.

**Section 4.10 — Recovery by a Retired Employee on a Disability Pension.** If a retired Employee on a Disability Pension loses entitlement to a Social Security Disability Benefit, such application for a Disability Pension, or otherwise becomes ineligible for a Disability Pension hereunder, such fact shall be reported in writing to the Board of Trustees within fifteen (15) days of the date he receives notice from the Social Security Administration. If such written notice is not provided, his benefit payments will, upon his subsequent retirement, be reduced by an amount equal to the sum of: (a) amounts received by the retired Employee with respect to the Disability Pension subsequent to the date he was required to, but failed to report his ineligibility for a Disability Pension; and (b) an amount equal to interest on the above, calculated at the rate specified for the Fund's actuarial assumptions from time to time. The reduction in such benefits shall be accomplished by reducing the first monthly payments to be made in the retired Employee by twenty-five percent (25%) until the full amount of the reduction specified above has been fully accomplished.

**Section 4.11 — Reemployment of a Retired Employee on a Disability Pension.** A retired Employee on a Disability Pension who is no longer totally disabled may re-enter Covered Employment and may thereupon resume the accrual of Pension Credits.

**Section 4.12 — Conversion of an Early Retirement Pension to a Disability Pension.** A Participant receiving an Early Retirement Pension shall have his pension converted to a Disability Pension effective and payable retroactive to the first day of the month following the Participant's qualification for a Social Security Disability Pension, providing the date the Participant is determined to have become totally disabled, i.e. the onset of the total disability, is prior to the effective date of his Early Retirement Pension.

**ARTICLE 5 — ACCUMULATION OF PENSION CREDIT AND YEARS OF VESTING SERVICE**

**Section 5.01 — General.** The purpose of this Article is to define the basis on which Participants accumulate Pension Credits and Years of Vesting Service. This Article also defines the basis on which accumulated Pension Credits and Years of Vesting Service may be canceled.

**Section 5.02 — Pension Credit for Periods Before January 1, 1956 (Past Service Pension Credit).** Participants shall receive Past Service Pension Credit, subject to the following rules:

21

(a)(1) No Employee shall be credited with Past Service Pension Credit unless and until he shall have become a Participant of the Plan.

(2) A Participant shall be credited with Past Service only if such service was of such nature and extent that it would have qualified him for a contribution to the Pension Fund by a Contributing Employer if it had been performed subsequent to January 1, 1956.

(3) For purposes of determining eligibility for retirement, a Participant shall be credited with one month of service for each month of Past Service Pension Credit.

(4) For purposes of computing pension benefits, a Participant shall be credited with one month of service for each month of Past Service Pension Credit.

(b) Proof of Service.

(1) The Participant shall have the burden of establishing his right to Pension Credits, Past and Future. The Trustees shall be empowered to adopt rules and regulations requiring the filing, at such time or times and in such manner and form as they may specify, of applications for Past Service credits and applications to establish continuity of service (that is, to disregard absences from service as provided in this Article), and specifying the supporting data and evidence, including the Participant's record of union membership, where applicable, required to be filed or presented with or in support of such applications. A Participant failing to file any such application or supporting data and evidence in conformity with such rules and regulations shall not be entitled to credit for the Past Service claimed by him or to have his absence from service disregarded, as the case may be.

(2) Where the best available record of a Participant's Past Service consists of a transcript of his Social Security record, the following rebuttable presumptions shall apply:

(i) that employment by a Contributing Employer or his Predecessor was in Covered Employment;

(ii) where a Participant's earnings in the Service of Contributing Employers or their Predecessors during any quarter amounted to more than the amount set forth in column (b) below and to more than 66 percent of his earnings from all sources during said quarter, that he earned a Service credit during each of the three months of such quarter.

(iii) where a Participant's earnings in the Service of Contributing Employers or their Predecessors during any quarter amounted to less than specified in (ii) above but to more than the amount set forth in column (c) below and to more than 33 percent of his earnings from all sources during said quarter, that he earned a Service credit during each of two months (presumably the first and second months) of said quarter.

(iv) where a Participant's earnings in the Service of Contributing Employers or their Predecessors during any

22

quarter amounted to less than specified in (iii) above but to more than the amount set forth in column (d) below, that he earned a Service credit during one month (presumably the first month) of said quarter.

The respective amounts referred to in (ii), (iii), and (iv) above are dependent upon the union wage scales in effect during the year in which the quarter falls as follows:

| YEARS | (b) | (c) | (d) |
| --- | --- | --- | --- |
| 1937-1941, inclusive | $60 | $40 | $20 |
| 1942-1946, inclusive | 90 | 60 | 30 |
| 1947, et seq. | 120 | 80 | 40 |

(3) With respect to the period prior to January 1, 1937, active membership in one of the Unions shall be prima facie evidence that a Participant of the Plan earned Service Credits during the period of such Union membership, and failure to maintain active membership in the Union shall be prima facie evidence that the Participant did not earn Service Credits during the period of such failure.

**Section 5.03 – Pension Credit for Periods From January 1, 1956 through March 31, 1986 (Future Service Pension Credit).** A Participant shall receive a Future Service Pension Credit from January 1, 1956 through March 31, 1986 of one month for each month for which a contribution is payable to the Pension Fund by a Contributing Employer on account of work in Covered Employment performed by him during such month.

On and after April 1, 1986, a Participant shall receive Future Service Pension Credits of one (1) month for each month for which a contribution is payable to the Pension Fund by a Contributing Employer on account of work in Covered Employment from the date of his Participation without a Permanent Break-in-Service. No Pension Credit or Vesting Credit shall be given prior to becoming a Participant in a Plan Year, except for the three contributions by which the Employee became a Participant.

An Employee in the employ of a Contributing Employer who meets all the requirements for a specified monthly contribution to the Fund under the terms of the collective bargaining agreement between the Contributing Employer and the Union shall be entitled to have such contribution made to the Fund by the Contributing Employer no later than the tenth (10th) day of the month succeeding the month in which the employee qualified for such contributions. Pension Credit, for the purpose of establishing Vesting Service, benefit accrual, and Participation in the Plan, regardless of when the contribution is made, shall be credited in the month in which the service is performed. (For work for more than one Contributing Employer, see Sections 2.05 and 2.06.)

**Section 5.04 – Maximum Pension Credit.** No Participant shall receive more than one (1) year of Pension Credit in any one Plan Year. As to Pension Credit accrued prior to April 1, 1983, no more than 35 years of Pension Credit shall be allowed for computing the Pension Benefit as to

23

Pension Credit accrued on and after April 1, 1983, the 35-year maximum limit shall be inapplicable.

**Section 5.05 – Vesting Service.**

(a) Vesting Service Earned Prior to April 1, 1976.
For years prior to April 1, 1976, Vesting Service is the same as the total Pension Credits earned prior to April 1, 1976.

(b) Vesting Service Earned On and After April 1, 1976.

(1) Covered Employment. A Participant will receive one year of Vesting Service if he has six (6) or more monthly Employer Contributions made, or due to be made, on his behalf during a Plan Year. Proportionate years of Vesting Service are granted on the ratio of actual monthly contributions, to six (6), but in no event will a Participant receive more than one (1) year of Vesting Service in any Plan Year.

(2) Continuous Non-Covered Employment. If a Participant works for a Contributing Employer in Continuous Non-Covered Employment, each 45 Hours of Work or more in such Continuous Non-Covered Employment during a calendar month shall be counted the same as a monthly Employer Contribution in determining Vesting Service as in paragraph (1) above.

(3) Notwithstanding the above subparagraphs (1) and (2), if a Participant has 1,000 or more Hours of Work during a Plan Year in Covered Employment or in a combination of Covered and Continuous Non-Covered Employment, he will receive one Year of Vesting Service.

(4) Effective February 5, 1994, Vesting Service shall be granted for Family Medical Leaves recognized in accordance with the provisions of Section 5.06 (d)(4) of this Article, up to the maximums stated in said Section.

**Section 5.06 – Breaks in Service – General.** If a person has a Permanent Break-in-Service before he has achieved Vested Status, it has the effect of canceling this Participation, his previous Years of Vesting Service, and his Pension Credits accrued to the date of the Break-in-Service. A Break-in-Service may be temporary, subject to repair by again becoming a Participant before a Permanent Break-in-Service occurs. A longer Break-in-Service may be permanent as set forth in paragraphs (a), (b), and (c) below. The Break-in-Service rule does not apply to a Pensioner or a Vested Participant.

(a) Breaks in Service Before April 1, 1976. A Participant shall incur a Permanent Break-in-Service and his previously accumulated Pension Credit shall be canceled if he fails to earn three months of Pension Credit during any two consecutive Plan Years.

(b) Breaks-in-Service On or After April 1, 1976 through March 31, 1987. A Participant shall incur a Temporary Break-in-Service at the end of a Plan Year during which he fails to earn at least three (3) months of Vesting Service or 500 Hours of Work either in Covered or Continuous Non-Covered Employment or a combination thereof. Such Break-in-Service shall become a Permanent Break-in-Ser-

vice unless the Employee is reinstated as a Participant under Section 3.04 within a period of time not exceeding the length of his previously accumulated Vesting Service.

(c) Breaks-in-Service on or After April 1, 1987. A Participant shall incur a Break-in-Service at the end of a Plan Year during which he fails to earn at least four (4) months of Vesting Service or 500 Hours of Work either in Covered or Continuous Non-Covered Employment or a combination thereof. Such Break-in-Service shall become a Permanent Break-in-Service unless the Employee is reinstated as a Participant under Section 3.04 within a period of time equal to the greater of his previously accumulated Vesting Service or five consecutive Plan Years.

(d) Grace Period. A Participant who was unable to accumulate sufficient Pension Credit or hours or shifts of work to otherwise prevent a Permanent Break-in-Service or otherwise prevent a restoration of the accrued benefits under Section 7.07 (b) shall be entitled to a grace period under the following circumstances:

(1) Any period which does not exceed thirty-six (36) consecutive months during which the Participant fails to earn service credits because of total, involuntary covered unemployment (Prior to January 1, 1965, the grace period applied to any period of whole or partial unemployment up to a maximum of one (1) year.)

(2) Any period of absence from service because of temporary or permanent total disability, provided that such absence shall not exceed thirty-six (36) months. The Trustees have the discretion to determine temporary or total disability and to use the criteria for such disability contained in the Workers' Compensation Act or the California Unemployment Insurance Code. (Prior to July 1, 1965, absence for temporary or total disability could not exceed two years.)

(3) Any period of leave of absence due to service in the Armed Forces of the United States caused by war, national emergency, or pursuant to a national conscription law. (See Section 5.08.)

(4) Family Medical or Other Leaves:

(i) Any period of absence from service not exceeding the periods of time stated in paragraph (ii) below, during which the Participant fails to earn service credits because of a Family Medical Leave, which is defined as a leave for one of the following four reasons:

a. the pregnancy of the Participant and/or the birth or placement of a child for adoption or foster care, (for rule in effect prior to 1987, See Section 5.06(d)(5)).

b. the care for a newborn child during the period immediately following the birth or placement of the child for adoption or placement of a child for adoption or foster care, (for rule in effect prior to 1987, See Section 5.06(d)(5)).

c. the care for an immediate family member (spouse, child, or parent) with a Serious Health Condition, (as defined below), (effective February 5, 1994), or

d. to take medical leave when the employee is unable to work because of a Serious Health Condition. (effective February 5, 1994).

(ii) In determining whether a Break-in-Service has occurred for Participation and Vesting purposes, a Participant is deemed to have completed Hours of Service for periods of absence from work, up to a maximum of the lesser of 501 hours or the length of a leave of absence for the conditions specified in sub-paragraphs (i) (a) and (b) above, or the lesser of 12 weeks or the period of a leave of absence for one of the conditions specified in sub-paragraphs (i) (c) and (d) above.

(iii) The Hours of Service required to be credited must be credited only in the year in which the absence begins if the crediting of such hours is necessary to prevent a Break-in-Service in that Plan Year; if not, the hours shall be credited in the following Plan Year.

(iv) For the purpose of this Section and "Grace Period" rule, a "Serious Health Condition" means an illness, injury, impairment or physical or mental condition that:

(a) involves any period of incapacity or treatment connected with inpatient care in a hospital, hospice or medical care facility or requiring an absence from work for more than three days or other regular daily activities, and that also involves...

(b) continuing treatment by or under the supervision of a health care provider for a chronic or long term health condition that is incurable or so serious that, if not treated, would likely result in a period of incapacity of more than three calendar days, and for prenatal care.

(v) The Trustees may, in their sole discretion, and irrespective of whether or not the Employer required the employee to certify to his or her eligibility for Family Medical Leave, require the Participant to so certify and to provide evidence of the condition underlying the Family Medical Leave, including but not limited to providing such medical evidence as the Trustees deem appropriate, and/or that leave actually was taken for one of the purposes enumerated above.

(vi) During the period of absence from work caused by such reasons, the Participant shall be treated as having completed the number of Hours of Service of Covered Employment that normally would have been credited but for the absence, or if the normal hours of Covered Employment are unknown, eight (8) Hours of Service for each normal workday during the leave, subject to the maximum of 501 hours for (1)(a) and (b), and a maximum of 480 hours (40 hours Xs 12 weeks) for 1(c) and (d).

(5) Prior to April 1, 1987, any period of absence from service due to pregnancy and/or childbirth not in excess of ten months.

(6) Any period, not in excess of six months, during which the Participant is on leave of absence granted by a Contributing Employer, in writing in advance, and during which the Participant does not accept other employment.

26

(7) Any period during which a Participant, although employed by a Contributing Employer is assigned by such employer to employment other than Covered Employment, provided, however, in the case of assignment to employment in the City and County of San Francisco, that the employment is not subject to union contract and provided that, in the case of assignment to employment outside the City and County of San Francisco, absence from service does not exceed three (3) years. (Prior to July 1, 1965, absence from service outside of San Francisco could not exceed one year.)

(8) Effective June 1, 1973, in the event a Participant of the Plan has been actively engaged in the San Francisco restaurant, hotel, motel, club, or bar business and thereafter becomes an owner or part owner so as to cause contributions to the Plan not to be made on his or her behalf because the individual is not covered by the bargaining unit, such period of ownership or part ownership shall not be considered a Break-in-Service for the purpose of maintaining continuity of credited service.

During the period of such ownership or part ownership, the establishment must have made contributions to the Fund on eligible employees or must not employ any eligible employees at all. No service credits are applicable and the period of such ownership or part ownership, and verification of such ownership status must be made to the satisfaction of the Board of Trustees.

(9) An employee who has lost his status as a participant in accordance with Section 3.03 who again becomes a participant in the plan shall receive credit as of the date of reinstatement of participation in accordance with said section.

Section 5.07 – Vested Status. A Participant shall achieve Vested Status as follows:

(a) After April 1, 1976. A Participant shall have achieved Vested Status if he has accumulated at least ten (10) years of Vesting Service without an intervening Permanent Break-in-Service or upon attainment of Normal Retirement Age as defined in Section 1.12. (Effective April 1, 1989, a Participant employed by a Union or an Association or who is employed with a contributing employer in employment not covered by a collective bargaining agreement shall have achieved Vested status if he has accumulated at least five (5) years of Vesting Service without an intervening Permanent Break-in-Service or upon attainment of Normal Retirement age as defined in Section 1.12.)

(b) From April 1, 1974 to March 31, 1976. The Plan in effect before 1976 required fifteen (15) years of Credited Service, attainment of age 65, and continuous Credited Service until the date of actual retirement in order to be eligible for a Normal Pension. However, effective April 1, 1974, the Plan was amended to provide that Members of the Plan who completed ten (10) years of continuous Credited Service on or after April 1, 1974 were eligible for retirement benefits upon attainment of retirement age.

(c) Prior to April 1, 1974. On and after January 1, 1956, a Member of the Plan had to have fifteen (15) or more years of Credited Service, must have been in continuous Cred-

27

ited Service until the date of actual retirement, and must have attained the age of 65 in order to be eligible for a Normal Pension. Only a Member who attained 55 years of age, became unemployed or partially unemployed after January 1, 1960 so as not to qualify for Employer Contribution but who had fifteen (15) years (180 months) or more of Credited Service, and had been a Member of the Plan for ten (10) years, was eligible to retire upon reaching retirement age, notwithstanding failure on account of such unemployment to receive Service Credit after age 55, provided that such Member shall have remained available for full service at the date of retirement, i.e., the only "resting" exception to the requirement of continuous Credited Service until the date of retirement, i.e., the only "resting" rule prior to April 1, 1974. (Effective July 1, 1965, the requirement for being a Member of the Plan for ten (10) years was reduced to four (4) years. Effective on November 1, 1968, the proviso requiring availability for full service after age 55 was deleted.) The terms "Member of the Plan," "continuous Credited Service" and "Credited Service" are defined in the Plan in effect prior to April 1, 1976.

**Section 5.08 – Military Service.**

(a) After April 1, 1976. Subject to regulations adopted by the Board of Trustees on October 26, 1979, an authorized leave of absence due to service in the Armed Forces of the United States shall not constitute a Break-in-Service and shall be considered as Pension Credit and Vesting Service under the Plan, provided that the absence was caused by war or national emergency, or was taken pursuant to a national conscription law, and provided the Participant makes himself available for Covered Employment within the period provided by law. Absence from service before January 1, 1956 because of military service entitles the Participant to one (1) month's Past Service Pension Credit for each full month of active military service up to twelve (12) months in one calendar year. The total period of active duty in the military for which credit may be granted under the Plan may not exceed four (4) years, plus an additional year if duty was at the request and for the convenience of the government.

(b) Prior to April 1, 1976. A grace period, but no Pension Credit, was provided for any period of absence because of service in the Armed Forces of the United States in time of war or national emergency pursuant to a national conscription law, provided the Member made himself available for Covered Employment within ninety (90) days after his release from active duty or ninety (90) days after his recovery from the disability, continuing after his release from active duty, but excluding periods of voluntary re-enlistment not affected by national emergency or time of war. Prior to July 1, 1965, a grace period was granted, but no Pension Credit was given for any period of absence from service under the Plan because of compulsory military service.

**ARTICLE 6 – JOINT PENSION AND PRE-RETIREMENT SURVIVOR ANNUITY**

**Section 6.01 – Joint Pension After Retirement.**

(a) Joint Pension Defined. Effective August 23, 1984, the normal form of benefit under this Plan for a married Participant who had one or more hours of Covered Employment on or after September 1, 1974 and who had not yet begun to receive an annuity shall be a Qualified Joint and Survivor Annuity ("Joint Pension") unless the Participant and his lawful Spouse waive such annuity pursuant to Section 6.01(d) below. The Joint Pension provides a lifetime pension for a married Pensioner and, after his death, a lifetime pension for his surviving Spouse. The Joint Pension is Actuarially Equivalent to the single life pension, which is the normal form of benefit under this Plan for non-married Participants. When a Joint Pension is in effect, the amount of the Pensioner's monthly benefit is reduced (in accordance with Section 6.03) from the full amount otherwise payable. The monthly amount payable to the surviving Spouse of a deceased Pensioner who receives a Joint Pension is one-half of the monthly pension amount paid to the Pensioner.

(A married Participant who qualified and applied for Early Retirement or Normal Retirement benefits on and after November 1, 1969 through March 31, 1976 could elect a Joint Pension. Between April 1, 1976 and August 22, 1984, the Spouse of a married Participant who died at a time he was entitled to a pension but before pension payments commenced was eligible for a Joint Pension, provided the Participant died after becoming eligible for early or normal retirement benefits.)

(c) No Adjustment of Benefits. Effective April 1, 1974, the monthly amount of the Joint Pension, once it has become payable, shall not be increased if the marriage of the Pensioner and his Spouse is subsequently legally terminated or if the Spouse predeceases the Pensioner.

(b) Distribution Requirement. Effective April 1, 1983, a Participant's entire interest must be distributed no later than the period from the required Pension Commencement Date over the life of the Participant and over the life of the Participant's Spouse.

(d) Waiver of the Joint Pension. Effective January 1, 1985, the following spousal consent requirements shall apply:

(1) Election Not to Receive Joint Pension Option. A married Participant and lawful Spouse may elect not to receive the Joint Pension (see subsection (2) below) during a ninety (90) day period ending on the Participant's annuity starting date (as defined in ERISA Section 201(b)(2)) by filing a written waiver of such joint pension option with the Fund Manager on such forms or in the manner as the Board of Trustees requires. The Participant may revoke any previous waiver, election, or revocation of a waiver up to said Participant's retirement date.

(2) Spousal Consent. An election by a married Participant not to receive a Joint Pension is effective only if the

Participant's lawful Spouse consents to such election in writing on a form to be provided by the Plan and such election is witnessed by a Plan representative or notary public.

Both the married Participant and Spouse electing not to receive the Joint Pension shall receive and acknowledge in writing that they have received a written explanation of the terms and conditions of the Joint Pension; the Participant's right to make, and the effect of, an election to waive, the Joint Pension form of benefit; the rights of the Participant's Spouse; and the right to make, and the effect of, a revocation of an election. A Participant's pension application may be delayed until said Participant and Spouse have submitted the documents required herein and any other documentation required by the Plan or the Board of Trustees.

(3) **Limited Exceptions – No Spousal Consent Required.** Spousal consent shall not be required if the Participant establishes to the satisfaction of the Board of Trustees that the consent required by the Spouse cannot be obtained because there is no Spouse or the Spouse cannot be located or because of other unusual circumstances. Spousal consent shall also not be required as allowed by federal law, court decisions, or regulations.

(4) **Limited Effect of Spousal Consent/Spouse Determination.** A consent to a Spouse is effective only with respect to that Spouse, and a determination that the consent of a Spouse cannot be obtained is also effective only with respect to that Spouse.

(e) **Joint Pension for Disabled, Married Participants.** Effective April 1, 1987, the Joint Pension shall be payable to a married Participant receiving a disability retirement benefit pursuant to Sections 4.06 and 4.09 above upon the first day of the month following the date said Participant attains age 65, unless such Participant and his lawful Spouse waive such Joint Pension in the manner set forth above in subsection (d).

**Section 6.02 – Pre-Retirement Survivor Annuity.**

(a) **Participant's Death Before Attainment of Age 62.** Effective August 23, 1984, if a married Participant who earned an hour or more of Covered Employment on or after April 1, 1976, who was alive on August 23, 1984, and who had not begun receiving an annuity dies before attaining age 62 and at the time of death had earned a Vested Benefit under the Plan, said Participant's surviving Spouse shall receive a pension equal to one-half (½) the amount the Participant would have received had he separated from Covered Employment on the date of death, survived to age 62, retired with a Joint Pension, and died on the day after he would have attained age 62. The surviving Spouse's benefit is payable under this provision at the time the deceased Participant would have attained age 62 in accordance with Section 7.01(a) below. The amount shall be determined in accordance with Section 1.01(a) of the Plan. [For the period from April 1, 1976 through August 22, 1984, a Pre-Retirement Survivor Annuity was payable only to a surviving Spouse of a

Vested Participant whose last separation from Covered or Non-Covered Employment was on or after age 62.]

(b) **Participant's Death After Attainment of Age 62.** Effective April 1, 1976, if a married Participant dies on or after the date he attains age 62 and at the time of his death has earned a Vested Benefit under the Plan and is eligible to retire on an early or normal retirement benefit as set forth in Sections 4.02 and 4.04 of the Plan, the Participant's surviving Spouse shall receive a Pre-Retirement Survivor Annuity for life equal to one-half (½) the amount that would have been payable to the Participant had he retired with a Joint Pension on the day before his death. The amount of such pension shall be determined in accordance with Section 1.01(a) above and shall be payable pursuant to Section 7.01(a) below.

(c) **Death of Totally Disabled Employee-Participant Before Age 65.** Effective August 23, 1984 the surviving spouse of a totally disabled Employee-Participant receiving a Disability Pension pursuant to Section 4.06 who dies before attaining age 62 shall be entitled to a Pre-Retirement Survivor Annuity in accordance with Section 6.02(a). If a totally disabled Employee-Participant receiving a disability dies after attainment of age 62, his or her spouse shall be entitled to receive a Pre-Retirement Survivor Annuity in accordance with Section 6.02(b).

**Section 6.03 – Adjustment of Pension Amount.** When a Joint Pension becomes effective, the amount of the retired Employee's monthly pension shall be reduced in accordance with a formula or formulas adopted by the Board of Trustees based on the principles of overall Actuarial Equivalence and equitable adjustment for the cost of such annuities, as set forth in Section 1.01(a) of the Plan.

**Section 6.04 – Additional Conditions.**

(a) The Joint Pension shall not be effective under any of the following circumstances:

(1) the Spouse died before the Participant's pension began;

(2) the marriage of the Participant and his Spouse was legally terminated before the Participant's pension began. [But see Section 7.10, Qualified Domestic Relations Order.]

(b) The Board shall be entitled to (but is not required to) rely on the written representation last filed by the Participant before his pension payments commenced as to whether or not he was married at such time.

(c) Any payment made in good faith pursuant to any written statement of a Participant or Beneficiary shall discharge all obligations of the Board of Trustees to the extent of such payments. No Joint Pension shall be payable to an individual claiming to be the lawful Spouse of a Participant unless written proof has been filed of such status with the Board of Trustees prior to the month following the making of the first pension payment.

# ARTICLE 7 – APPLICATIONS, BENEFIT PAYMENTS, AND RETIREMENT

**Section 7.01 – Applications and Payment.**

(a) Any claim to pension benefits, including Normal Retirement, Early Retirement, Pre-Retirement Survivor Annuity and Disability Retirement Benefits, or claims under the Plan or against the Fund shall be made on a form and in a manner prescribed by the Trustees.

Normal Retirement Pension Benefits (Sections 4.02 and 4.03), shall be payable commencing as of the first day of the month following the month in which the Participant fulfills all the conditions of entitlement to benefits. Early Retirement Pension Benefits provided for in Sections 4.04 and 4.05 and the Pre-Retirement Survivor Annuity provided for in Section 6.02, shall be payable commencing as of the first day of the month following the month in which the Participant or Spouse fulfills all the conditions of entitlement to benefits and files an application for such Benefits. The dates stated herein applicable to Normal Retirement, Early Retirement, and Pre-Retirement Survivor Annuity shall be the Effective Date of Pension as that term is used in the Plan. Disability Retirement Benefits provided for in Sections 4.06 to 4.08 shall be payable in accordance with the provisions of Section 4.09.

(b) Payment of benefits to a Participant who is entitled to a Normal Pension Benefit under the provisions of this Plan effective and payable on the date referred to in Section 7.01(a) shall be made and distributed no later than the 60th day after the latest of the close of the Plan Year in which:

(1) the Participant attains the age of 65;

(2) the Participant terminates his service with his last Covered Employer;

(3) the Participant has either reached (a) the tenth (10th) or the fifth (5th) anniversary of the year in which the Participant commenced Participation in the Plan which-ever is applicable under Sections 1.12 and 4.02, without an intervening Permanent Break-in-Service; or (b) the Participant has attained ten (10) years of Vesting Service without an intervening Permanent Break-in-Service.

(4) A Participant with at least one hour of service on or after April 1, 1989 employed by a Union or an Association or who is employed with a contributing employer in employment not covered by a collective bargaining agreement who has either reached (a) the tenth (10th) anniversary of the year in which the Participant commenced Participation in the Plan without an intervening Perma-nent Break-in-Service, or (b) fifth (5th) anniversary of the year in which the Participant commenced Participation in the Plan whichever is applicable under Sections 1.12 and 4.02, without an intervening Permanent Break-in-Service; or (c) the Participant has attained five (5) years of Vesting Service without an intervening Permanent Break-in-Service.

At the option of the Board of Trustees, said benefit payments or distributions shall include a lump sum equal to any unpaid benefits accruing from the Effective

32

Date of Pension (see Section 7.01(a)), or monthly pay-ments actuarially increased to take into account any delay between the Effective Date of Pension and commence-ment of benefit payments or distributions.

Notwithstanding the foregoing, if a Participant has received a distribution of his vested benefit under Section 7.07(a), below, and such benefit has not been restored under Section 7.07(b), below, then no additional benefit shall be payable under this section.

**Section 7.02 – Information Required.** Each Participant, Beneficiary, Pensioner or any other claimant shall furnish to the Board of Trustees any information or proof requested by it and reasonably required to administer the Pension Plan. Failure on the part of any Participant, Bene-ficiary, Pensioner, or claimant to comply with such request promptly, completely, and in good faith shall be sufficient grounds for denying, suspending, or discon-tinuing benefits to such person. If a Participant, Benefici-ary, Pensioner or other claimant makes a false statement material to his claim, the Board of Trustees shall recoup, offset, or recover the amount of any payments made in reliance on such false statement in excess of the amount to which such Participant or Pensioner or other claimant was rightfully entitled under the provisions of this Plan.

**Section 7.03 – Action of Board of Trustees.** The Board of Trustees shall, subject to the requirements of the law, be the sole judge of the standard of proof required in any case, and they shall have the discretionary authority to determine the eligibility for benefits of any Plan Partici-pant and/or to construe the terms of this Plan and to apply the Plan, and decisions of the Board of Trustees shall be final and binding on all parties, subject only to such judicial review as allowed by federal law.

**Section 7.04 – Right of Appeal and Determination of Disputes.**

(a) No Employee, Pensioner or other Beneficiary or claim-ant shall have any right or claim to benefits under the Pension Plan, other than as specified herein. Any dispute as to eligibility, type, amount, or duration of benefits shall be resolved by the Board of Trustees under and pursuant to the Pension Plan, and its decision of the dispute shall be final and binding upon all parties thereto.

(b) Any person whose application for benefits under the Plan has been denied in whole or in part by the Board of Trustees, or whose claim to benefits is otherwise denied by the Board, shall be notified of such decision in writing by the Board of Trustees and may petition the Board to review the decision. A petition for review shall be in writing, shall state in its clear and concise terms the reason or reasons for disagreement with the decision of the Board of Trustees, and shall be filed with or received by the Board of Trustees within 60 days after the date shown on the notice to petitioner of the decision. Upon good cause shown, the Board may permit the petition to be amended or supplemented. Except for good cause shown, the failure to file a petition for review within such 60-day period shall constitute a waiver of the claimant's right to review the decision on the basis of the information

33

and evidence submitted prior to the decision. Such failure will not, however, preclude the claimant from establishing eligibility for benefits at a later date based on additional information and evidence which was not available to the claimant at the time of the decision.

(c) The Board of Trustees shall have the discretionary authority to determine the eligibility for benefits of all Plan Participants and/or to construe the terms of the Plan. A decision of the Board of Trustees with respect to a petition for review shall be final and binding upon all parties, including the applicant or petitioner and any person claiming under the applicant or petitioner. The provisions of this section shall apply to and include any and every claim to benefits from the Fund, and any claim or right asserted under the Plan or against the Fund regardless of the basis asserted for the claim and regardless of when the act or omission upon which the claim is based occurred.

**Section 7.05 – Benefit Payments Generally.** A Participant who is eligible to receive a pension benefit under this Plan and makes application in accordance with the rules of this Pension Plan shall be entitled upon retirement to receive the monthly pension benefits provided for the remainder of his life and the life of his Spouse (unless the joint Pension is waived), subject to the provisions of this Plan.

(a) If a Pensioner submits evidence of entitlement to additional Pension Credit, his increased pension, if any, will become effective retroactively to the Effective Date of Pension, i.e., first day of the month following the month the Participant fulfilled all the conditions of entitlement to benefits. (See Section 7.01.)

(b) If a Participant previously denied a pension submits evidence of entitlement to additional Vesting Service or Pension Credit or years of participation which subsequently qualifies him for a pension, his pension will become effective retroactive to the Effective Date of Pension, i.e., first day of the month following the month in which the Participant fulfilled all the conditions of entitlement to benefits. (See Section 7.01.)

(c) At the option of the Board of Trustees, payments for past unpaid benefits granted after the submission of evidence of entitlement to additional Pension Credit, or retroactive benefits to a Participant previously denied a pension, shall be paid either as a single lump sum payment or prospectively in the form of actuarially increased monthly payments or distributions.

(d) Payment of monthly benefits under the Plan to a Participant cannot exceed the limit of annual benefit per Participant contained in Section 415(b) of the Internal Revenue Code, as it may be amended (which is annually adjusted by cost-of-living increases), or 100 percent of the Participant's average compensation for his high three years of earnings while under the Plan.

34

(For purposes of applying the limitations of Internal Revenue Code ("IRC") Section 415, the term "compensation" includes:

A participant's earned income, wages, salaries, fees for professional service and other amounts received for personal services actually rendered in the course of employment with an employer maintaining the plan (including, but not limited to, commissions paid to salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips and bonuses). Compensation shall also include (and not include) Income and funds received as provided in IRC Regulation Section 1.415-2(d).

Compensation for any limitation year is the compensation actually paid or includable in gross income during such year.

In determining whether the Plan meets the Internal Revenue Code maximum limitations on benefits, the maximum dollar and compensation limits are to be reduced where a participant begins to receive benefits under the Plan. The reduction is made by multiplying the applicable limitations by a fraction, the numerator of which is the years of service as of and including the current limitation years, and the denominator of which is ten (10).

If the benefit commences before a participant attains age sixty-two (62), the maximum permissible amount may not exceed the lesser of the actuarial equivalent of a $90,000 annual benefit beginning at age 62 or the Participant's highest average compensation. This actuarial adjustment shall not reduce the $90,000 limitation below $75,000 if the benefit begins at or after age 55.

Effective April 1, 1988, and each January 1 thereafter the $90,000 limitation above will be automatically adjusted to the new dollar limitation determined by the Commissioner of Internal Revenue Service for that year. The new limit will apply to limitation years ending within the calendar year of the date of the adjustment.

(e) If any benefits are due and payable at the time of the Pensioner's or Beneficiary's death, such benefits shall be paid to the estate of the Pensioner or Beneficiary unless any other person is entitled to such benefits by law. Such payments must be made, except in the case of a surviving Spouse, within five (5) years of the death of the Participant.

(f) In the event that there are conflicting claims to a benefit payable under the terms of the Plan, the Board of Trustees may interplead the claimants by appropriate proceedings in a court of competent jurisdiction. In such event, the provisions of Section 7.04 shall not apply, and the claimants shall submit their respective claims to the court in which the interpleader proceedings are pending.

Upon deposit with the court of the accrued benefits, the Board of Trustees shall be entitled to be dismissed from the interpleader proceedings and to payment of its costs in connection therewith, including reasonable attorney's fees. Thereafter, a final decision of the court in the proceedings shall bind all claimants to the benefit and shall

35

constitute a full discharge of the Board of Trustees and the Fund from any liability with regard to the benefit.

(g) Notwithstanding anything herein to the contrary, distribution of the benefits of a Participant who attained age 70½ before January 1, 1988 shall commence by April 1 following the later of the calendar year in which the Participant retires or attains age 70½.

A distribution of the benefits of Participants who attained age 70½ in calendar years 1988 or 1989 shall commence no later than April 1, 1990; distribution of the benefits of persons attaining age 70½ in calendar year 1990 or thereafter shall commence no later than April 1 following the calendar year in which the Participant attains age 70½. This rule stated in this paragraph shall apply regardless of whether the Participant has retired.

(h) Distributions to a Participant who is a 5% owner (as defined in IRC §416(i)(1)(B)) at any time during the 5-plan year period ending in the calendar year in which such Participant attains age 70½ shall commence no later than April 1 of the calendar year following the calendar year in which the Participant attains age 70½. If a Participant becomes a 5% owner during any subsequent plan year, distribution of benefits shall commence no later than April 1 of the calendar year following the calendar year in which such subsequent plan year ends.

**Section 7.06 – Lump-Sum Payment in Lieu of Monthly Benefit.** If, at the time a monthly benefit becomes payable to a Participant or Beneficiary, the total lump sum present value is $3,500 or less, the Board of Trustees at its discretion may pay to the Participant or Beneficiary in a lump sum (see Section 1.01(b)), the amount of such actuarially calculated value, in lieu of the monthly benefit otherwise payable.

**Section 7.07 – Distribution of Vested Zero Balance**

(a) If an Employee terminates service when the present value of his or her vested accrued PAST and/or FUTURE SERVICE Benefit is zero, the Employee shall be deemed to have received an immediate distribution of such vested accrued benefit.

(b) If an Employee who is deemed to receive a distribution pursuant to Section 7.07(a) above resumes Covered Employment thereafter within the greater of five (5) consecutive Plan Years or as many consecutive Plan Years as have been previously credited to said Employee, the Employee's Benefit shall be restored to the amount of such accrued benefit on the date of the deemed distribution. In counting the time limits specified above, the grace period rules of Section 5.06(d) shall apply.

(c) An employee who has lost his status as a Participant in accordance with Sections 3.03 and/or this Section 7.07, who again becomes a Participant in the plan before incurring a Permanent Break-in-Service, shall receive participation, benefit accrual and vesting credit that has accrued since the Participant's original date of commencement of participation in the plan.

36

**Section 7.08 – Retirement and Employment After Retirement.**

(a) To be considered retired under the Pension Plan, an Employee must terminate from covered employment.

(b) From July 1, 1985 through March 31, 1989, if a Pensioner subsequent to retiring becomes employed in the geographical jurisdiction of the Union[s] in work covered by a collective bargaining agreement or in the geographical jurisdiction of a Related Plan, for which Participants receive Related Credit, such Pensioner shall not receive Pension Credit or actuarial adjustment of his benefit even though his employer makes a contribution[s] on his behalf.

(c) Effective April 1, 1989, a Participant receiving pension benefits who had at least one hour of covered employment and service in any Plan Year beginning on or after April 1, 1988, shall continue to receive Pension Credit notwithstanding attainment of age 65 and the continued receipt of benefits, but such Participant's benefits shall be offset to the extent of the actuarial equivalent of their continued in-service distribution of benefits, in accordance with IRC §411(b)(1)(H)(iii) and IRS regulations. Effective April 1, 1989, no retroactive credit will be granted for Plan years during which such Participants were in covered employment, but not receiving Pension Credit for the period prior to April 1, 1983 if a participant had already earned thirty-five years of Pension Credit before April 1, 1983.

(d) Pensioners who continue to work and are under age 65 shall continue to receive full pension credits as provided in Section 4.03. Pensioners age 70½, who retired and received a distribution of benefits under Section 7.05(g) also shall continue to accrue full benefits.

**Section 7.09 – Non-Forfeitability and Vested Status.**

(a) The Employee Retirement Income Security Act requires that certain of the benefits under this Plan be non-forfeitable.

(b) Effective April 1, 1976, a Participant acquires a non-forfeitable right to a Normal Pension at Normal Retirement Age upon attainment of his tenth (10th) or fifth (5th) anniversary of Participation in the Plan, whichever is applicable under Sections 1.12 and 4.02, without an intervening Permanent Break-in-Service or ten (10) years of Vesting Service without an intervening Permanent Break-in-Service.

(c) A Participant with at least one hour of service on or after April 1, 1989 employed by a Union or an Association or who is employed with a contributing employer in employment not covered by a collective bargaining agreement acquires a non-forfeitable right to a Normal Pension at Normal Retirement Age upon attainment of his tenth (10th) anniversary of Participation in the Plan without an intervening Permanent Break-in-Service or five (5) years of Vesting Service without an intervening Permanent Break-in-Service.

37

(d) No amendment of this Plan may take away a Participant's non-forfeitable right to a Normal Pension at Normal Retirement Age, if he has already earned it at the time of the amendment. Also, an amendment may not change the schedule on the basis of which a Participant acquires such right, unless each Participant who has at least five (5) years of service at the time the amendment is adopted or effective (whichever is later) is given the option of achieving such a non-forfeitable right on the basis of the pre-amendment schedule.

That option may be exercised within 60 days after the latest of the following dates:

(1) when the amendment was adopted;

(2) when the amendment became effective; or

(3) when the Participant was given written notice of the amendment.

The provisions of this Section 7.09 are subject to the conditions of Sections 7.01, 7.02, and 7.05.

**Section 7.10 – Incompetence, Incapacity, or Minority of Payee.** In the event that it is determined to the satisfaction of the Board of Trustees that a Pensioner or his Beneficiary is incompetent or incapable of executing a valid receipt, or that a Beneficiary is a minor, and that no guardian, committee, or representative of the payee has been legally appointed, the Board may, in its sole discretion, during the lifetime of the payee, pay any amount otherwise payable to such payee, to the person or persons, or institution or facility, who or which in its opinion has been caring for or supporting the payee (except that no payment shall be made to a governmental institution or facility if the payee is not legally required to pay for his care and maintenance), until claim is made for the remainder by a legally appointed guardian, committee, or other representative of the payee. Any payment in accordance with this section shall discharge the obligation of the Fund hereunder to the extent of such payment.

**Section 7.11 – Non-Assignment of Benefits.** Each Participant, Pensioner, or Beneficiary under the Plan is hereby restrained from selling, transferring, anticipating, assigning, alienating, hypothecating, or otherwise disposing of his pension, prospective pension, or any other right or interest under the Plan, and the Board of Trustees shall not recognize, or be required to recognize, any such sale, transfer, anticipation, assignment, alienation, hypothecation, or other disposition. Any such pension, prospective pension, right, or interest shall not be subject in any manner to voluntary transfer or transfer by operation of law or otherwise, and shall be exempt from the claims of creditors or other claimants and from all orders, decrees, garnishments, executions, or other legal or equitable process or proceeding to the fullest extent permissible by law.

(a) The right of a Spouse of any Participant or Pensioner shall be limited to a community property share of the pension actually received by a Pensioner, after such receipt, and to rights as the designated Beneficiary of a Participant or Pensioner, or other rights expressly pro-

38

vided in this Plan, and no pension, prospective pension, right, or interest of a Participant or Pensioner shall, except for a Qualified Domestic Relations Order (court judgment, decree, or order) as defined in Section 414(p) of the Code, be subject to any order, decree, execution, or other legal or equitable process or proceeding for the benefit of such Spouse directed to the Fund.

(b) Effective August 23, 1984, the Trustees will comply with a Qualified Domestic Relations Order (court judgment, decree, or order) as defined in Section 414(p) of the Code. The Trustees shall establish and maintain rules of procedure for determining the qualified status of Domestic Relations Orders and for administering distributions under such Qualified Orders.

**Section 7.12 – No Actuarial Increase for Delayed Pension Applicants.** Except as provided in Section 7.01(b) above, Participants eligible for pension benefits who delay applying for a pension until after the date they would otherwise be eligible for a pension will not receive an actuarial increase in the benefit which would have been paid to them at their Normal Retirement Age, or the date they would have been eligible to receive pension benefits, whether or not such participants continue to work in covered employment. If such participants continue to work and do not take their pension benefits, they will continue to accrue additional Pension Credit for any such additional period of work.

**Section 7.13 – Roll-Over Distributions.** For distributions made on or after January 1, 1993: Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election, a distributee may elect, at the time and in the manner prescribed by the Plan administrator, to have any portion of an eligible rollover distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover.

For the purpose of this Section, the definitions are as follows:

**Eligible rollover distribution:** An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include: any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten (10) years or more; any distribution to the extent such distribution is required under Section 401(a)(9) of the Code; and the portion of any distribution that is not includable in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

**Eligible retirement plan:** An eligible retirement plan is an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408 (b) of the Code, an annuity plan described in Section 403 (a) of the Code, or qualified trust described in Section 401 (a) of the Code, that accepts the distributee's

39

eligible rollover distribution. However, in the case of an eligible rollover distribution to the surviving spouse, an eligible retirement plan is an individual retirement account or individual retirement annuity.

**Distributee:** A distributee includes an employee or former employee. In addition, the employee or former employee's surviving spouse and the employee's or former employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Section 414(p) of the Code, are distributees with regard to the interest of the spouse or former spouse. Direct rollover: a direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

**No Withholding of eligible rollover distributions less than $200:** In accordance with IRC Section 3405(c) and the regulations adopted thereunder, the Plan shall not withhold tax from an eligible rollover distribution of which a direct rollover election was not made if the amount of the distribution is less than $200.

## ARTICLE 8 – MISCELLANEOUS

**Section 8.01 – Gender.** Wherever any words are used in this Pension Plan in the masculine gender, they should be construed as though they were also used in the feminine gender in all situations where they would so apply; whenever any words are used in this Pension Plan in the singular form, they should be construed as though they were also in the plural form in all situations where they would so apply, and vice versa.

**Section 8.02 – Minimum Funding Standard Account.** The Trustees shall maintain a minimum funding standard account in accordance with ERISA.

**Section 8.03 – Merger or Consolidation.** In the case of any merger or consolidation with, or transfer of assets or liabilities to, any other plan or trust which results in termination of the Plan, each Participant in the Plan shall receive a benefit immediately after the merger or consolidation which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger or consolidation.

## ARTICLE 9 – AMENDMENT AND TERMINATION

**Section 9.01 – Amendment.** This Plan may be amended at any time by the Board consistent with the provisions of the Trust Agreement. The procedure for amendment is as follows: By majority vote, or by the vote of a neutral umpire in the event the Trustees are deadlocked with respect to a proposed amendment to the Plan, the Trustees shall direct legal counsel to prepare an amendment to the Plan. The amendment in draft form shall be presented to representatives of the bargaining parties who have the power to appoint a Trustee under the Agreement and Declaration of Trust. After consultation with such parties, the amendment shall be voted by the Trustees at the next regularly scheduled meeting of the full Board of Trustees. No

amendment may decrease the accrued benefit of any participant, except:

(a) as necessary to establish or maintain the qualification of the Plan or the Trust Fund under the Internal Revenue Code and to maintain compliance of the Plan with the requirements of ERISA; or

(b) if the amendment meets the requirements of Section 302(c)(8) of ERISA, and Section 412(c)(8) of the Internal Revenue Code, and the Secretary of Labor has been notified of such amendment and has either approved of it, within 90 days after the date on which such notice was filed, he failed to disapprove.

In accordance with applicable federal law, the Plan will be considered terminated by the occurrence of any of the following events:

(a) the amendment of the Plan to provide that, after a specified date, all Participants will cease to accrue Future Service Pension Credit;

(b) the complete withdrawal (as defined in Section 4041A of ERISA) of every Employer; or

(c) the amendment of the Plan to cause the Plan to become a defined contribution Plan.

**Section 9.02 – Termination of the Plan.** It is expected that the Plan will be continued in effect indefinitely and that each Employer will continue to make contributions required by the applicable collective bargaining agreement. Subject to the Trust Agreement, the Trustees reserve the right to institute proceedings to effect a partial or total termination of the Plan.

In the event of a partial or total termination of the Plan, all benefits accrued to date of partial or total termination to the extent funded as of termination date shall be nonforfeitable to all Plan Participants, Beneficiaries, or former Participants who have not incurred a Permanent Break-in-Service.

**Section 9.03 – Priorities on Total Termination.** In the event of total termination, the assets then remaining in the Plan after providing for administrative expenses shall be allocated among Retirees, Beneficiaries, Participants, or former Participants who have not incurred a Permanent Break-in-Service in the following order:

(a) First:

(1) In the case of the pension benefits of a Participant or Beneficiary who was in pay status as of the beginning of the three-year period ending on the termination date of the Plan, to each such pension, based on the provisions of the Plan (as in effect during the five-year period ending on such date) under which such pension benefit would be the least. The lowest pension benefit in pay status during the three-year period above shall be considered the pension benefit in pay status for such period.

(2) In the case of a Participant or Beneficiary who would have been in pay status as of the beginning of such three-year period if the Participant had retired prior to the beginning of the three-year period and if the Participant's

pension benefits had commenced (in the standard form) as of the beginning of such period, to each such pension benefit based on the provisions of the Plan (as in effect during the five-year period ending on such date) under which the pension benefits would be the least.

(b) Second:

(1) To all other benefits (if any) of individuals under the Plan guaranteed under Title IV of ERISA (determined without regard to Section 4022(b)(5)).

(2) To additional benefits (if any) which would be determined under (b)(1) above if Section 4022(b)(6) of ERISA did not apply.

(c) Third:

To all other non-forfeitable benefits under the Plan.

(d) Fourth:

To all other benefits under the Plan.

Section 9.04 – Procedures for Allocation Priority. Section 9.03 shall be administered as follows:

(a) The amount allocated under any paragraph of Section 9.03 with respect to any benefit in Section 9.03 shall be properly adjusted for any allocation of assets with respect to that benefit under a prior paragraph of Section 9.03.

(b) If the assets available for allocation under paragraphs (a)(1), (a)(2), and (b) of Section 9.03 are insufficient to satisfy in full the benefits of all individuals who are described in any one of such paragraphs, the assets shall be allocated pro-rata among such individuals on the basis of present value (as of the termination date) of their respective benefits described in such paragraph.

(c) This paragraph applies if the assets available for allocation under paragraph (c) of Section 9.03 are not sufficient to satisfy in full the benefits of individuals described in that paragraph.

(1) If this paragraph applies, except as provided in the subparagraph immediately below, the assets shall be allocated to benefits described in paragraph (c) of Section 9.03 on the basis of the benefits of individuals which would have been described in such paragraph (c) under the Plan as in effect at the beginning of the five-year period ending on the date of the Plan termination.

(2) If the assets available for allocation under subparagraph (1) immediately above are sufficient to satisfy in full the benefits described in such subparagraph (without regard to this sub-paragraph), then for the purposes of subparagraph (1) above, benefits of individuals described in such subparagraph shall be determined on the basis of the Plan as amended by the most recent Plan amendment effective during such five-year period referred to in subparagraph (1) above under which the assets available for allocation are sufficient to satisfy in full the benefits of individuals described in subparagraph (1) above and any assets remaining to be allocated under subparagraph (1) above on the basis of the Plan as amended by the next

succeeding Plan amendment effective during such period.

## ARTICLE 10 — PRO-RATA PENSIONS

Section 10.01 – Purpose. Pro-Rata Pensions are provided under this Plan for Employees who would otherwise be ineligible for a pension because their years of employment have been divided between employment credible under this Plan and employment credible under another pension plan or whose pensions would otherwise be less than the full amount because of such division of employment.

Section 10.02 – Related Plans. By resolution duly adopted, the Board of Trustees may recognize another pension plan as a Related Plan.

Section 10.03 – Related Credit. The term "Related Credit" means years of service, or portions thereof, creditable to an Employee under a Related Plan, excluding, however, any Related Credit based on work of the type which, had it been performed under this Plan, would be Continuous Non-Covered Employment.

Section 10.04 – Combined Credited Service. The term "Combined Credited Service" means the total of an Employee's Related Credit plus the Credited Service accumulated under this Plan (hereinafter referred to as "Plan Credited Service").

Section 10.05 – Eligibility for a Pro-Rata Pension.

(a) An Employee who is retired shall be eligible for a Pro-Rata Pension if he meets the following requirements:

(1) he would be eligible for any type of pension under this Plan were his Combined Credited Service treated as Plan Credited Service and he has earned Plan Credited Service, Related Credit, or Combined Credited Service during a minimum of ten Calendar Years, without a Permanent Break-in-Service; and

(2) he has worked at least three (3) contributory months since January 1, 1956.

(b) Related Credit shall be considered in determining whether an Employee has incurred a Break-in-Service as defined in Section 5.06.

However, once an Employee has left employment for which contributions are made to this or a Related Plan, the determination as to whether he has had a Permanent Break-in-Service under this Plan shall be based solely on his Credited Service or Vesting Service earned under this Plan, and not upon his Combined Credited Service.

Section 10.06 – Amount of the Pro-Rata Pension. A Pro-Rata Pension shall be a monthly amount determined in the same way as the Regular, Early Retirement or Disability Pension is determined under this Plan.

Section 10.07 – Payment. Payment of a Pro-Rata Pension shall be subject to all of the conditions applicable to the other types of pensions under this Plan.

## ARTICLE 11 – EMPLOYER WITHDRAWAL LIABILITY

**Section 11.01 – General.** This Article sets forth rules applicable to the determination and payment of Employer Withdrawal Liability as established under the Multi-employer Pension Plan Amendments Act of 1980 (the Act). These rules shall apply to complete or partial withdrawals, as defined in the Act, occurring after February 2, 1981. The relevant provisions of the Act shall apply to any matter affecting an Employer's withdrawal liability to the extent that rules determining such matter are not expressly set forth herein.

**Section 11.02 – Calculation of Withdrawal Liability.** The amount of the unfunded vested benefits, as defined in Section 4213 (c) of ERISA, allocable to an Employer shall be the product of:

(a) the Plan's unfunded vested benefits as of the end of the Plan Year preceding the Plan Year in which the Employer withdraws, less the value as of the end of such year of all outstanding claims for withdrawal liability which can reasonably be expected to be collected from Employers withdrawing before such year, multiplied by

(b) a fraction:

(1) the numerator of which is the total amount required to be contributed by the Employer under the Plan for the last five Plan Years ending before the withdrawal; and

(2) the denominator of which is the total amount contributed under the Plan by all Employers for the last five Plan Years ending before the withdrawal, increased by Employer Contributions owed with respect to earlier periods which were collected in those Plan Years, and decreased by any amount contributed to the Plan during those Plan Years by all Contributing Employers who withdrew from the Plan under this Article during those Plan Years.

**Section 11.03 – Special Rules with Respect to Employer Contributions.** For purposes of this Article, Employer Contributions will be considered "made," and amounts will be considered "contributed," for a Plan Year if they are made on account of employment rendered in such Plan Year, provided such Employer Contributions and amounts are paid to the Plan on or before the date used by the Independent certified public accountant engaged by the Trustees pursuant to Section 103(a)(3) of ERISA in determining the total Employer Contribution to be reported on the Plan's Form 5500 for that Plan Year. Contributions and amounts paid to the Plan after such date will be considered made and contributed for the Plan Year in which they are paid.

**Section 11.04 – Actuarial Assumptions.** The actuarial assumptions which shall be used by the Plan's enrolled actuary in determining the unfunded vested benefits of the Plan for purposes of withdrawal liability shall be the same as those used for purposes of determining the Plan's compliance with the minimum funding standards of Section 412 of the Internal Revenue Code.

44

**Section 11.05 – Payment of Withdrawal Liability.**

(a) Amount of payment:

(1) Except as provided in subparagraphs (2) and (4) below, and subsections (c) and (d) below, an Employer shall pay the amount determined under Section 11.02 (appropriately adjusted for partial withdrawal as provided in Section 4206 of ERISA, and de minimis reductions as provided in Section 4209 (a) of ERISA), over the period of years necessary to amortize the amount in level annual payments determined under subparagraph (3) below, calculated as if the first payment were made on the first day of the Plan Year following the Plan Year in which the withdrawal occurs and as if each subsequent payment were made on the first day of each subsequent Plan Year. Such amortization period shall be determined based on actuarial assumptions used in the most recent actuarial valuation of the Plan.

(2) In any case in which the amortization period described in subparagraph (1) above exceeds 20 years, the Employer's liability shall be limited to the first 20 annual payments determined in subparagraph (3) below.

(3) Except as provided in subparagraph (5) below, the amount of each annual payment shall be the product of:

(i) the average annual number of Months of Service for the three (3) consecutive Plan Years of the ten (10) consecutive Plan Years ending before the date of withdrawal in which the Employer had an obligation to contribute for the greatest number of Months of Service, and

(ii) the highest contribution rate at which the Employer had an obligation to contribute under the Plan during the ten (10) Plan Years ending with the Plan Year in which the withdrawal occurs.

(iii) For purposes of (i) and (ii) above, if an Employer withdraws in a Plan Year ending before April 1, 1985, the appropriate number from the following shall be substituted for the number "10" each time such number appears:

| If the Employer withdraws in the Plan Year ending: | Then the number substituted is: |
|---|---|
| March 31, 1981 | 5 |
| March 31, 1982 | 6 |
| March 31, 1983 | 7 |
| March 31, 1984 | 8 |
| March 31, 1985 | 9 |

(4) In the case of a withdrawal of all or substantially all Employers under the Plan, as described in Section 4219(c)(1)(D) of ERISA, subparagraph (2) above shall not apply, and total unfunded vested benefits shall be fully allocated among all such Employers according to regulations established by the Pension Benefit Guaranty Corporation (PBGC).

(5) As described in Section 4219(c)(1)(E) of ERISA, the amount of annual payment may be adjusted in the event of a partial withdrawal.

45

(b) Withdrawal liability shall be payable monthly, according to the schedule determined by the Trustees. Payment of withdrawal liability shall commence no later than 60 days after the date of demand therefor by the Trustees, notwithstanding any request for review or appeal.

(c) An Employer shall be entitled to pre-pay any outstanding unpaid withdrawal liability, plus accrued interest, without penalty.

(d) In the event that an Employer fails to make any payment when due, interest, at a rate determined by the Trustees in accordance with PBGC regulations, shall accrue on the payment from the due date until the date the payment is made. An Employer shall be considered in default if such failure to make any payment is not cured within 60 days after the Employer receives notice from the Trustees of such failure. In the event of a default, the outstanding amount of the withdrawal liability shall immediately become due and payable, together with accrued interest on the total outstanding liability from the due date of the first defaulted payment.

**Section 11.06 – Temporary Contribution Periods.**
(a) An Employer who completely or partially withdraws from the Plan shall not be liable to the Plan for such withdrawal liability, provided the Employer:

(1) first had an obligation to contribute to the Plan after September 26, 1981;

(2) was under an obligation to contribute to the Plan for no more than six (6) consecutive Plan Years preceding the date of withdrawal;

(3) was required to contribute, for each such Plan Year, less than 2 percent of the sum of all Employer contributions made to the Plan for each such year; and

(4) has never avoided withdrawal liability to the Plan because of this Section.

(b) Subsection (a), above, shall become effective only if the ratio of Plan assets to benefit payments made, for the Plan Year preceding the first Plan Year for which the Employer was obligated to contribute, was at least 8 to 1.

(c) Upon the withdrawal of an Employer and avoidance of withdrawal liability pursuant to subsection (a) above, Participants who may have accrued Past Service, under Section 5.02 of the Plan, as a result of service with the Employer, shall not be credited with Past Service Pension Credit under the Plan for any purpose.

**Section 11.07 – Arbitration of Withdrawal Liability Disputes.**
(a) Under Section 4221 of ERISA, disputes between an employer and the plan sponsor of a multi-employer plan concerning the plan sponsor's determination of the employer's withdrawal liability under Sections 4201 through 4219 and Section 4225 shall be resolved through arbitration proceedings conducted in accordance with fair and equitable procedures promulgated by the PBGC.

46

The Trustees hereby incorporate by reference the Multi-employer Pension Plan Arbitration Rules sponsored by the International Foundation of Employee Benefit Plans, administered by the American Arbitration Association (AAA), and approved by the Pension Benefit Guaranty Corporation effective September 28, 1985.

(b) A party initiating arbitration shall give notice to the other party of its intention to arbitrate under the rules of the AAA and shall file two copies of the notice with the Association setting forth a brief description of the dispute, the amount of money involved, if any, and the remedy sought. The remainder of the process is subject to the rules of the AAA.

(c) The issues subject to arbitration may include but are not limited to the following:

(1) the determination of whether a withdrawal – complete or partial – has occurred;

(2) the amount of the employer's liability;

(3) the schedule of withdrawal liability payments; and

(4) the reasonableness of actuarial assumptions in the aggregate or whether a significant error was made in applying the actuarial assumptions or methods.

(d) The selection of the arbitrator under the rules is made by the parties within 45 days after the arbitration is initiated or within such other period as is mutually agreed upon after the initiation of arbitration. Other time limits under the regulations may be waived or extended by mutual agreement of the parties.

(e) The Pension Fund office will provide any party to arbitration of withdrawal liability with a copy of the AAA rules.

47

# Part III

## SUMMARY PLAN DESCRIPTION SUPPLEMENT

The following information, together with the information contained in Parts I and II in this Booklet, form the Summary Plan Description under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and related facts. Please consider this information as an aid to your understanding of the Plan and its administration and regard Part II as the authoritative statement of the Plan. The Pension Plan was effective January 1, 1956 and has been amended from time to time. This Plan is restated as of June 11, 1992.

**1. Name of Plan**

San Francisco Culinary, Bartenders and Service Employees Pension Plan.

**2. Plan Administration, Name, Address, and Title of Board of Trustees.**

The Plan is administered by Trustees who have responsibility for the administration of the Plan.

Board of Trustees
San Francisco Culinary, Bartenders and
Service Employees Pension Plan
501 Second Street, Suite 212
San Francisco, CA 94107

The names, titles, and addresses of the Plan Trustees are:

Sherri Chiesa, Union Trustee
Local 2
209 Golden Gate Avenue
San Francisco, California 94102

Michael Casey, Union Trustee
Local 2
209 Golden Gate Avenue
San Francisco, California 94102

Charles Gilchrist, Union Trustee
Local 14
247 Golden Gate Avenue
San Francisco, California 94102

Tho Thi Do, Union Trustee
Local 2
209 Golden Gate Avenue
San Francisco, California 94102

Douglas Cornford, Employer Trustee
Western Management Alliance
1650 S. Amphlett Blvd., #312
San Mateo, California 94402

John Monestere, Employer Trustee
Hotel Carlton
1075 Sutter Street
San Francisco, California 94109

48

Lester Abercrombie, Employer Trustee
Hilton Hotel
Mason & O'Farrell Streets
San Francisco, California 94102

Robert Berger, Employer Trustee
Francisca Club
595 Sutter Street
San Francisco, California 94102

**3. The Pension Fund has an Internal Revenue Service Employer Identification Number (EIN) of 94-6138925. The Plan number is 001.**

**4. Type of Plan.**

The San Francisco Culinary, Bartenders and Service Employees Pension Plan is a collectively bargained, jointly trusted labor/management trust formed to provide defined pension benefits to eligible employees.

**5. Name, Address, and Telephone Number of Administrator (Fund Manager).**

The Board of Trustees has engaged S.F. Administrators, Inc. to perform the routine administration of the Plan. S.F. Administrators, Inc. may be contacted at:

San Francisco Culinary, Bartenders and
Service Employees Pension Plan
Administrative Office
501 Second Street, Suite 212
San Francisco, CA 94107
Telephone (415) 777-3707

**6. Name and Address of Agent for Service of Legal Process.**

S.F. Administrators, Inc.
San Francisco Culinary, Bartenders and
Service Employees Pension Plan
501 Second Street, Suite 212
San Francisco, CA 94107

Service of legal process may also be made upon a Plan Trustee.

**7. A Description of the Relevant Provisions of any Applicable Collective Bargaining Agreement.**

The San Francisco Culinary, Bartenders and Service Employees Pension Plan was established and continues as prescribed in various collective bargaining agreements between the Hotel Employees, Restaurant Employees, and Bartenders Union, Local 2 and Service Employees Union, Local 14, with the Hotel Employers Association of San Francisco and the San Francisco Hotel Association, Inc. Also included are employers who are not members of an association but are parties to collective bargaining agreements.

You may obtain a copy of the collective bargaining agreement under which you work upon written request to the Fund Manager. Copies are available for your examination at the Fund office.

Participants and Beneficiaries may receive from the Fund Manager, upon written request, information as to

49

whether a particular employer or employee organization is a sponsor of the Plan and, if the employer or employee organization is a Plan sponsor, the sponsor's address.

Participants and Beneficiaries may also obtain from the Fund Manager a complete list of employers sponsoring the Plan upon written request to the Fund Manager, or such list may be examined at the Fund office.

**8. U.S. Government Pension Benefit Guaranty Corporation Insurance.**

Benefits to which you are entitled under this Plan are insured by the Pension Benefit Guaranty Corporation (PBGC) in case the Plan terminates. Generally, the PBGC guarantees most vested normal and early retirement benefits, and certain disability and survivor's pensions. However, the PBGC does not guarantee all types of benefits under covered plans, and the amount of benefit protection is subject to certain limitations.

The PBGC guarantees vested benefits at the level in effect on the date of Plan termination. However, if benefits have been increased within five (5) years before Plan termination, the whole amount of the Plan's vested benefits or the benefit increases may not be guaranteed. In addition, there is a ceiling on the amount of monthly benefit that the PBGC guarantees, which is adjusted periodically.

For more information on the PBGC insurance protection and its limitations, ask your Plan administrator or the PBGC. Inquiries to the PBGC should be addressed to the Office of Communications, PBGC, 2020 K Street, N.W., Washington, D.C. 20006. The PBGC Office of Communications may also be reached by calling (202) 254-4817.

**9. Pension Plan Years of Service Information.**

Past Service Pension Credit before the effective date of the Plan (January 1, 1956) is granted for each month for which a contribution would have been made by your employer if there had been a plan in effect during that time. In addition, where the best available records of a Participant's past service are quarterly Social Security reports, a formula for granting credit is utilized. (See Section 5.02 of the Plan.)

Future Service Pension Credit on and after the effective date of the Plan (January 1, 1956), if it is unbroken and without a Permanent Break-in-Service, is granted for each month for which a contribution is payable by an employer on account of service performed by you during that month. On and after April 1, 1986, no Pension Credit or Vesting Service shall be given prior to becoming a Participant, except for the contributions by which an employee qualifies as a Participant. (See Section 5.03 of the Plan.)

**10. Source of Contributions to the Plan.**

This Plan is financed by employer contributions calculated pursuant to the various collective bargaining agreements between the Hotel Employees, Restaurant Employees, and Bartender's Union, Local 2 and Service Employees Union, Local 14, together with the Hotel

50

Employers Association of San Francisco and the San Francisco Hotel Association, Inc. Also included are employers who are not members of an association but are parties to the collective bargaining agreements with one of the local unions.

You may obtain a copy of the collective bargaining agreement under which you work from your union and, upon written request, from the Fund Manager. Copies are available for your examination at the Fund office. A supplemental source of financing is interest earned on the investment of trust funds and realized gains in the value of the assets owned.

**11. Plan Fiscal Year:** April 1 through March 31.

**12. Remedies Available Under the Plan for the Redress of Claims Which Are Denied in Whole or in Part.**

(a) If your claim is denied in whole or in part, you will receive a letter setting out in detail the specific reasons for the denial, specific reference to pertinent Plan provisions on which the denial is based, a description of any additional material or information necessary for you to perfect the claim, and an explanation of why such material or information is necessary, and an explanation of the claim appeal procedure.

The notice of denial shall be given within sixty (60) days after the claim is filed unless special circumstances require an extension of time for processing the claim. You must, however, have supplied the Trust Fund with complete information relevant to your benefit claim. If such an extension is required, you will be sent written notice within sixty (60) days of the time the claim is filed, stating the special circumstances requiring the extension and the date by which a decision on the claim can be expected. The final date for the decision shall not normally be more than 180 days from the date the claim is filed, unless the delay is occasioned by one of the reasons described above. If a notice of denial is not given within the time required, you may proceed to the review stages described in the material that follows as though the claim had been denied.

(b) If you are not satisfied, or do not agree with, the reasons for the denial of your claim, you may appeal the decision to the Board of Trustees.

(c) Your appeal should be submitted in writing by you or your duly authorized representative. It must set out your reasons for appeal and the basis of your dissatisfaction or disagreement with the denial of your claim for benefits. Any evidence or documentation to support your position should be submitted with your written appeal. You or your representative may review the documents that pertain to your claim and its denial and submit a statement of the issues, together with your comments on them, in writing.

(d) Your appeal must be made within sixty (60) days of the date you receive the letter denying your claim.

(e) The Board will review your claim and appeal promptly. It will advise you of its decision in writing, setting out specific reasons for the decision, with specific

51

references to pertinent Plan provisions on which the decision is based. This written decision will be sent to you not later than sixty (60) days after receipt of your written appeal, unless special circumstances require an extension of time for processing the appeal, obtaining more information or conducting an investigation of the facts. A written decision will be sent no later than 120 days after receipt by the Board of your written appeal, provided that the Trust Fund has all the information necessary to make a determination of the appeal.

(f) The Fund Manager will advise you in writing of Trustees' decision within 120 days after presenting your application to the Trustees. However, in unusual circumstances or if additional information is needed, the Trustees may postpone their decision for an additional 120 days. In this case, the Fund administrator will advise you in writing of the postponement.

Notwithstanding the above time limits, there may be further delay in responding to the appeal if it is necessary to request and await receipt of information from the Social Security Administration, or, if the participant has not provided all the necessary information requested by the Trustees.

13. Statement of ERISA Rights.

As a Participant in the San Francisco Culinary, Bartenders and Service Employees Pension Plan, you are entitled to certain rights and protections under ERISA. ERISA provides that all Plan Participants shall be entitled to:

(a) examine, without charge, at the Fund Manager's office all Plan documents, including insurance contracts, collective bargaining agreements, and copies of the documents filed by the Plan with the U.S. Department of Labor, such as detailed annual reports and Plan descriptions.

(b) obtain copies of all Plan documents and other pertinent Plan information upon written request to the Fund Manager. The Fund Manager may make a reasonable charge for the copies.

(c) receive a summary of the Plan's annual financial report. The Fund Manager is required by law to furnish each Participant with a copy of this summary annual report.

(d) obtain a statement telling you whether you have a right to receive a pension at Normal Retirement Age (65) and, if so, what your benefits would be at Normal Retirement Age if you stop working under the Plan now. If you do not have a right to a pension, the statement will tell you how many more years you have to work to get a right to a pension. This statement must be requested in writing and is not required to be given more than once a year. The Plan must provide the statement free of charge.

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of

52

you and other plan Participants and Beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a pension benefit or exercising your rights under ERISA. If your claim for a pension benefit is denied in whole or in part you must receive a written explanation of the reason(s) for the denial. You have the right to have the Plan review and reconsider your claim. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the Plan and do not receive them within thirty (30) days, you may file suit in a federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $100 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file a suit in a state or federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file a suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous. If you have any questions about your plan, you should contact the plan administrator. If you have any questions about this statement or about your rights under ERISA, you should contact the nearest Area office of the U.S. Labor-Management Services Administration, Department of Labor.

53

## Fund Manager

S. F. ADMINISTRATORS, INC.

501 Second Street, Suite 212

San Francisco, California 94107

Telephone (415) 777-3707

## Consultant

RAEL & LETSON

635 Mariner's Island Boulevard

San Mateo, CA 94404

## Counsel

LEONARD, CARDER, NATHAN, ZUCKERMAN,
ROSS, CHIN & REMER

1188 Franklin Street, Suite 201

San Francisco, CA 94109

LAW OFFICES OF BRUCE R. BAILEY

1900 Avenue of the Stars, Suite 1630

Los Angeles, CA 90067

## Actuary

RAEL & LETSON

635 Mariner's Island Boulevard

San Mateo, California 94404

## Auditor

HEMMING MORSE, INC.

650 California Street

San Francisco, CA 94108

91

**EXHIBIT C**

Municipal Form No. 103
(Revised January 1993)

(To be accomplished in quadruplicate)

Republic of the Philippines
OFFICE OF THE CIVIL REGISTRAR GENERAL

**CERTIFICATE OF DEATH**

(Fill up completely, accurately and legibly. Use ink or typewriter)
Place X before the appropriate answer for items 2, 9, 14, 15, 16, 18, 21 and 23)

REMARKS/ANNOTATION

CERTIFIED MACHINE COPY

CORAZON R. MAMARIL
Municipal Civil Registrar

Province **La Union**
City/Municipality **Agoo**

Registry No.

1. NAME **PEDRO** (First) **TAYAS** (Middle) **SUGUITAN** (Last)

2. SEX — X 1 MALE / 2 FEMALE
3. RELIGION **R. Catholic**
4. AGE — 1. YEAR & ABOVE Completed years **93** / 2. UNDER 1 YEAR (Months / Days) / 3. UNDER 1 DAY (Hours / Min.)

5. PLACE OF DEATH (Name of Hospital/Clinic/Institution/House No., Street, Barangay) **Doña Gregoria Memorial Hospital** (City/Municipality) **Agoo** (Province) **La Union**

6. DATE OF DEATH (day) **27** (month) **December** (year) **1997**
7. CITIZENSHIP **Filipino**

8. RESIDENCE (House No., Street, Barangay) **Gonzales** (City/Municipality) **Tubao** (Province) **La Union**

9. CIVIL STATUS — 1. Single / X 2. Married / 3. Widowed / 4. Others / 5. Unknown
10. OCCUPATION **U.S. Pensiona**

MEDICAL CERTIFICATE
(For ages 0 to 7 days, accomplish items 11-17 at the back)

17. CAUSES OF DEATH                                                    Interval between Onset and Death
I. Immediate cause : a. **Congestive Heart Failure Class IV**
   Antecedent cause : b. **2° atherosclerotic Heart disease, Cardiac arrythmia, sec Complete left bundle branch block)**
   Underlying cause : c. **s/P Thrombotic Infarct Right Subcortical**
II. Other significant conditions contributing to death:

18. DEATH BY NON-NATURAL CAUSES
   a. Manner of Death — 1. Homicide / 2. Suicide / 3. Accident / 4. Others (Specify)
   b. Place of Occurrence (e.g. home, farm, factory, street, sea, etc.):

19. ATTENDANT — X 1. Private Physician / 2. Public Health Officer / 3. Hospital Authority / 4. None / 5. Others (Specify)
   If attended, state duration: From **12-25-97  5:00PM**  To **12-27-97  5:50AM**

20. CERTIFICATION OF DEATH
   I hereby certify that the foregoing particulars are correct as near as same can be ascertained and I further certify that I
   ☐ have not attended the deceased
   ☐ have attended the deceased and that death occurred at _____ am/pm on the date stated above.

   Signature _____
   Name in Print **EILEEN V. BERNABE, M.D.**
   Title or Position **MEDICAL OFFICER III**
   Address **Agoo, La Union**

   Date **12-29-97**

21. CORPSE DISPOSAL — X 1. Burial / 2. Cremation / 3. Others (Specify)
22. BURIAL/CREMATION PERMIT Number ____ Date Issued ____
23. AUTOPSY — 1. Yes / 2. No

24. NAME AND ADDRESS OF CEMETERY OR CREMATORY **Tubao Cemetery, Tubao, La Union**

25. INFORMANT
   Signature _____
   Name in Print **Juanita Suguitan**
   Relationship to the deceased **wife**
   Address **Gonzales, Tubao, La Union**
   Date **12-28-97**

26. PREPARED BY
   Signature _____
   Name in Print **ALADINO F. RIVERA**
   Title or Position **Clerk**
   Date **12-29-97**

27. RECEIVED AT THE OFFICE OF THE CIVIL REGISTRAR
   Signature _____
   Name in Print **CORAZON R. MAMARIL**
   Title or Position **Municipal Civil Registrar**
   Date _____

Permit is hereby granted to Mrs. Juanita Suguitan to Transfer the remain of his husband to Tubao, La Union.

EILEEN V. BERNABE
MEDICAL OFFICER III

Boxed digits (right column):
9 8 0 0 0 0 1
1
1 1 2 9 3
3 3 0 1 9
2 7 1 2 9 7 1
3 3 2 0 9
2 2 4 0
0 4 1 1
1

**EXHIBIT D**

# PENSION PLAN

### AND

# TRUST AGREEMENT

### SAN FRANCISCO CULINARY, BARTENDERS AND SERVICE EMPLOYEES PENSION PLAN AND TRUST AGREEMENT

### SAN FRANCISCO, CALIFORNIA

# SAN FRANCISCO CULINARY, BARTENDERS AND SERVICE EMPLOYEES PENSION PLAN AND TRUST AGREEMENT

The parties to this agreement are the following:

(1) The Golden Gate Restaurant Association, The Hotel Employers' Association of San Francisco, The San Francisco Hotel Association, Inc. and The San Francisco Club Institute, acting on behalf of their respective members and hereinafter referred to as the "Employer Associations"; and

(2) The San Francisco Local Joint Executive Board of Culinary Workers, Bartenders and Hotel and Club Service Workers, acting on behalf of the Cooks, Pastry Cooks and Assistants Union, Local No. 44, Bartenders' Union, Local No. 41, Waiters' & Dairy Lunchmen's Union, Local No. 30, Waitresses' Union, Local No. 48, Miscellaneous Culinary Employees' Union, Local No. 110, Hotel & Club Service Workers' Union, Local No. 283, and Apartment, Motel and Hotel Employees' Union, Local No. 14, affiliated with the Building Service Employees' International Union, hereinafter referred to as the "Unions."

There is in effect, and was in effect as of January 1, 1956, a bargaining contract between each of the Employer Associations and the Unions, which said contracts are hereinafter referred to as the Association Bargaining Contracts. Each of said contracts provided among other things the following:

(1) That effective January 1, 1956, each employer bound by such contract should contribute, for the purpose of financing a pension program, the amount of $5.25 monthly for each employee of such employer in any of the following categories:

(a) All employees who have worked regularly for two (2) hours or more per day, four (4) days or more per payroll week, in at least three (3) of the four (4) full payroll weeks of the employer immediately preceding the first day of the month for which contributions are made.

(b) All employees (excepting, in the case of members of the Hotel Employers Association of San Francisco and of the San Francisco Club Institute, extra employees), who are regularly scheduled for and work one full shift or more per payroll week in at least three (3) of the four (4) full payroll weeks of the employer immediately preceding the first day of the month for which contributions are made.

(c) All employees who are employed to work a regular schedule of hours at least equal to the schedules of hours set forth in Paragraphs (a) and (b) above, but who did not complete such schedule during the four (4) full payroll weeks of the employer immediately preceding the first day of the month for which contributions are made because of absence from work due to bona

1

fide sickness, disability, leave of absence, vacation, temporary lay-off by the employer or holidays; provided that contributions are not required for an employee whose absence due to the above causes exceeds thirty (30) days, but any such employee shall requalify as an eligible employee immediately upon return to work following such absence in excess of thirty (30) days, except that the employer shall not be required to make any contribution for such employee until the next contribution date following his return to work, and if on such date the employee is on the payroll of the employer.

(2) That every effort would be made to establish the pension program on an industry-wide basis covering restaurants, hotels and clubs in San Francisco.

Subsequent to January 1, 1956, each of the Employer Associations entered into an Agreement with the Unions providing in substance that pending agreement upon a pension program, the said monthly contributions should be paid to certain individuals designated as Agents of the employers making the same (hereinafter referred to as the Agents), that the Agents should pay out of the monies so paid certain of the expenses involved in formulating a pension program, and that upon execution of an agreement establishing a pension plan the balance then remaining in the hands of said Agents should be paid by them to the trustees named in said Agreement.

The Parties, as the result of their efforts to formulate an industry-wide pension program, have reached agreement upon a pension plan as hereinafter particularly provided.

Now, therefore, the Parties agree as follows:

# ARTICLE I
## Name and Principal Office

The pension plan created hereby shall be known as the San Francisco Culinary, Bartender and Service Employees Pension Plan. The principal office of the Plan shall be at 870 Market St.; such office may be changed from time to time by the trustees to such other place as they may designate in the City and County of San Francisco, State of California.

# ARTICLE II
## Definitions

The terms hereinafter in this Article defined have the meanings, wherever used in this agreement hereinafter in this Article set forth.

(1) "Pension Fund" means the trust estate of the Plan. The corpus of the Pension Fund shall include all contributions made or payable by Contributing Employers, including contributions in the hands of said agents, and all other money, assets, claims or property held by the Trustees for the uses and purposes set forth in this Agreement.

(2) "Contributing Employer" means:

(a) An employer who, as of January 1, 1956, was a

2

member of one of said Employer Associations and was bound by the said bargaining contract of said Association to make contributions to the Pension Fund;

(b) An employer who, subsequent to January 1, 1956, becomes a member of any of the Employer Associations and becomes bound by the said bargaining contract of such association, or by any extension or renewal thereof, to make contributions to the Pension Fund;

(c) An employer who, while not a member of any of the Employer Associations, was a party as of January 1, 1956, or subsequently becomes a party, to a bargaining contract with the Unions requiring him to make contributions to the Pension Fund and who agrees in writing to be bound by this Agreement and any amendments hereto; and

(d) The Unions.

(3) "Covered Establishment" means:

(a) With respect to any period commencing on or after January 1, 1956, a restaurant, hotel, club or other establishment in the City and County of San Francisco being operated by a Contributing Employer under an Association or other bargaining contract with the Unions requiring contribution by him to the Pension Fund; and

(b) With respect to any period prior to January 1, 1956, an establishment which was a Covered Establishment as of January 1, 1956.

(4) "Predecessor" of a Contributing Employer means an employer who operated a Covered Establishment during any period prior to January 1, 1956.

(5) "Covered Employment" means:

(a) Employment in a Covered Establishment by a Contributing Employer or a Predecessor of a Contributing Employer in a position covered by any of said Association Bargaining Contracts in effect as of January 1, 1956, or which would be, or have been, covered by any of said contracts if the same were, or had been, in effect in such establishment at the time of such employment; and

(b) Employment as an elective or appointive officer of any of the Unions.

(6) "Employee" means an individual employed in Covered Employment.

(7) "Service" means employment in Covered Employment.

(8) "Future Service" means Service on or after January 1, 1956.

(9) "Past Service" means Service prior to January 1, 1956.

(10) "Credited Service" means Service, past or future, for which an employee receives a service credit as hereinafter in this agreement provided.

(11) "Member" of the Plan means an Employee receiving a service credit on account of Future Service.

3

## ARTICLE III
### Employer Contributions

SECTION 1. It is understood and agreed that payment by the said Agents of any group of Contributing Employers to the Trustees hereunder of contributions heretofore received by said Agents from such Contributing Employers, less the amount of any expenditures made by said Agents pursuant to the terms of the agreement under which they were acting, shall discharge each Contributing Employer from whom the said Agents have received such contributions of all obligation and liability with respect to contributions received by said Agents from such Contributing Employer.

SECTION 2. The amount of the monthly contribution to the Pension Fund, and the employment required to render a Contributing Employer other than the Unions liable for a contribution, are as set forth in said Association Bargaining Contracts, but will be subject to change as provided in said contracts or upon termination of said contracts. It is understood and agreed that no employer other than the Unions is or shall be obligated to contribute to the Pension Fund except as provided in a collective bargaining contract between such employer and the Unions. It is essential to the operation of the Plan that both the amount of the monthly contribution, and the employment required to render a Contributing Employer liable for a contribution shall be uniform for all Contributing Employers. It therefore is agreed as follows:

(a) There shall be no change in the amount of the monthly contribution, or in the employment required to render a Contributing Employer other than the Unions liable for a contribution, unless and until the Association Bargaining Contracts in effect at the time shall all have been amended to provide for such change.

(b) The amount of the monthly contribution, and the employment required to render a Contributing Employer other than the Unions liable for a contribution, shall be the same for all Contributing Employers, whether or not members of any of the Employer Associations, and shall be as provided in the Association Bargaining Contracts in effect from time to time.

SECTION 3. Effective as of January 1, 1956, the Unions shall make monthly contribution to the Pension Fund in the amount required from time to time of other Contributing Employers for each elective or appointive officer in the service of any of the Unions, as of January 1, 1956, and for each individual thereafter becoming an elective or appointive officer of any of the Unions who shall have had continuous Credited Service of not less than a year at the time of his election or appointment. Contributions for the period from January 1, 1956 to the date of execution of this agreement shall be paid within ninety (90) days after the execution of this agreement.

SECTION 4. Employer contributions hereafter accruing

4

shall be paid to the Trustees between the first and tenth day of the month following the month of performance of the Service on account of which the contribution is payable.

SECTION 5. It is contemplated that an Employee may perform Service during a single month for more than one Contributing Employer, and that as a result more than one contribution may be made to the Pension Fund on account of Service performed by such Employee during such month. In any such case, each such Contributing Employer shall be entitled to a refund of, or credit for, so much of his contribution as shall exceed the amount thereof divided by the number of such contributions.

SECTION 6. The employer contributions shall be used by the Trustees for the sole purpose of providing Pension Benefits for the Members entitled to such benefits, for the necessary costs of administering the Plan and for no other purpose or purposes.

SECTION 7. Each Contributing Employer shall assist in the preparation and cooperate in the execution of any and all forms, applications or other data necessary in the establishment and operation of the Plan, and in this connection shall promptly furnish all necessary information upon demand to the Trustees or their agents and to all persons entrusted with the operation and administration of the Plan.

SECTION 8. The Trustees, collectively or individually, shall have no liability with respect to the non-payment of contributions by any Contributing Employer, nor shall they have any obligation to enforce payment of such contributions. The Trustees shall have the power, in their uncontrolled discretion, but shall not be required, to enforce the payment of contributions by Contributing Employers. If any Contributing Employer defaults in the making of such payments, then if the Trustees consult an attorney for filing a suit with respect thereto there shall be added to the obligation of the Contributing Employer in default reasonable attorney's fees, costs of court and expenses incurred by the Trustees in this connection.

## ARTICLE IV
### Credits for future service

An Employee shall receive a service credit of one month for each month of Future Service for which a contribution is payable to the Pension Fund, and is paid, by a Contributing Employer on account of Service performed by him during such month.

## ARTICLE V
### Credits for past service

Employees shall receive credit for Past Service subject to the following rules:

(a) No Employee shall be credited with Past Service

5

unless and until he shall have become a Member of the Plan.

(b) A Member shall be credited with Past Service only if such service was of such nature and extent that it would have qualified him for a contribution to the Pension Fund by a Contributing Employer if it had been performed subsequent to January 1, 1956.

(c) For purposes of determining eligibility for retirement a Member shall be credited with one month of service for each month of Past Service.

(d) For purposes of computing pension benefits, a Member shall be credited with only one-half month of service for each month of Past Service.

# ARTICLE VI
## Continuity of credited service

Except as hereinafter in this section set forth, continuity of Credited Service shall be deemed broken in any month for which the Member is not entitled to a service credit, past or future, and, notwithstanding any other provision of this Agreement, the Member shall not be credited for any purpose with Service performed prior to such break. Provided, however, that the following shall be disregarded in determining whether Credited Service has been broken:

(1) Any month during which the Member's Service is insufficient to require an employer contribution to the Pension Fund but is sufficient to require an employer contribution to a Welfare Plan of the Unions and one of the Employer Associations or would have been sufficient to require a contribution to such Welfare Plan if such Service had been performed for a single Contributing Employer rather than several.

(2) Any period during which the Member, although available for full Service, fails to earn service credits because of whole or partial unemployment; provided however, that the number of months in any such period shall not exceed the number of consecutive months immediately preceding such period of unemployment, multiplied by three, for which he shall have received service credits, and in any event shall not exceed one year.

(3) Any period of absence from Service because of compulsory military service.

(4) Any period of absence from Service because of temporary total disability any part of which is compensated as such under either the Workmen's Compensation Act of the State of California or under the C.U.R.C.; provided that such absence shall not exceed two years.

(5) Any period, not to exceed ten months, of absence from Service due to pregnancy and/or childbirth.

(6) Any period, not to exceed six months, during which the member is on leave of absence granted by a Contributing Employer in writing in advance and during which the Member does not accept other employment.

(7) Any period during which a Member, although employed by a Contributing Employer, is assigned by

6

such employer to employment other than Covered Employment; provided, however, in the case of assignment to employment in the City and County of San Francisco, that the employment is not subject to Union contract, and in the case of assignment to employment outside the City and County of San Francisco, that the absence from Service does not exceed one year.

# ARTICLE VII
## Proof of service

SECTION 1. The Member shall have the burden of establishing his right to Service credits, past and future. The Trustees shall be empowered to adopt rules and regulations requiring the filing, at such time or times and in such manner and form as they may specify, of applications for Past Service credits and applications to establish continuity of Service (that is, to disregard absences from Service as provided in Article VI), and specifying the supporting data and evidence, including the Member's record of union membership, required to be filed or presented with or in support of such applications. A Member failing to file any such application or supporting data and evidence in conformity with such rules and regulations or within the time required thereby shall not be entitled to credit for the Past Service claimed by him or to have his absence from Service disregarded, as the case may be.

SECTION 2. Where the best available record of a Member's past service consists of a transcript of his social security record, the following rebuttable presumptions shall apply:

(a) that employment by a Contributing Employer or his Predecessor was in Covered Employment;

(b) where a Member's earnings in the service of Contributing Employers or their Predecessors during any quarter amounted to more than the amount set forth in column (b) below *and* to more than 66% of his earnings from all sources during said quarter, that he earned a Service credit during each of the three months of such quarter;

(c) where a Member's earnings in the Service of Contributing Employers or their Predecessors during any quarter amounted to less than specified in (b) above but to more than the amount set forth in column (c) below *and* to more than 33% of his earnings from all sources during said quarter, that he earned a Service credit during each of two months (presumably the first and second months) of said quarter;

(d) where a Member's earnings in the service of Contributing Employers or their Predecessors during any quarter amounted to less than specified in (c) above but to more than the amount set forth in column (d) below, that he earned a Service credit during one month (presumably the first month) of said quarter.

The respective amounts referred to in (b), (c) and

7

(d) above vary with the year in which the quarter falls
as follows:

| Years | | | | (b) | (c) | (d) |
|---|---|---|---|---|---|---|
| 1937-1941, inclusive | - | - | - | $ 60 | $ 40 | $ 20 |
| 1942-1946, inclusive | - | - | - | 90 | 60 | 30 |
| 1946, et seq. | - | - | - | 120 | 80 | 40 |

Section 3. With respect to the period prior to January
1, 1937, active membership in one of the Unions shall
be prima facie evidence that a Member of the Plan
earned Service credits during the period of such union
membership and failure to maintain active membership
in the Union shall be prima facie evidence that the
Member did not earn Service credits during the period
of such failure.

## ARTICLE VIII

### Normal retirement age

Section 1. The normal retirement age shall be 65.

Section 2. If a Member should continue in Covered
Employment or resume Covered Employment after
reaching normal retirement age the employer shall make
pension contributions on account of service performed by
such Member, and such Member shall receive Service
credits, on the same basis as if such Member had not
yet reached normal retirement age. Provided that no
retired Member who resumes Covered Employment shall
be entitled to any retirement benefit for any month for
which he receives a service credit.

Section 3. It is the position of the Employer Associa-
tions that each of their respective members has the
right to institute and effectuate a compulsory retirement
policy and that such right is unimpaired by any existing
bargaining contract. It is the position of the Union that
none of said employers has the right to institute or effec-
tuate such a policy. This agreement is made without
prejudice to either of the foregoing positions and is not
intended to affect, one way or the other, the question
whether any of said employers has the right to institute
or effectuate a compulsory retirement policy.

## ARTICLE IX

### Eligibility for retirement

Except as in this Article otherwise expressly provided,
a Member, to be eligible for retirement benefits, must
have fifteen years (180 months) or more of Credited
Service and must have been in continuous Credited Serv-
ice until the date of actual retirement. Subject to the
foregoing, the following shall govern eligibility for re-
tirement:

(1) Any Member shall be eligible to retire on the
first day of any month after reaching age 65.

(2) A female Member shall be eligible to retire on
the first day of any month after reaching age 62 and
before reaching age 65 with retirement benefits com-
puted on a reduced actuarial basis.

(3) Any Member of age 55 or over, who becomes

8

unemployed, or partially unemployed, after January 1, 1960, so as not to qualify for employer contributions, but who has 15 years (180 months) or more of Credited Service and has been a Member of the Plan for 10 years, shall be eligible to retire upon reaching retirement age notwithstanding failure, on account of such unemployment, to receive Service credits during the interval since reaching age 55; provided that such Member shall have remained available for full service during said interval. This is an exception, and the only exception, to the requirement of continuous Credited Service to the date of retirement.

(4) Any Member of age 55 or over who becomes permanently and totally disabled, as defined in the Social Security Act, after January 1, 1966, shall be entitled to retire on the first day of the month following incurrence of such disability with retirement benefits computed on a reduced actuarial basis.

(5) Any Member of age 65 or over as of January 1, 1956, who has twelve years (144 months) or more but less than fifteen years (180 months) of Credited Service shall be eligible to retire on the first day of any month upon making a lump sum contribution to the pension fund equal to $5.25 multiplied by the difference between 180 months and the number of months of Credited Service already acquired. This is an exception, and the only exception, to the requirement of fifteen years of Credited Service.

## ARTICLE X

SECTION 1. Upon retirement as provided in Article IX hereof, a Member shall become entitled to receive from the Pension Fund a pension benefit payable monthly commencing at the end of the calendar month in which retirement occurs and continuing until the end of the calendar month immediately preceding death; provided that no retirement benefit shall be payable for any month for which a Member shall receive a Service credit. The monthly pension benefit shall be computed as follows:

(a) Except where the benefit is to be computed on a reduced actuarial basis, the monthly benefit shall be 8½ cents for each month of Credited Service.

(b) Where the benefit is to be computed on a reduced actuarial basis then the said benefit of 8½ cents for each month of Credited Service shall be reduced in accordance with the table set forth in Appendix A.

SECTION 2. In no event shall a Member be credited for purposes of computing pension benefits hereunder with more than 30 years of Service, past and future.

SECTION 3. Notwithstanding any other provision of this agreement no benefits shall be payable until the first day of the month following certification by the Trustees to the parties that they have established adequate facilities for the administration of the Plan. In no event shall interest be payable on pension benefits, whether or not past due.

SECTION 4. The amount of the monthly pension bene-

9

fit shall be subject to review by the Trustees, who shall be empowered to increase or decrease the same (a) upon any change in the amount of the monthly contribution, for the purpose of conforming the benefit to the contribution, and (b) periodically, at intervals of not less than one year, for the purpose of conforming the benefit to actuarial experience under the Plan, provided that (and subject to the provisions of Article XVIII) no increase or decrease in the monthly pension benefit made as the result of any change in the amount of the monthly contribution shall affect any benefits theretofore paid to any retired employees or any benefits thereafter payable to employees who retired prior to the last preceding change in the monthly contribution (it being the intent of this latter provision that the pension payable to a retired employee shall be subject to adjustment as a result of changes in the monthly contribution only once, and thereafter any change in the monthly contribution shall not affect the pension benefit of any such retired employee).

SECTION 5. No member shall have the right to assign any benefits to which he may be entitled hereunder and any such assignment shall be void; nor shall any benefit be subject to attachment or other legal process for or against a member.

## ARTICLE XI
### Availability for service

Commencing with ninety (90) days from the date of signing of Plan and Trust Agreement, monthly registration with the Unions for full service shall be prima facie evidence of availability for Service. Failure to so register in any month shall be prima facie evidence of non-availability for Service during each month.

## ARTICLE XI (A)

No covered employee, no qualified employee, no employee receiving a pension under the pension plan shall be discriminated against by the Trustees in any way by reason of membership or non-membership in any union or by reason of activity on behalf of or in opposition to any union.

## ARTICLE XII
### The Trustees

SECTION 1. The Pension Plan shall be administered by fourteen Trustees, seven (hereinafter referred to as Union Trustees) to be designated by the Unions, and seven (hereinafter referred to as Association Trustees) to be designated by the Employer Associations as follows:

Three by The Golden Gate Restaurant Association.

Two by The Hotel Employers' Association of San Francisco.

One by The San Francisco Club Institute.

10

One by The San Francisco Hotel Association, Inc.
The initial Trustees shall be the following:

## Union Trustees

Joseph Piccini
William McCabe
Joe Belardi
Jackie Walsh
A. T. Gabriel
Bertha Metro
Russell R. Dreyer

## Golden Gate Restaurant Association Trustees

Clarence F. DeLano
Carl Franz
Desmond Garrioch

## Hotel Employers' Association of San Francisco Trustees

John B. Quigley
Joseph D. Sullivan

## San Francisco Club Institute Trustees

John Bennett

## San Francisco Hotel Association, Inc. Trustees

Bert Edelman

SECTION 2. The Trustees shall serve for life or the duration of the Trust unless they become disabled for any cause, resign or are removed. Vacancies in Association Trusteeships shall be filled by the respective Employer Associations. In the event of temporary absence or inability to act of any Trustee, an alternate empowered to act in such Trustee's place may be designated by the Party by whom such Trustee was designated. Vacancies in Union Trusteeships shall be filled by the Unions. Any Association Trustee may be removed by the Employer Association by whom he was designated and any Union Trustee may be removed by the Unions.

SECTION 3. Any Trustee appointed hereby or hereunder may qualify by executing and delivering to each of the parties an instrument accepting such appointment and agreeing to be bound by the terms of this Agreement. Thereupon such Trustee without any further act shall become vested with all of the estate, rights, powers, discretion, duties and obligations of a Trustee.

SECTION 4. To constitute a quorum at any regular or special meeting of the Board of Trustees there must be present in person at least five Association Trustees and five Union Trustees. The Association Trustees shall have one vote. The Union Trustees shall have one vote. The vote of the Association Trustees shall be determined by concurrence of a minimum of five and the vote of the Union Trustees shall be determined by a simple majority.

SECTION 5. Meetings of the Board of Trustees shall

11

be at the principal office of the Plan or at such other place as the Board of Trustees may determine from time to time. The annual meeting shall be held in the second week of January of each year. Special meetings may be called by written notice given by the Chairman and Secretary, or by written notice given by any five Trustees; provided, however, that such notice shall be given to all Members of the Board of Trustees at least five days before the date of the meeting. The giving of such notice may be waived by written waiver of all members of the Board of Trustees (which waiver may be executed before, during or after such meeting), or by the presence of all members of the Board of Trustees at such special meeting.

SECTION 6. The Board of Trustees shall, at its annual meeting, elect a Chairman and Secretary from its members; provided, however, that at no time shall both the Chairman and Secretary be Association Trustees or Union Trustees. Said officers shall act without compensation. The Secretary shall keep minutes and records of all meetings, proceedings and acts of the Board of Trustees. Copies of all approved minutes and proceedings shall be available to all members of the Board of Trustees. All checks, drafts, vouchers, other withdrawals of moneys from the Pension Fund, and all instruments and documents executed on behalf of the Trustees, shall be executed by the Chairman or his alternate, and by the Secretary or his alternate; provided that checks need not be so executed if the Trustees shall have authorized an agent to execute the same but may be executed by such agent. The Union Trustees shall designate the alternate for whichever officer is a Union Trustee and the Association Trustees shall designate the alternate for whichever officer is an Association Trustee.

SECTION 7. The exercise of any power or right reserved to the Trustees under this agreement shall be only by the vote of the Association Trustees and the vote of the Union Trustees cast in the manner described in Section 4 of this Article. In the event of a deadlock of the Board of Trustees on any matter, including the administration of the Pension Fund, the Board of Trustees shall agree upon a neutral person to decide such dispute and if this cannot be done within 15 days of said deadlock, either the Union Trustees or the Association Trustees may petition the United States District Court for the Northern District of California, Southern Division, to appoint such a neutral person. When there is such a deadlock and such neutral person is appointed, the decision of such neutral person shall be final and binding as to such matter which may be in dispute. Any expenses incurred in connection with the appointment of, or the services of, such neutral person shall be paid out of the Pension Fund.

SECTION 8. Whenever in the administration of the trust established under this Agreement the Trustees shall deem it necessary or desirable that a matter be proven or established prior to taking, suffering or omitting any action hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may be deemed to be conclusively proved and established by a certificate signed by the Secretary of an Employer Association with respect to any matter concerning such

12

Employer Association or members of such Association, by a certificate signed by a Contributing Employer (or his duly authorized representative) who is not a member of any of the Employer Associations with respect to any matter concerning such Contributing Employer, or by an officer of the Unions as to any matter concerning the Unions or any Employee; When such certificate is delivered to the Trustees it shall be full warrant to the Trustees for any action taken, suffered or omitted by them on the faith thereof. However, in their discretion, the Trustees may accept or require other evidence of the fact or matter. Except when otherwise in this Agreement expressly provided, any notice, request, consent, approval, waiver or other instrument to be delivered or furnished by the Employer Associations and the Unions to the Trustees shall be sufficiently executed in the name of an officer of each of the Employer Associations and an officer of the Unions.

SECTION 9. The Trustees shall not receive compensation for the performance of their duties as Trustees but shall be reimbursed for all reasonable and necessary expenses that they incur in the performance of such duties. The costs of any suit or proceeding brought by or against the Trustees (including counsel fees of counsel for the Trustees) arising out of acts within the course and scope of the powers and duties of the Trustees shall be paid from the Pension Fund.

No Trustee acting hereunder shall be liable for any action not constituting gross negligence taken or omitted by him in good faith, nor for the acts or omissions of any agent, employee or attorney selected by the Trustees with reasonable care, nor for the act or omission of any other Trustee; nor shall any Trustee be individually or personally liable for any of the obligations of the Trustees acting as such or of the Pension Fund.

Neither any Contributing Employer, any of the Employer Associations nor the Unions shall be liable in any respect for any of the obligations of the Trustees because such Trustees are officers of, or are in any way associated with, any Contributing Employer, Employer Association or Union, it being understood that each of the Trustees designated acts as a representative in a statutory sense only and not as agent of any person, firm, corporation or organization.

Neither any Contributing Employer, Employer Association nor Union shall be responsible or liable for any debts, obligations, liabilities, acts or omissions suffered, incurred or committed by the Trustees.

SECTION 10. The Trustees shall be bonded in an amount to be determined by the Trustees for the faithful performance of their duties hereunder. The premium for said bonds shall be paid from the Pension Fund.

SECTION 11. Any Trustee, and any corporate co-Trustee, may resign at any time by delivery of a written notice of such resignation to the Parties and the principal office of the Plan. Any Employer Association may terminate the appointment of any Trustee designated by it by mailing or delivering to such Trustee, to the Unions and to the principal office of the Plan a notice of appropriate action taken by the Association terminating said appointment. The Unions may terminate the appointment

13

of any Union Trustee by mailing or delivering to such Trustee, to each of the Employer Associations and to the principal office of the Plan a notice of appropriate action taken by the Union terminating said appointment.

# ARTICLE XIII

## Duties and Responsibilities of Trustees

SECTION 1. The Trustees shall be responsible for the administration of the Plan. The Trustees may, at their option, delegate the responsibility for said administration to duly authorized agents of the Trustees to the extent determined appropriate by the Trustees. Control over the manner of such administration shall be retained by the Trustees.

SECTION 2. All moneys received by the Trustees under any provision of this Agreement shall be deposited by the Trustees in any bank authorized to do business within the State of California, whether or not such deposits are insured under any present or future law of the United States. Said bank shall be a corporate co-trustee under this Agreement for the purpose of receiving all funds contributed to the Pension Fund and for holding the same pursuant to the terms of this Agreement and under conditions imposed by the Trustees. Said corporate co-trustee shall be qualified and doing business in the State of California and subject to the supervision of the Superintendent of Banks or the Controller of the Currency, or a bank which is a member of the Federal Reserve Bank. Such deposits may be made productive or unproductive of income or interest in the absolute discretion of the Trustees. The Trustees shall not be responsible for any loss of money on deposit with said corporate co-trustee in the case of the failure thereof.

SECTION 3. The Trustees shall have the right to invest and reinvest such part of the Pension Fund and income therefrom as in their absolute discretion they shall deem advisable, in any investments permissible by the law then prevailing for the investment of trust funds under the laws of the State of California. In this connection they shall have all the rights, powers and privileges of any other owner of investments.

SECTION 4. The trustees shall maintain or cause to be maintained books of account and records of all their transactions which shall be audited at least annually as of the thirty-first day of December by a certified public accountant selected by the Trustees. The Trustees shall also make or cause to be made all other reports required by law and shall employ a qualified actuary who shall review experience under the Plan annually and shall report to the Trustees.

A statement of the results of the annual audit and the annual report of the actuary shall be available at reasonable times for inspection by interested persons entitled thereto at the principal offices of the Plan.

From time to time in their absolute discretion the Trustees may report by written notice as hereinafter provided to interested parties under this Agreement any

14

action taken or omitted or events occurring in the administration of this Trust. If the Trustees make report to the interested parties of any action taken or not taken or event occurring under the administration of this Trust, then, unless written objection to any such matter reported is made by the interested parties, or any of them, within thirty (30) days after receipt of such report, then all matters so reported shall be conclusively deemed to have been ratified and approved by such interested parties. Such objection must be filed in writing with the Trustees at the principal office of the Plan within the time provided. If no such objection is filed, then the interested parties, and each of them, shall be deemed to have waived any objection to such matters and transactions so reported and shall thereafter be estopped from asserting any such objection thereto.

All expenses of the Trustees, in administering the Plan, including attorneys fees, expenses involved in maintaining books of account and records, preparing audits, accountings, and reports, procuring actuarial reviews and reports, and all other expenses attendant upon the collections, disbursements and transactions pertaining to the Pension Fund, shall be paid for from the Pension Fund.

SECTION 5. The Trustees may, from time to time, adopt such rules and regulations as they may deem desirable for the administration of the Plan; provided that such rules and regulations shall not conflict with the terms of this Agreement.

SECTION 6. No party dealing with the Trustees shall be obligated to see to the application of any moneys or property of the Pension Fund or to see that the terms of the trust have been complied with or be obligated to inquire as to the necessity or expediency of any act of the Trustees.

Every instrument executed by the Trustees shall be conclusive in favor of every person relying thereon that (a) at the time of the delivery of said instrument the trust hereby created was in full force and effect, and (b) that said instrument was executed in accordance with the terms and conditions imposed by this Agreement, and (c) that the Trustees were duly authorized and empowered to execute such instrument.

In the event that any dispute shall arise as to the persons for whom payment of any funds and/or delivery of any contracts or other property shall be made by the Trustees, the Trustees may withhold such payment and/or delivery until such dispute shall have been determined by a court of competent jurisdiction or shall have been settled by the parties concerned.

15

## ARTICLE XIV
### Rights in Fund

The Trustees shall have full and complete title to the entire Pension Fund as defined herein, subject only to the terms of this Agreement. No Contributing Employer shall have any right, title, interest or claim, legal or equitable, in or to any sum paid by him or any other employer to the Fund or against the Fund itself. No Member shall have any right, title, interest or claim, legal or equitable, in or to his employer's or any other Contributing Employer's payments or contributions to the Fund. Rights against the Fund of persons entitled to payment therefrom shall be governed exclusively by this Agreement, and any rules and regulations which the Trustees may adopt pursuant hereto. A Member who has been denied benefits by the Trustees shall have no recourse against the Fund, the Trustees, the Contributing Employer or any of the parties to this Agreement, or any of the officers, members or agents of any of them. Neither any Contributing Employer nor any Member nor any of the parties hereto shall have any vested rights in or to the Fund or any part thereof, and upon termination of the Trust hereby created the Fund shall be put to the uses and purposes specified herein.

No part of this Trust and Fund shall be used for or diverted to purposes other than to provide pension benefits for the exclusive benefit of members and their beneficiaries and administrative costs, by amendment or otherwise.

## ARTICLE XV
### Amendment of the Trust Agreement

The provisions of this Agreement may be amended by mutual agreement in writing of the Unions and the Employer Associations; provided, however, that the parties shall have no power to amend this Agreement so as to divert any of the Pension Fund then in the hands of the Trustees from the purposes of this Trust, or to alter the sole purpose of the Trust to provide pension benefits to Members; nor shall any amendment permit any return or payment over of any part of the Pension Fund to any of the parties hereto or to any Contributing Employer, Member, Employee or other person. The Employer Associations and the Unions are particularly authorized by each party to this Agreement, and by every person who may become a party to or be bound by or be a beneficiary of this Agreement, to amend or to modify this Agreement on his behalf. This Trust shall be irrevocable except for the right to modify, amend or terminate the same as in this Agreement provided.

## ARTICLE XVI
### Miscellaneous

SECTION 1. No dispute arising with respect to the administration of the Plan or any application of the terms and provisions of this Agreement shall be subject

16

to the grievance procedure established by any collective bargaining agreement.

Section 2. This Agreement shall be binding upon the successors and assigns of the respective Employer Associations, the Unions and the Trustees.

Section 3. The Trust herein is created and accepted in the State of California, and all questions pertaining to said Trust, its validity, the administration thereof and the construction of this Agreement, shall be determined in accordance with the laws of the State of California.

Section 4. In case any provision of this Agreement shall be held illegal or invalid for any reason, said illegality or invalidity shall not affect the remaining parts of this Agreement, but this Agreement shall be construed and in force as if said illegal or invalid provision had never been inserted herein; provided, however, that the remaining parts of this Agreement will enable the objectiv and purposes of this Trust Agreement to be accomplished.

Should any provision of this Agreement be declared illegal or invalid, the parties hereto shall immediately adopt a new provision to take the place of that declared to be illegal or invalid.

## ARTICLE XVII

### Approval by Internal Revenue Service

It is the intention of the parties that contributions made by the Contributing Employers shall constitute deductible business expenses for income tax purposes under section 404 of the Internal Revenue Code and that the Pension Fund and the contributions and any earnings or increments of the Pension Fund and any interest or income accruing thereto from investment or otherwise, shall not be subject to tax under the provisions of section 501(a) of the Internal Revenue Code. This Agreement shall be submitted to the Internal Revenue Service for approval for such tax purposes. The parties agree to make such amendments to this Agreement as may be necessary to obtain such approval. This Agreement shall be communicated to Employees as provided by the Internal Revenue Code and the regulations thereunder.

## ARTICLE XVIII

No provision of this Plan shall be subject to renegotiation except upon its fifth anniversary or any anniversary date thereafter upon sixty days' written notice given by any party to the others. Upon any termination of the Plan, the Trustees shall reduce the assets of the Pension Fund to cash and after deducting estimated expenses of distribution shall disburse the same as follows:

(1) All Members whose applications for pensions have been approved prior to the date of termination of the Plan shall be paid the then present value of their remaining pension payments, which value shall be computed by qualified actuaries retained by the Trustees. If the Pension Fund shall be insufficient to make the

17

payments for which this paragraph provides, then such Fund shall be apportioned among such Members in proportion to the then present value of their remaining pension payments so computed.

(2) If any balance remains in the Fund after making the payments for which the foregoing paragraph (1) provides, then such balance shall be used to pay to each Member other than those mentioned in the preceding paragraph the portion earned of the then present value of pension payments for life commencing at normal retirement age and assuming Continuous Service by such member from the date of termination of the Plan until attainment of normal retirement age. If the Fund, while sufficient to make the payments for which paragraph (1) provides, should be insufficient to make the payments for which this paragraph (2) provides, then the balance after making the payments for which paragraph (1) provides, shall be apportioned among the members other than those mentioned in paragraph (1) in proportion to the portions earned of the then present value of their pension payments computed as above set forth in this paragraph (2).

(3) If any balance shall remain after making the payments for which the foregoing paragraphs (1) and (2) provide, then such balance shall be divided equally among the members receiving payments under said paragraphs (1) and (2).

IN WITNESS WHEREOF, the parties hereto, by and through their duly authorized representatives, have set their hands this 20 day of March, 1958, in the City and County of San Francisco, State of California. (The foregoing provisions contain amendments adopted October 9, 1958.)

THE GOLDEN GATE RESTAURANT ASSOCIATION
         By Wm. L. Kabeary
         C. J. Franz

THE HOTEL EMPLOYERS' ASSOCIATION OF SAN FRANCISCO
         By J. D. Sullivan

THE SAN FRANCISCO HOTEL ASSOCIATION, INC.
         By Roger S. Lalanne

THE SAN FRANCISCO CLUB INSTITUTE
         By J. D. Sullivan

THE SAN FRANCISCO LOCAL JOINT EXECUTIVE BOARD OF CULINARY WORKERS, BARTENDERS AND HOTEL & CLUB SERVICE WORKERS
         By Jackie Walsh, President
         By Anthony Anselmo, Secretary

COOKS, PASTRY COOKS AND ASSISTANTS UNION, LOCAL NO. 44
         By Jos. Belardi

BARTENDERS' UNION, LOCAL NO. 41
By William McCabe
Wm. "Stormy" Walsh

WAITERS' & DAIRY LUNCHMEN'S UNION,
LOCAL NO. 30
By Joe Piccini
Sanford Williams

WAITRESSES' UNION, LOCAL NO. 48
By Jackie Walsh
Elizabeth Kelley

MISCELLANEOUS CULINARY EMPLOYEES'
UNION, LOCAL NO. 110
By A. T. Gabriel

HOTEL & CLUB SERVICE WORKERS' UNION,
LOCAL NO. 283
By Bertha Metro

APARTMENT, MOTEL AND HOTEL EMPLOYEES'
UNION, LOCAL NO. 14, affiliated with the
Building Service Employees' International Union
By Russell R. Dreyer

## APPENDIX A

Percentage of normal pension benefit payable
in event of retirement prior to age 65.

| Age at which retirement occurs | Percentage of normal pension benefit | |
|---|---|---|
| | Male | Female |
| 55 | 43.69% | 48.44% |
| 56 | 46.97 | 51.62 |
| 57 | 50.60 | 55.10 |
| 58 | 54.62 | 58.92 |
| 59 | 59.09 | 63.13 |
| 60 | 64.08 | 67.77 |
| 61 | 69.65 | 72.90 |
| 62 | 75.91 | 78.60 |
| 63 | 82.96 | 84.95 |
| 64 | 90.94 | 92.04 |
| 65 | 100.00% | 100.00% |

OEIU-3
AFL-CIO(51)

19

**EXHIBIT E**

Gonzales
Tubao
2509 La Union
**PHILIPPINES**

April 21, 2006

Re: <u>Insurance Policy No. 415-391-5083</u>
Pedro T. Suguitan
SSA # 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

The **President**
San Francisco Culinary, Bartenders and
Service Employees Pension Fund
642 Harrison Street
San Francisco, California 94107-1351
U.S.A.

Dear Sir:

    I respectfully request for whatever be the result of my attached claims for the life insurance, widow's pension, educational benefits of our child John E. Suguitan in consonance with the provision of his Family Pension Plan under Policy No. 415-391-5083. On the alternative, if I am not entitled to such benefits his repatriation lump sum should be paid to me as the surviving spouse. For the lapse of one year hence, I have not received any response, and I presume that maybe your company was dissolved and merged to another company which has, perhaps, the authority to make a decision or resolution over my claims that are valid requiring a judicial review whichever is proper because to my opinion the bonds of a bankrupt business entity is transferred to the <u>new</u> company that assimilates its legal functions.

    I hope for your referencial attention to this matter.

Very truly yours,

*Juanita E. Suguitan*
JUANITA E. SUGUITAN

RECEIVED
MAY 1 2 2006
SFA

MAY 1 5 2006

**PHILIPPINES**

R    00    859    844

Pos...
Letter/Package No. _____ La Union 2504
Posted on _____ PP 1055
Preserve this receipt for reference in case of inquiry

_____ Postmaster/Teller

Gonzales
Tubao
2509 La Union
**PHILIPPINES**

July 25, 2005

Re: <u>Insurance Policy No. 415-391-5083</u>
Pedro T. Suguitan
SSA # 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

The **President**
San Francisco Culinary, Bartenders and
Service Employees Pension Fund
642 Harrison Street
San Francisco, California 94107-1351
U.S.A.

Dear Sir:

This is my formal claim for benefits from your good office e.g. <u>Life Insurance</u> of my late husband member, my widow's pension and educational benefits of my child with member. I believe that he was a holder of a Family Pension Plan.

I am the compulsory beneficiary to his intestate property as his surviving spouse, hence, his election of his late wife Prudencia Suguitan at the time he retired can be <u>set aside</u>.

Likewise, I am claiming for his <u>repatriation lump sum</u> payment.

I hope the above claims are moot and academic and not sensitive or difficult so as not to need judicial review.

Very truly yours,

*Juanita E. Suguitan*
**JUANITA E. SUGUITAN**

RECEIVED
MAY 12 2006
SFA

*Note*: Attached herewith are:
1. Certified Copy of our Marriage Contract in 1983
2. Certified Copy of Pedro Suguitan's Death Certificate and
3. Two letters of the Pension Fund dated March 3, 1994 and March 9, 1998.

MAY 15 2006

**EXHIBIT F**

## SAN FRANCISCO CULINARY, BARTENDERS &
## SERVICE EMPLOYEES PENSION FUND

June 27, 2006

Juanita E. Suguitan
Gonzales
Tubao
2509 La Union
PHILIPPINES

RE:    Pedro Suguitan

Dear Mrs. Suguitan:

We are in receipt of your most current later. Please be advised that Mr. Suguitan **had no survivor benefit** *on his pension*; his pension was payable for his lifetime only. This is not the same as literally having no survivors. His pension did not provide for payments to any survivors. This plan offers two choices: A lifetime plan, which Mr. Suguitan had, or a 50% Joint and Survivor plan, which is chosen at the time of retirement and provides for 50% of the retiree's pension amount to be paid to his surviving spouse (**not children**) for the spouse's lifetime. Mr. Suguitan did not choose the Joint and Survivor option. We are returning the documents you have sent.

The letter from the plan, dated 1983, which you have provided, merely addresses the tax consequences of earning more than $5,400.00 a year. It was sent to all participants in the plan; it is a form letter.

If you have documentation, addressed to your husband personally (not a letter sent to all participants in the plan), **with our name and address on it that references a "Family Pension Plan" or the policy number you have mentioned**, please send us a copy so that we may research it further.

Sincerely,

Janet K. MacEachern
Pension Department

**EXHIBIT G**

Gonzales
Tubao
2509 La Union
**PHILIPPINES**

July 11, 2006

Re: Insurance Policy No. 415-391-5083
Pedro T. Suguitan
SSA # 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

Janet K. MacEachern
Pension Department
San Francisco Culinary, Bartenders and
Service Employees Pension Fund
642 Harrison Street, Suite 306
San Francisco, California 94107-1351
U.S.A.

Dear Madam:
    I have your letter of June 27, 2006 and in compliance therewith I respectfully
submit a January 1, 1983 letter of the Board of Trustees of San Francisco Culinary,
Bartenders & Service Employees Pension Fund. Likewise, I submit this certified birth
certificate of our child with the member Pedro T. Suguitan together with the copy of our
marriage and these evidences refutes your allegation that he had no survivor. I and our
said child had not received any pension since the time we were married up to the present.
I think I am also entitled to death benefits.
    I hope that our claims will be processed. Thank you.

Respectfully yours,

*Juanita E. Suguitan*
**JUANITA E. SUGUITAN**



**EXHIBIT H**

Gonzales
Tubao
2509 La Union
**PHILIPPINES**

August 17, 2006

Janet K MacEachern
Pension Department
San Francisco Culinary, Bartenders and
Service Employees Pension Fund
642 Harrison Street, Suite 306
San Francisco, CA 94107-1351
U.S.A.

Dear Madam:

Your letter of June 27, 2006 emphasized that my late husband Pedro T. Suguitan had no survivor benefit on his pension. However, you tell me to submit any documentation indicating his Family Pension Plan or his policy number for you to make proper research. To comply, I hereby supply his Payer's Federal identification number 94-1434093 which maybe his true insurance policy number. In addition, I am providing you his Locator Number: 98272-227-02624-7 to aid your good office in precisely finding his Pension Plan records.

If appropriate, shall I be allowed to request assistance from the U.S. Department of Homeland and Security FOIA/PA Branch for that office to assign a control number for the purpose of placing this search in the Worldwide Locator under the provision of the Freedom of Information Act, 5 U.S.C. 552(b)(6).

As an ultimate remedy, granting that my late husband had not elected a 50% allocation of his pension to be paid to me and my child during his lifetime I invoke the provision of a recent case law precedent (Benetto v. OPM), and this court decision allowed survivor's pension benefits without prior election of the retired deceased member out of his life insurance. This matter is supported by 5 U.S.C. 8341 (b)(1) that states: "An annuitant died after electing to provide a survivor annuity for his spouse or child." Likewise, under 5 U.S.C. 8342 (d) it provides for payment of lumpsum benefit to his survivor's. The lumpsum benefit represents the unrefunded retirement deductions withheld from the basic pay of an employee [5 U.S.C. 8331 (8)].

I mainly rely on the Benetto case, and we can verify it from the Civil Service Retirement System 1900 E. Street, N.W. Washington DC 20415.

Madam, I am not questioning or demanding the company but I have to exhaust all possible efforts in pursuing my legal rights with the guarantee of the due process clause and equal protection components of the 5th amendment of U.S. Constitution.

I hope you understand me. Thank you.

RECEIVED
SEP 06 2006
PENSION

Sincerely,

*Juanita E Suguitan*

JUANITA E. SUGUITAN

cc:

Atty. Magda S. Ortiz
Director, FOIA/PA Branch
U.S. Department of Homeland Security
2nd floor, FOIA Unit
111 Mass Avenue NW (2nd floor)
Washington, DC 20529
U.S.A.

RECEIVED

SEP 0 6 2006

PENSION

**EXHIBIT I**

# SAN FRANCISCO CULINARY, BARTENDERS & SERVICE EMPLOYEES PENSION FUND

September 6, 2006

Juanita E. Suguitan
Gonzales
Tubao
2509 La Union
PHILIPPINES

RE:    Pedro Suguitan

Dear Mrs. Suguitan:

We are in receipt of your most recent letter. As we have previously advised, Mr. Suguitan chose a Lifetime Pension Benefit, pursuant to the provisions of the San Francisco Culinary, Bartenders, and Service Employees Pension Plan ("Plan") document. Please note this plan is a pension plan established pursuant to collective bargaining agreements between UNITE HERE Local 2 (a union which represents hotel and restaurant employees in San Francisco) and various hotels, clubs and restaurants in San Francisco. In response to the legal citations you submitted in your recent letter (which we forwarded to Plan counsel), please be advised that the Plan to which Mr. Suguitan was a participant is not a United States government pension plan on behalf of federal civil service employees or United States military personnel. Nor is it a life insurance policy.

Please see the enclosed plan document for descriptions of the two options available to retirees.

Pursuant to the Plan's appeal procedure, you may request an appeal of your denial to the Board of Trustees if you feel you are entitled to surviving spouse benefits as described in the plan document. The request for an appeal must be submitted, in writing, to the Plan's administrative office at 642 Harrison St., Ste 306, San Francisco, CA 94107, within 90 days of receipt of this notice of denial. You must state in clear and concise terms any reason or reasons for disagreement with this decision. After receiving your request of appeal, the Board of Trustees will review your claim and issue a decision in writing within ninety days after receipt of the request for review unless special circumstances require an extension.

Sincerely,

Janet K. MacEachern
Pension Department

642 HARRISON STREET, SUITE 306 • SAN FRANCISCO, CALIFORNIA 94107-1351 • TELEPHONE (415) 777-3707

**EXHIBIT J**

Gonzales

Tubao

2509 La Union

**PHILIPPINES** 601

September 29, 2006


**The Chairman**　　　　ATTN: **Janet K. MacEachern**

Board of Trustees

San Francisco Culinary, Bartenders, &

Service Employees Pension Fund

642 Harrison St., Ste 306

San Francisco, CA 94107

**U.S.A.**


Dear Madam:

　　This is my formal "Notice of Disagreement" to the adverse initial decision as embodied

in your letter of September 6, 2006. For now, I opted to **<u>appeal</u>** same to the Board of Trustees for

the following bases:

　　　　a.) My late husband/member was a bonafide and permanent employee of the San

　　　　　　Francisco Culinary, Bartenders, and he worked there for a long period of time and he

　　　　　　reached the required age of 65 full retirement;

　　　　b.) It is by the company's general policy that its employees are automatically members of

　　　　　　the Union, thus, he can avail of all the provisions of the CBA;

c.) Of course, the company has the obligation to provide him a pension plan for his survivors e g., surviving spouse, child, etc.;

d.) A government pension plan or federal civil service employees or U.S. military personnel have adapted a pension plan, annuity, dependency and indemnity compensation (US Veterans) and these benefits for beneficiaries are set forth in the Constitution and the common law.

## ARGUMENT

In this appeal, I am unrepresented (Pro Se) and I am in the status of unequal footing with the company, therefore, my initial pleadings must be construed **liberally**. United States v. Uvalde Consol. Indep. Sch. Dist., 625 F. 2d 547, 549 (5th Cir. 1890). This is especially true for a pro se Complaint under Haines v. Kerner et al., 404 U.S. 519. My complaint should not be dismissed by the Board of Trustees if it does not support a legal theory because my plight provides for relief on any possible theory. "Bowers v. Hardwick, 478 U.S. 186, 201 (1986).

The initial determination denying my claim was not based on substantial evidence, or if it is "tainted by an error of law," it must be reversed. Butler v. Barnhart, 353 F. 3d 992, 999 (D.C. Cir. 2004). Otherwise, I shall incur redressable injury. Art. III of U.S. Const. See e.g. Lujan V. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992); Allen v. Wright, 468 U.S. 737, 751 (1984); Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 39 (1976).

## CONCLUSION

I am aware that the Board of Trustees is obligated to protect the interest of the company but it considers the concern of its employees as more paramount and with permission for leave I propose an Alternative Dispute Resolution (ADR) for a fair and partial review to enhance voluntary compliance and public confidence in the integrity and efficiency of the service of the

workforce, utilizing innovative approaches, dynamic processes that promote **quality business results** wherein I should be invited to participate in the conference or meeting of the Board through my E-mail address: john_suguitan12@yahoo.com.ph. This ADR is more convenient and will evade judicial review, and at least will not give additional burden to the company.

Madam, I trust that my appeal be expeditiously submitted to the Plan's Administrative Office.

Hoping for a due process. Thank you.

Very truly yours,

*Juanita Suguitan*

**JUANITA E. SUGUITAN**
Appellant

**EXHIBIT K**

# SAN FRANCISCO CULINARY/BARTENDERS
## SERVICE EMPLOYEES PENSION FUND

October 18, 2006

Juanita E. Suguitan
Gonzales
Tubao
2509 La Union
PHILIPPINES

RE:   Pedro Suguitan

Dear Mrs. Suguitan:

We are in receipt of your appeal. To further perfect your claim, please provide your marriage certificate, and any other documents you have that you believe support your claim to **benefits as outlined in the Plan document you have been sent**. Please remember that this plan does not provide any benefits for children, so your documentation should only be pertaining to you and to your marriage to Mr. Suguitan.  We do not need any documentation relating to your children. If you have any Plan documentation that your husband signed indicating that he was choosing a Joint & Survivor benefit when he retired in 1971, please include that.

Please also note that this plan, as we have said, is **NOT** a government or civil service pension plan.

Your appeal will be heard at the Board's meeting at the end of November. Appellants are not permitted to appear in person. Your documentation will be presented in full to the Board and you will be notified in writing of their decision.

Sincerely,

Janet K. MacEachern
Pension Department

642 HARRISON STREET, SUITE 306 • SAN FRANCISCO, CALIFORNIA 94107-1351 • TELEPHONE (415) 777-3707

**EXHIBIT L**

# SAN FRANCISCO CULINARY, BARTENDERS & SERVICE EMPLOYEES PENSION FUND

October 31, 2006

Juanita E. Suguitan
Gonzales
Tubao
2509 La Union
PHILIPPINES

RE:   Pedro Suguitan

Dear Mrs. Suguitan:

We have located the marriage certificate you originally submitted to the Trust Fund Office, which indicates you were married in 1983. As you were not married at the time Mr. Suguitan retired, this would exclude you from any Joint & Survivor benefits, even had he selected them. Only the current spouse at the time of retirement is eligible for survivor benefits.

Please be advised that the two bases for the denial of your benefits are that Mr. Suguitan did not choose survivor benefits, and that in any case you were not his spouse at the time of retirement.

And again, please note that this plan **is NOT a government plan**.

As you have been previously notified, your appeal will be heard at the Board's meeting at the end of November. Appellants are not permitted to appear in person. Your documentation will be presented in full to the Board and you will be notified in writing of their decision.

Sincerely,

Janet K. MacEachern
Pension Department

**EXHIBIT M**

December 7, 2006

Juanita E. Suguitan
Gonzales
Tubao
2509 La Union
PHILIPPINES

RE:    Pension Appeal

Dear Ms. Suguitan:

The Board of Trustees reviewed your appeal at their recent meeting, and I regret to inform you that it has been denied.

You and your late husband were not married at the time that he retired with a pension from the San Francisco Culinary, Bartenders, and Service Employees Pension Fund; therefore, it would have been impossible for you to have been his designated Surviving Spouse. In addition, the form of benefit Mr. Suguitan chose did not provide for any Surviving Spouse benefit even for the wife to whom he was married at the time he retired.

We regret that the decision was not a favorable one.

Sincerely,

Kirsten Brooks/jkm
Senior Vice President
For the Board of Trustees

**EXHIBIT N**

Gonzales
Tubao
2509 La Union
**PHILIPPINES 601**

December 22, 2006

**Ms. Kirsten Brooks**
Senior Vice President
San Francisco Culinary, Bartenders &
Service Employees Pension Fund
642 Harrison Street, Suite 306
San Francisco, CA 94107-1351
**United States of America**

**Dear Madam:**
  Thank you for your letter of December 7, 2006 informing me the denial of my
appeal by the Board of Trustees. In this matter I take permission for leave to enter my
<u>motion for reconsideration</u>. The initial decision did not provide a precise bases to make
adequate for me to understand, inspite that I met the standard of proof by presenting Title
38 U.S.C.A. Section 103 a (West 1991) which <u>allows me insurance</u> benefits out of the
record earnings of my late husband Pedro T. Suguitan. My contention that I am the legal
wife of said member can survive rational basis review. Quiban, 928 F.2d at 1162. In
addition, the decision is not entitled to deference and is directly at odds with the plain
meaning of the Board's regulations. No deference is due such interpretation. See Davis v.
Latschar, 202 F.3d 359, 365 (D.C. Cir. 2000).
  It is noteworthy that the letters of Ms. Janet K. MacEachern dated October 18,
2006 and October 31, 2006, respectively (Annexes "A" and "B") are incongruent,
meaning, they are prejudgments, and obviously repetitive and cumulative that mimic the
Board decision.
  I should not be very demanding yet I invoke my fundamental rights equivocal to
the Equal Protection component of the 5th amendment which shall possibly culminate
into a grievance that may be subjective judicial review because my plight is a continuing
public interest for its national importance.
  Madam, with your plain goodness I hope I will refer my appeal to the Board of
Trustees to take another look of this matter for a <u>de novo</u> review. Thank you for your
kind accommodation, I am

**JUANITA E. SUGUITAN**
Appellant

Encl. as stated:

**EXHIBIT O**

# SAN FRANCISCO CULINARY, BARTENDERS & SERVICE EMPLOYEES PENSION FUND

February 5, 2007

Juanita E. Sugitan
Gonzales
Tubao
2509 La Union
Phillippines 601

RE: <u>Appeals related to your late husband,Pedro T. Sugitan</u>

Dear Ms. Sugitan:

Please be advised that the Plan Office is in receipt of your December 22, 2006 letter in regards to your prior appeal of the San Francisco Culinary, Bartenders & Service Employee Plan's denial of any survivor benefits related to the accrued pension benefit of Pedro Sugitan.

As outlined in the Plan Office's December 7, 2006 correspondence to you, your appeal was given a full and fair review by the Board of Trustees at their most recent Board of Trustees' meeting. Unfortunately, the Board of Trustees denied your appeal request.

As outlined in Part I, Section 23 (r) of the Plan Document/Summary Plan Description, "If you are married on the date of Normal or Early Retirement, you will receive a 50 percent Joint and Survivor benefit unless you and your Spouse elect in writing not to receive such benefit." See also Part II, Section 6.01 of the Plan document.

Your late husband's spouse at the time of his retirement would be the only individual entitled to such "surviving spouse" benefits from the Plan. Indeed your late husband and his spouse at the time of his retirement elected to not receive, and thereby waived, their right to receive his pension benefit in such benefit form.

As outlined in the Plan Office's December 7, 2007 letter, because you were not married to your husband at the time of his retirement (or during the accrual of his benefit in the Plan) you could not, based upon the Plan document and applicable federal law, be the "surviving spouse" for purposes of Pedro Sugitan's pension benefits from the Pension Plan..

A copy of Section 7.04 of the Plan document, which outlines the Right of Appeal and Determination of Disputes, is enclosed for your records and your review. The decision, which was communicated to you in the Plan Office's December 7, 2006 letter, is the Board of Trustee's final and binding decision. Accordingly, you have exhausted all of your appeal rights within the Plan. You are, however, free to pursue your right to file a lawsuit in federal court, pursuant to Section 502 (a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), with regards to your claim for survivor benefits.

Sincerely,

Kirsten Brooks

642 HARRISON STREET, SUITE 306 • SAN FRANCISCO, CALIFORNIA 94107-1351 • TELEPHONE (415) 777-3707

## ARTICLE 7 – APPLICATIONS, BENEFIT PAYMENTS, AND RETIREMENT

**Section 7.01 – Applications and Payment.**
(a) Any claim to pension benefits, including Normal Retirement, Early Retirement, Pre-Retirement Survivor Annuity and Disability Retirement Benefits, or claims under the Plan or against the Fund shall be made on a form and in a manner prescribed by the Trustees.

Normal Retirement Pension Benefits (Sections 4.02 and 4.03), shall be payable commencing as of the first day of the month following the month in which the Participant fulfills all the conditions of entitlement to benefits. Early Retirement Pension Benefits provided for in Sections 4.04 and 4.05 and the Pre-Retirement Survivor Annuity provided for in Section 6.02, shall be payable commencing as of the first day of the month following the month in which the Participant or Spouse fulfills all the conditions of entitlement to benefits and files an application for such Benefits. The dates stated herein applicable to Normal Retirement, Early Retirement, and Pre-Retirement Survivor Annuity shall be the Effective Date of Pension as that term is used in the Plan. Disability Retirement Benefits provided for in Sections 4.06 to 4.08 shall be payable in accordance with the provisions of Section 4.09.

(b) Payment of benefits to a Participant who is entitled to a Normal Pension Benefit under the provisions of this Plan effective and payable on the date referred to in Section 7.01(a) shall be made and distributed no later than the 60th day after the latest of the close of the Plan Year in which:

(1) the Participant attains the age of 65;

(2) the Participant terminates his service with his last Covered Employer;

(3) the Participant has either reached (a) the tenth (10th) or the fifth (5th) anniversary of the year in which the Participant commenced Participation in the Plan whichever is applicable under Sections 1.12 and 4.02, whichever an intervening Permanent Break-in-Service; or (b) the Participant has attained ten (10) years of Vesting Service without an intervening Permanent Break-in-Service.

(4) A Participant with at least one hour of service on or after April 1, 1989 employed by a Union or an Association or who is employed with a contributing employer in employment not covered by a collective bargaining agreement who has either reached (a) the tenth (10th) anniversary of the year in which the Participant commenced Participation in the Plan without an intervening Permanent Break-in-Service; or (b) fifth (5th) anniversary of the year in which the Participant commenced Participation in the Plan whichever is applicable under Sections 1.12 and 4.02, without an intervening Permanent Break-in-Service; or (c) the Participant has attained five (5) years of Vesting Service without an intervening Permanent Break-in-Service.

At the option of the Board of Trustees, said benefit payments or distributions shall include a lump sum equal to any unpaid benefits accruing from the Effective Date of Pension (see Section 7.01(a)), or monthly payments actuarially increased to take into account any delay between the Effective Date of Pension and commencement of benefit payments or distributions.

Notwithstanding the foregoing, if a Participant has received a distribution of his vested benefit under Section 7.07(a), below, and such benefit has not been restored under Section 7.07(b), below, then no additional benefit shall be payable under this section.

**Section 7.02 – Information Required.** Each Participant, Beneficiary, Pensioner, or any other claimant shall furnish to the Board of Trustees any information or proof requested by it and reasonably required to administer the Pension Plan. Failure on the part of any Participant, Beneficiary, Pensioner, or claimant to comply with such request promptly, completely, and in good faith shall be sufficient grounds for denying, suspending, or discontinuing benefits to such person. If a Participant, Beneficiary, Pensioner, or other claimant makes a false statement material to his claim, the Board of Trustees shall recoup, offset, or recover the amount of any payments made in reliance on such false statement in excess of the amount to which such Participant or Pensioner or other claimant was rightfully entitled under the provisions of this Plan.

**Section 7.03 – Action of Board of Trustees.** The Board of Trustees shall, subject to the requirements of the law, be the sole judge of the standard of proof required in any case, and they shall have the discretionary authority to determine the eligibility for benefits of any Plan Participant and/or to construe the terms of this Plan and to apply the Plan, and decisions of the Board of Trustees shall be final and binding on all parties, subject only to such judicial review as allowed by federal law.

**Section 7.04 – Right of Appeal and Determination of Disputes.**
(a) No Employee, Pensioner, or other Beneficiary or claimant shall have any right or claim to benefits under the Pension Plan, other than as specified herein. Any dispute as to eligibility, type, amount, or duration of benefits shall be resolved by the Board of Trustees under and pursuant to the Pension Plan, and its decision of the dispute shall be final and binding upon all parties thereto.

(b) Any person whose application for benefits under the Plan has been denied in whole or in part by the Board of Trustees, or whose claim to benefits is otherwise denied by the Board, shall be notified of such decision in writing by the Board of Trustees and may petition the Board to review the decision. A petition for review shall be in writing, shall state in clear and concise terms the reason or reasons for disagreement with the decision of the Board of Trustees, and shall be filed with or received by the Board of Trustees within 60 days after the date shown on the notice to petitioner of the decision. Upon good cause shown, the Board may permit the petition to be amended or supplemented. Except for good cause shown, the failure to file a petition for review within such 60-day period shall constitute a waiver of the claimant's right to review the decision on the basis of the information

**EXHIBIT P**

# LEONARD CARDER, LLP

VICTORIA CHIN
LYNN ROSSMAN FARIS
ERIC M. FINK
SHAWN GROFF
KATE R. HALLWARD
CHRISTINE S. HWANG
ARTHUR A. KRANTZ
DANIELLE LUCIDO
PHILIP C. MONRAD
ELEANOR I. MORTON
ROBERT REMAR
MARGOT A. ROSENBERG
BETH A. ROSS
MATTHEW D. ROSS
JACOB F. RUKEYSER
PETER W. SALTZMAN
FRANCISCO UGARTE
RICHARD ZUCKERMAN

PLEASE REFER TO OUR FILE NO.

ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612

TELEPHONE: (510) 272-0169
FAX (510) 272-0174
www.leonardcarder.com

NORMAN LEONARD
(1914 - 2006)

OF COUNSEL

WILLIAM H. CARDER
SANFORD N. NATHAN
KIRSTEN L. ZERGER

SAN FRANCISCO OFFICE
1188 FRANKLIN STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA 94109
TELEPHONE: (415) 771-6400
FAX: (415) 771-7010

124-1

April 5, 2007

## VIA UPS INTERNATIONAL

Juanita E. Sugitan
Gonzales
Tubao
2509 La Union
Philippines 601

**RE:    Appeals Related to your Late Husband, Pedro T. Sugitan**

Dear Ms. Sugitan:

Please be advised that the Plan Office is in receipt of your February 21, 2007 "letter" in regards to your prior appeal of the San Francisco Culinary, Bartenders & Service Employee Pension Plan's denial of any survivor benefits related to the accrued pension benefit of Pedro Sugitan, your late husband.

As outlined in the Plan Office's December 7, 2006 and February 5, 2007 correspondence to you, your appeal was given a full and fair review by the Board of Trustees at their recent meeting. Unfortunately, the Board of Trustees denied your appeal request.

As outlined in Part I, Section 23 (r) of the Plan Document/Summary Plan Description (a copy of which is attached hereto), "If you are married <u>on the date of Normal or Early Retirement,</u> you will receive a 50 percent Joint and Survivor benefit unless you and your Spouse elect in writing not to receive such benefit." See also, Section 6.01 of the Plan Document/Summary Plan Description, a copy of which is attached hereto. Based upon such provisions, your late husband's spouse at the time of his retirement would be the <u>only</u> individual entitled to such "surviving spouse" benefits from the Plan. Indeed your late husband, and his spouse <u>at the time of his retirement,</u> elected to not receive, and thereby waived, their right to receive his pension benefit in such benefit form.

As outlined in the Plan Office's December 7, 2006 and February 5, 2007 letters, because you were not married to your husband at the time of his retirement (or during the accrual of his benefit in the Plan), you could <u>not,</u> based upon the Plan document and applicable federal law, be

LEONARD CARDER, LLP

*Juanita E. Sugitan*
*April 5, 2007*
*Page 2*

the "surviving spouse" for purposes of his pension benefits from the Pension Plan.

With respect to your February 21, 2007 letter, which is titled as a 'Civil Complaint,' the San Francisco Culinary, Bartenders and Service Employees Pension Fund ("Fund") denies all of the claims set forth in your letter.

Specifically, the Fund denies that it denied any claim for benefits related to your son or derived from a 'Family Protection Plan' of your late member/husband Pedro T. Sugitan. Furthermore, the Fund denies that your son is entitled to any benefit from the Fund.

The Fund's policies are not one-sided or unconstitutional, do not deprive employees of their rights and are applied in accordance with the applicable collective bargaining agreements. Moreover, the Fund did not violate Section 502(a) of the Employee Retirement Income Security Act of 1974.

Your February 21, 2007 letter (which titled a "Civil Complaint") is not a matter of national public interest and the Fund's denial of your claim is not detrimental to the rights of all workers and employees of the United States of America.

Finally, the Fund denies that you are entitled to the sum of $1,000,000.00 as you have not been damaged by the Fund's actions in any manner.

The decision, which was communicated to you in the Plan Office's December 7, 2006 letter, is the Board of Trustee's final and binding decision. You have exhausted all of your appeal rights within the Plan. You are, however, free to pursue your right to file a lawsuit in federal court, pursuant to Section 502 (a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), with regards to your claim for survivor benefits.

A copy of Section 7.04 of the Plan Document/Summary Plan Description, which is entitled "Right of Appeal and Determination of Disputes," is enclosed for your review and records.

Very truly yours,

LEONARD CARDER, LLP

By: _____
Shawn C. Groff

Enclosures
cc:  John E. Sugitan (via UPS Internat'l.)
     Kirsten Brooks

authority to decide whether or not you are eligible for a pension and will determine the amount of the pension, according to the Plan. All decisions by the Board of Trustees are final.  You must make application at the office of the Fund Manager.

**(p)  May I work after retirement?**

On and after April 1, 1989, you may work after retirement. If you are receiving pension benefits and you worked at least one (1) hour of Covered Employment in any Plan Year beginning on or after April 1, 1988, then so long as you are under age 65, you will continue to receive Pension Credit. However, if you are over age 65, your benefits will be offset to take into account the in-service distribution of your pension benefits. Notwithstanding the preceding sentence, no actuarial offset shall apply to the calculations of your benefit when you first retire under the "5-Year Window Benefit" in accordance with section 4.13. However, actuarial offsets shall apply to any additional benefits earned for service after your first retirement under the "5-Year Window Benefit".   (See Section 7.09(c) for one (1) hour of Covered Employment after April 1, 1988: see Section 7.09(c) for work after retirement before April 1, 1989; see also Section 7.09(d) and your Union contract.)

**(q)  Will payments from the Plan prevent my being entitled to Social Security benefits?**

No, benefits which you receive under the Plan are in addition to those to which you may be entitled under the Social Security program.

**(r)  If I die after retirement, what benefits are available to my Spouse?**

The Joint and Survivor Annuity (Joint Pension) is the normal form of benefit under the Plan for a married participant. There shall be a reduction in the single life annuity benefit amount payable to you on retirement if you have a Joint Pension determined on the basis of the age of both you and your legal Spouse.

If you are married on the date of Normal or Early Retirement, you will receive a 50 percent Joint and Survivor benefit unless you and your Spouse elect in writing not to receive such benefit. This election must be witnessed by a Plan representative or notary public prior to your benefit commencement date.  If you and your Spouse waive the Joint Pension, you will be treated upon your death as a single Beneficiary and your Spouse will not be entitled to any benefit.

Effective April 1, 1987, if you retire on a disability benefit (based on a single life annuity) and you are alive at age

65, your benefit automatically becomes a Normal Retirement
Benefit and you will receive a 50 percent Joint and Survivor
Annuity benefit, unless you and your spouse elect in writing not
to receive such Joint Pension. This election must be witnessed by
a Plan representative or notary public prior to your benefit
commencement date. If you and your Spouse waive the Joint
Pension, you will be treated as a single Beneficiary and upon
your death your Spouse will not be entitled to any benefit.

Such election to waive a Joint Pension may be revoked in
writing, witnessed as provided above, at any time prior to the
commencement date of pension benefit. (See Article 6).

**(s)  What benefits will my Spouse be entitled to if I die before
retirement?**

On and after August 23, 1984, your lawful Spouse will be
eligible for a Pre-Retirement Survivor Annuity. The payment of
the Pre-Retirement Survivor Annuity is dependent on the number of
vesting service you have earned and/or your age at death:

(a)  if you had at least 10 years of vesting service and you
die before attaining age 62, your spouse will be entitled to a
pension in an amount equal to one-half the amount that would have
been payable to you if you had separated from Covered Employment
on the date of your death and you:

    i.   retired with a Joint Pension;
    i.   survived to age 62; and
    ii.  died the day after you reached age 62.

(b)  if you had at least 5 years but less than 10 years of
vesting service, your spouse will be entitled to a pension in an
amount equal to one-half the amount that would have been payable
to you if you had separated from Covered Employment on the date
of your death and you:

    i.    retired with a Joint Pension;
    ii.   survived to age 65; and
    iii.  died the day after you reached age 65.

(c)  if you die after age 62 but before age 65 and you had
at least 10 years of vesting service, your spouse will be
entitled to an immediate pension in an amount equal to one-half
the amount that would have been payable to you.

Benefits are paid on the first of the month following the
month in which the Spouse fulfills all the conditions of
entitlement to benefits and files an application for such
benefits.

**24.  Who takes care of the money contributed by the employers?**

10

of service in the Armed Forces of the United States in time of war or national emergency pursuant to a national conscription law, provided the Member made himself available for Covered Employment within ninety (90) days after release from active duty or ninety (90) days after his recovery from the disability, continuing after his release from active duty but excluding periods of voluntary re-enlistment not affected by national emergency or time of war. Prior to July 1, 1965, a grace period was granted, but no Pension Credit was given for any period of absence from service under the Plan because of compulsory military service.

### ARTICLE 6 -- JOINT PENSION AND PRE-RETIREMENT SURVIVOR ANNUITY

Section 6.01 - Joint Pension After Retirement.

(a)    Joint Pension Defined.  Effective August 23, 1984, the normal form of benefit under this Plan for a married Participant who had one or more hours of Covered Employment on or after September 1, 1974 and who had not yet begun to receive an annuity shall be a Qualified Joint and Survivor Annuity ("Joint Pension") unless the Participant and his lawful Spouse waive such annuity pursuant to Section 6.01(d) below. The Joint Pension provides a lifetime pension for a married Pensioner and, after his death, a lifetime pension for his surviving Spouse.  The Joint Pension is Actuarially Equivalent to the single life pension, which is the normal form of benefit under this Plan for non-married Participants.  When a Joint Pension is in effect, the amount of the Pensioner's monthly benefit is reduced (in accordance with Section 6.03) from the full amount otherwise payable.  The monthly amount payable to the surviving Spouse of a deceased Pensioner who receives a Joint Pension is one-half the monthly pension amount paid to the Pensioner.

(A married Participant who qualified and applied for early retirement or normal retirement benefits on and after November 1, 1969 through March 31, 1976 could elect a Joint Pension.  Between April 1, 1976 and August 22, 1984, the Spouse of a married Participant who died at a time he was entitled to a pension but before pension payments commenced was eligible for a Joint Pension, provided the Participant died after

43

becoming eligible for early or normal retirement benefits.)

(b)    <u>Distribution Requirement</u>.  Effective April 1, 1983, a Participant's entire interest must be distributed no later than the period from the required Pension Commencement Date over the life of the Participant and over the life of the Participant's Spouse.

(c)    <u>No Adjustment of Benefits</u>.  Effective April 1, 1974, the monthly amount of the Joint Pension, once it has become payable, shall not be increased if the marriage of the Pensioner and his Spouse is subsequently legally terminated or if the Spouse predeceases the Pensioner. Notwithstanding the preceding sentence, a Pensioner shall be allowed to change his pension election once only, provided that the Pension meets all of the following requirements:

  i)    The Pensioner was required to take mandatory distributions under section 7.05(f) of this Plan;

  ii)   The Pensioner continued to work in covered employment while receiving the mandatory distributions; and

  iii)  The Pensioner makes a new election at the time he terminates from covered employment. The new election shall be final and binding on the Pensioner and the Plan.

(d)    <u>Waiver of the Joint Pension</u>.  Effective January 1, 1985, the following spousal consent requirements shall apply:

  (1)   <u>Election Not to Receive Joint Pension Option</u>.  A married Participant and lawful Spouse may elect <u>not</u> to receive the Joint Pension (see subsection (2) below) during a ninety (90) day period ending  on the Participant's annuity starting date (as defined in ERISA Section 201(h)(2)) by filing a written waiver of such joint pension option with the Fund Manager on such forms or in the manner as the Board of Trustees requires.  The Participant may revoke any previous waiver, election, or revocation of a waiver up to said Participant's retirement date.

  (2)   <u>Spousal Consent</u>.  An election by a married Participant not to receive a Joint Pension is effective only if the Participant's lawful Spouse consents to such election in writing on a form to be provided by the Plan and such election is

44

witnessed by a Plan representative or notary public.

Both the married Participant and Spouse electing not to receive the Joint Pension shall receive and acknowledge in writing that they have received a written explanation of the terms and conditions of the Joint Pension; the Participant's right to make, and the effect of an election to waive, the Joint Pension form of benefit; the rights of the Participant's Spouse; and the right to make, and the effect of, a revocation of an election. A Participant's pension application may be delayed until said Participant and Spouse have submitted the documents required herein and any other documentation required by the Plan or the Board of Trustees.

(3)  <u>Limited Exceptions -- No Spousal Consent Required</u>. Spousal consent shall not be required if the Participant establishes to the satisfaction of the Board of Trustees that the consent required by the Spouse cannot be obtained because there is no Spouse or the Spouse cannot be located or because of other unusual circumstances. Spousal consent shall also not be required as allowed by federal law, court decisions, or regulations.

(4)  <u>Limited Effect of Spousal Consent/Spouse Determination</u>. A consent by a Spouse is effective only with respect to that Spouse, and a determination that the consent of a Spouse cannot be obtained is also effective only with respect to that Spouse.

(e)  <u>Joint Pension for Disabled, Married Participants</u>. Effective April 1, 1987, the Joint Pension shall be payable to a married Participant receiving a disability retirement benefit pursuant to Sections 4.06 and 4.09 above upon the first day of the month following the date said Participant attains age 65, unless such Participant and his lawful Spouse waive such Joint Pension in the manner set forth above in subsection (d).

<u>Section 6.02 - Pre-Retirement Survivor Annuity</u>.

(a)  <u>Participant's Death Before Attainment of Age 62</u>. Effective August 23, 1984, if a married Participant who earned an hour or more of Covered Employment on or after April 1, 1976, who was alive on August 23, 1984, and who had not begun receiving an annuity dies before

45

# ARTICLE 7 - APPLICATIONS, BENEFIT PAYMENTS, AND RETIREMENT

**Section 7.01 - Applications and Payment.**

(a) Any claim to pension benefits, including Normal Retirement, Early Retirement, Pre-Retirement Survivor Annuity, and Disability Retirement Benefits, or claims under the Plan or against the Fund shall be made on a form and in a manner prescribed by the Trustees.

Normal Retirement Pension Benefits (Sections 4.02 and 4.03), shall be payable commencing as of the first day of the month following the month in which the Participant fulfills all the conditions of entitlement to benefits. Early Retirement Pension Benefits provided for in Sections 4.04 and 4.05 and the Pre-Retirement Survivor Annuity pro- vided for in Section 6.02, shall be payable commencing as of the first day of the month following the month in which the Participant or Spouse fulfills all the conditions of entitlement to benefits and files an application for such benefits. The dates stated herein applicable to Normal Retirement, Early Retirement, and Pre-Retirement Sur- vivor Annuity shall be the Effective Date of Pension as that term is used in the Plan. Disability Retirement Bene- fits provided for in Sections 4.06 to 4.08 shall be payable in accordance with the provisions of Section 4.09.

(b) Payment of benefits to a Participant who is entitled to a Normal Pension Benefit under the provisions of this Plan effective and payable on the date referred to in Section 7.01(a) shall be made and distributed no later than the 90th day after the latest of the close of the Plan Year in which:

(1) the Participant attains the age of 65;

(2) the Participant terminates his service with his last Covered Employer;

(3) the Participant has either reached (a) the tenth (10th) or the fifth (5th) anniversary of the year in which the Participant commenced Participation in the Plan which- ever is applicable under Sections 1.12 and 4.02, without an intervening Permanent Break-in-Service; or (b) the Participant has attained ten (10) years of Vesting Service without an intervening Permanent Break-in-Service.

(4) A Participant with at least one hour of service on or after April 1, 1989 employed by a Union or an Association or who is employed with a contributing employer in employment not covered by a collective bargaining agree- ment who has either reached (a) the tenth (10th) anniver- sary of the year in which the Participant commenced Participation in the Plan without an intervening Perma- nent Break-in-Service, or (b) fifth (5th) year in which the Participant commenced Participation in the Plan whichever is applicable under Sections 1.12 and 4.02, without an intervening Permanent Break-in-Service; or (c) the Participant has attained five (5) years of Vesting Service without an intervening Permanent Break-in- Service.

At the option of the Board of Trustees, said benefit payments or distributions shall include a lump sum equal to any unpaid benefits accruing from the Effective

32

Date of Pension (see Section 7.01(a)), or monthly pay- ments actuarially increased to take into account any delay between the Effective Date of Pension and commence- ment of benefit payments or distributions.

Notwithstanding the foregoing, if a Participant has received a distribution of his vested benefit under Section 7.07(a), below, and such benefit has not been restored under Section 7.07(b), below, then no additional benefit shall be payable under this section.

**Section 7.02 - Information Required.** Each Participant, Beneficiary, Pensioner, or any other claimant shall furnish to the Board of Trustees any information or proof requested by it and reasonably required to administer the Pension Plan. Failure on the part of any Participant, Bene- ficiary, Pensioner, or claimant to comply with such request promptly, completely and in good faith shall be sufficient grounds for denying, suspending, or discon- tinuing benefits to such person. If a Participant, Benefici- ary, Pensioner, or claimant makes a false statement material to his claim the Board of Trustees shall recoup, offset, or recover the amount of any payments made in reliance on such false statement in excess of the amount to which such Participant or Pensioner or other claimant was rightfully entitled under the provisions of this Plan.

**Section 7.03 - Action of Board of Trustees.** The Board of Trustees shall, subject to the requirements of the law, be the sole judge of the standard of proof required in any case, and they shall have the discretionary authority to determine the eligibility for benefits of any Plan Partici- pant and/or to construe the terms of this Plan and to apply the Plan, and decisions of the Board of Trustees shall be final and binding upon all parties, subject only to such judicial review as allowed by federal law.

**Section 7.04 - Right of Appeal and Determination of Disputes.**

(a) No Employee, Pensioner or other Beneficiary or claim- ant shall have any right or claim to benefits under the Pension Plan, other than as specified herein. Any dispute as to eligibility, type, amount or duration of benefits shall be resolved by the Board of Trustees under and pursuant to the Pension Plan, and its decision of the dispute shall be final and binding upon all parties thereto.

(b) Any person whose application for benefits under the Plan has been denied in whole or in part by the Board of Trustees, or whose claim to benefits is otherwise denied by the Board, shall be notified of such decision in writing by the Board of Trustees and may petition the Board to review the decision. A petition for review shall be in writing, shall state in clear and concise terms the reason or reasons for disagreement with the decision of the Board of Trustees, and shall be filed with or the date by the Board of Trustees within 60 days after the date shown on the notice to petitioner of the decision. Upon good cause shown, the Board may permit the petition to be amended or supplemented. Except for good cause shown, the failure to file a petition for review within such 60-day period shall constitute a waiver of the claimant's right to review the decision on the basis of the information

33

and evidence submitted prior to the decision. Such failure will not, however, preclude the claimant from establishing eligibility for benefits at a later date based on additional information and evidence which was not available to the claimant at the time of the decision.

(c) The Board of Trustees shall have the discretionary authority to determine the eligibility for benefits of all Plan Participants and/or to construe the terms of the Plan. A decision of the Board of Trustees with respect to a petition for review shall be final and binding upon all parties, including the applicant or petitioner and any person claiming under the applicant or petitioner. The provisions of this section shall apply to and include any and every claim to benefits from the Fund, and any claim or right asserted under the Plan or against the Fund, regardless of the basis asserted for the claim and regardless of when the act or omission upon which the claim is based occurred.

Section 7.05 – Benefit Payments Generally. A Participant who is eligible to receive a pension benefit under this Plan and makes application in accordance with the rules of this Pension Plan shall be entitled upon retirement to receive the monthly pension benefits provided for the remainder of his life and the life of his Spouse (unless the joint Pension is waived), subject to the provisions of this Plan.

(a) If a Pensioner submits evidence of entitlement to additional Pension Credit, his increased pension, if any, will become effective retroactively to the Effective Date of Pension, i.e., first day of the month following the month the Participant fulfilled all the conditions of entitlement to benefits. (See Section 7.01.)

(b) If a Participant previously denied a pension submits evidence of entitlement to additional Vesting Service or Pension Credit or years of participation which subsequently qualifies him for a pension, his pension will become effective retroactively to the Effective Date of Pension, i.e., first day of the month following the month in which the Participant fulfilled all the conditions of entitlement to benefits. (See Section 7.01.)

(d) At the option of the Board of Trustees, payments for past unpaid benefits granted after the submission of evidence of entitlement to additional Pension Credit, or retroactive benefits to a Participant previously denied a pension, shall be paid either as a single lump sum payment or prospectively in the form of actuarially increased monthly payments or distributions.

(d) Payment of monthly benefits under the Plan to a Participant cannot exceed the limit of annual benefit per Participant contained in Section 415(b) of the Internal Revenue Code, as it may be amended (which is annually adjusted by cost-of-living increases), or 100 percent of the Participant's average compensation for his high three years of earnings while under the Plan.

34

(For purposes of applying the limitations of Internal Revenue Code ("IRC") Section 415, the term "compensation" includes:

...a Participant's earned income, wages, salaries, fees for professional service and other amounts received for personal services actually rendered in the course of employment with an employer maintaining the Plan (including, but not limited to, commissions, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips and bonuses). Compensation shall also include (and not include) income and funds received as provided in IRC Regulation Section 1.415-2(d).

Compensation for any limitation year is the compensation actually paid or includable in gross income during such year.

In determining whether the Plan meets the Internal Revenue Code maximum limitations on benefits, the maximum dollar and compensation limits are to be reduced where a participant begins to receive benefits under the Plan. The reduction is made by multiplying the applicable limitations by a fraction, the numerator of which is the years of service as of and including the current limitation years, and the denominator of which is ten (10).

If the benefit commences before a participant attains age sixty-two (62), the maximum permissible amount may not exceed the actuarial equivalent of a $90,000 annual benefit beginning at age 62 or the Participant's highest average compensation. This actuarial adjustment shall not reduce the $90,000 limitation below $75,000 if the benefit begins at or after age 55.

Effective April 1, 1988, and each January 1 thereafter, the $90,000 limitation above will be automatically adjusted to the new dollar limitation determined by the Commissioner of Internal Revenue Service for that year. The new limit will apply to limitation years ending within the calendar year of the date of the adjustment.

(e) If any benefits are due and payable at the time of the Pensioner's or Beneficiary's death, such benefits shall be paid to the estate of the Pensioner or Beneficiary unless any other person is entitled to such benefits by law. Such payments must be made, except in the case of a surviving Spouse, within five (5) years of the death of the Participant.

(f) In the event that there are conflicting claims to a benefit payable under the terms of the Plan, the Board of Trustees may interplead the claimants by appropriate proceedings in a court of competent jurisdiction. In such event, the provisions of Section 7.04 shall not apply, and the claimants shall submit their respective claims to the court in which the interpleader proceedings are pending.

Upon deposit with the court of the accrued benefits, the Board of Trustees shall be entitled to be dismissed from the interpleader proceedings and to payment of its costs in connection therewith, including reasonable attorney's fees. Thereafter, a final decision of the court in the proceedings shall bind all claimants to the benefit and shall

35

**EXHIBIT Q**

# LEONARD CARDER, LLP

VICTORIA CHIN
LYNN ROSSMAN FARIS
ERIC M. FINK
SHAWN GROFF
KATE R. HALLWARD
CHRISTINE S. HWANG
ARTHUR A. KRANTZ
DANIELLE LUCIDO
PHILIP C. MONRAD
ELEANOR I. MORTON
ROBERT REMAR
MARGOT A. ROSENBERG
BETH A. ROSS
MATTHEW O. ROSS
JACOB F. RUKEYSER
PETER W. SALTZMAN
FRANCISCO UGARTE
RICHARD ZUCKERMAN

PLEASE REFER TO OUR FILE NO.    124-1

ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612

TELEPHONE: (510) 272-0169
FAX (510) 272-0174
www.leonardcarder.com

April 6, 2007

NORMAN LEONARD
(1914 - 2006)

OF COUNSEL

WILLIAM H. CARDER
SANFORD N. NATHAN
KIRSTEN L. ZERGER

SAN FRANCISCO OFFICE
1188 FRANKLIN STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA 94109
TELEPHONE: (415) 771-6400
FAX: (415) 771-7010

**VIA UPS INTERNATIONAL**

John E. Sugitan
2509 La Union
Gonzales, Tubao
Philippines 601

     **RE:**    **Appeals Related to Pedro T. Sugitan**

Dear Mr. Sugitan:

     Please be advised that the Plan Office of the San Francisco Culinary, Bartenders & Service Employee Pension Plan's is in receipt of your February 21, 2007 letter regarding the Pension Plan's prior denial of Juanita E. Sugitan's appeal regarding survivor benefits related to the accrued pension benefit of Pedro T. Sugitan.

     As outlined in the Plan Office's December 7, 2006 and February 5, 2007 prior correspondence which was sent to Juanita E. Sugitan, Ms. Sugitan's appeal was given a full and fair review by the Board of Trustees at their recent meeting. Unfortunately, the Board of Trustees denied the appeal request.

     As outlined in Part I, Section 23 (r) of the Plan Document/Summary Plan Description (a copy of which is attached hereto), "If you are married <u>on the date of Normal or Early Retirement</u>, you will receive a 50 percent Joint and Survivor benefit unless you and your Spouse elect in writing not to receive such benefit." See also, Section 6.01 of the Plan Document/Summary Plan Description, a copy of which is attached hereto. Based upon such provisions, Pedro T. Sugitan's spouse at the time of his retirement would be the <u>only</u> individual entitled to such "surviving spouse" benefits from the Plan. Indeed Pedro T. Sugitan, and his spouse <u>at the time of his retirement</u> (which was someone other than Juanita E. Sugitan), elected to not receive, and thereby waived, their right to receive his pension benefit in such benefit form.

     As outlined in the Plan Office's December 7, 2006 and February 5, 2007 letters to Juanita E. Sugitan, because Juanita E. Sugitan was not married to Pedro T. Sugitan at the time of his retirement (or during the accrual of his benefit in the Plan), Juanita E. Sugitan could <u>not</u>, based upon the Plan document and applicable federal law, be the "surviving spouse" for purposes of his pension benefits from the Pension Plan.

*John E. Sugitan*
*April 6, 2007*
*Page 2*

With respect to your February 21, 2007 letter (which is titled as a 'Civil Complaint') the San Francisco Culinary, Bartenders and Service Employees Pension Fund ("Fund") denies all of the claims set forth in your letter.

Specifically, the Fund denies that it denied any claim for benefits related to you or derived from a 'Family Protection Plan' of Pedro T. Sugitan, which is in any way related to the Fund. Furthermore, the Fund is not aware of any claims made by you with respect to Pedro T. Sugitan's pension benefit from the Fund and denies that you are entitled to any benefit from the Fund.

The Fund's policies are not one-sided or unconstitutional, do not deprive employees of their rights and are applied in accordance with the applicable collective bargaining agreements. Moreover, the Fund did not violate Section 502(a) of the Employee Retirement Income Security Act of 1974 with respect to its denial of Juanita E. Sugitan's claim.

Your February 21, 2007 letter (which is titled as "Civil Complaint") is not a matter of national public interest and the Fund's denial of your claim is not detrimental to the rights of all workers and employees of the United States of America.

Finally, the Fund denies that you are entitled to the sum of $1,000,000.00 as you have not been damaged by the Fund's actions in any manner.

If you believe that you are entitled to some form of benefit from the Fund, please notify the Fund office in writing at the following address:

San Francisco Culinary Bartenders and Service Employees Pension Fund
c/o S.F. Administrators, Inc.
642 Harrison Street, Suite 306
San Francisco, California 94107

Very truly yours,

**LEONARD CARDER, LLP**

By: _____
Shawn C. Groff

Enclosures

cc:    Juanita E. Sugitan (via U.S. 1st Class Mail- Internattional)
       Kirsten Brooks

G:\0124 - SF Culinary Pension\127-Sugitan\2007.0406 Ltr to John Sugitan.wpd

authority to decide whether or not you are eligible for a pension and will determine the amount of the pension, according to the Plan. All decisions by the Board of Trustees are final.  You must make application at the office of the Fund Manager.

**(p)  May I work after retirement?**

On and after April 1, 1989, you may work after retirement. If you are receiving pension benefits and you worked at least one (1) hour of Covered Employment in any Plan Year beginning on or after April 1, 1988, then so long as you are under age 65, you will continue to receive Pension Credit. However, if you are over age 65, your benefits will be offset to take into account the in-service distribution of your pension benefits. Notwithstanding the preceding sentence, no actuarial offset shall apply to the calculations of your benefit when you first retire under the "5-Year Window Benefit" in accordance with section 4.13. However, actuarial offsets shall apply to any additional benefits earned for service after your first retirement under the "5-Year Window Benefit".   (See Section 7.09(c) for one (1) hour of Covered Employment after April 1, 1988: see Section 7.09(c) for work after retirement before April 1, 1989; see also Section 7.09(d) and your Union contract.)

**(q)  Will payments from the Plan prevent my being entitled to Social Security benefits?**

No, benefits which you receive under the Plan are in addition to those to which you may be entitled under the Social Security program.

**(r)  If I die after retirement, what benefits are available to my Spouse?**

The Joint and Survivor Annuity (Joint Pension) is the normal form of benefit under the Plan for a married participant. There shall be a reduction in the single life annuity benefit amount payable to you on retirement if you have a Joint Pension determined on the basis of the age of both you and your legal Spouse.

If you are married on the date of Normal or Early Retirement, you will receive a 50 percent Joint and Survivor benefit unless you and your Spouse elect in writing not to receive such benefit. This election must be witnessed by a Plan representative or notary public prior to your benefit commencement date.  If you and your Spouse waive the Joint Pension, you will be treated upon your death as a single Beneficiary and your Spouse will not be entitled to any benefit.

Effective April 1, 1987, if you retire on a disability benefit (based on a single life annuity) and you are alive at age

9

65, your benefit automatically becomes a Normal Retirement Benefit and you will receive a 50 percent Joint and Survivor Annuity benefit, unless you and your spouse elect in writing not to receive such Joint Pension. This election must be witnessed by a Plan representative or notary public prior to your benefit commencement date. If you and your Spouse waive the Joint Pension, you will be treated as a single Beneficiary and upon your death your Spouse will not be entitled to any benefit.

Such election to waive a Joint Pension may be revoked in writing, witnessed as provided above, at any time prior to the commencement date of pension benefit. (See Article 6).

**(s)  What benefits will my Spouse be entitled to if I die before retirement?**

On and after August 23, 1984, your lawful Spouse will be eligible for a Pre-Retirement Survivor Annuity. The payment of the Pre-Retirement Survivor Annuity is dependent on the number of vesting service you have earned and/or your age at death:

(a)  if you had at least 10 years of vesting service and you die before attaining age 62, your spouse will be entitled to a pension in an amount equal to one-half the amount that would have been payable to you if you had separated from Covered Employment on the date of your death and you:

    i.   retired with a Joint Pension;
    i.   survived to age 62;and
    ii.  died the day after you reached age 62.

(b)  if you had at least 5 years but less than 10 years of vesting service, your spouse will be entitled to a pension in an amount equal to one-half the amount that would have been payable to you if you had separated from Covered Employment on the date of your death and you:

    i.   retired with a Joint Pension;
    ii.  survived to age 65; and
    iii. died the day after you reached age 65.

(c)  if you die after age 62 but before age 65 and you had at least 10 years of vesting service, your spouse will be entitled to an immediate pension in an amount equal to one-half the amount that would have been payable to you.

Benefits are paid on the first of the month following the month in which the Spouse fulfills all the conditions of entitlement to benefits and files an application for such benefits.

**24.  Who takes care of the money contributed by the employers?**

10

of service in the Armed Forces of the United States in time of war or national emergency pursuant to a national conscription law, provided the Member made himself available for Covered Employment within ninety (90) days after release from active duty or ninety (90) days after his recovery from the disability, continuing after his release from active duty but excluding periods of voluntary re-enlistment not affected by national emergency or time of war. Prior to July 1, 1965, a grace period was granted, but no Pension Credit was given for any period of absence from service under the Plan because of compulsory military service.

### ARTICLE 6 -- JOINT PENSION AND PRE-RETIREMENT SURVIVOR ANNUITY

Section 6.01 - Joint Pension After Retirement.

(a)    Joint Pension Defined.  Effective August 23, 1984, the normal form of benefit under this Plan for a married Participant who had one or more hours of Covered Employment on or after September 1, 1974 and who had not yet begun to receive an annuity shall be a Qualified Joint and Survivor Annuity ("Joint Pension") unless the Participant and his lawful Spouse waive such annuity pursuant to Section 6.01(d) below. The Joint Pension provides a lifetime pension for a married Pensioner and, after his death, a lifetime pension for his surviving Spouse.  The Joint Pension is Actuarially Equivalent to the single life pension, which is the normal form of benefit under this Plan for non-married Participants.  When a Joint Pension is in effect, the amount of the Pensioner's monthly benefit is reduced (in accordance with Section 6.03) from the full amount otherwise payable.  The monthly amount payable to the surviving Spouse of a deceased Pensioner who receives a Joint Pension is one-half the monthly pension amount paid to the Pensioner.

(A married Participant who qualified and applied for early retirement or normal retirement benefits on and after November 1, 1969 through March 31, 1976 could elect a Joint Pension.  Between April 1, 1976 and August 22, 1984, the Spouse of a married Participant who died at a time he was entitled to a pension but before pension payments commenced was eligible for a Joint Pension, provided the Participant died after

43

becoming eligible for early or normal retirement
benefits.)

(b) <u>Distribution Requirement</u>. Effective April 1, 1983, a
Participant's entire interest must be distributed no
later than the period from the required Pension
Commencement Date over the life of the Participant and
over the life of the Participant's Spouse.

(c) <u>No Adjustment of Benefits</u>. Effective April 1, 1974,
the monthly amount of the Joint Pension, once it has
become payable, shall not be increased if the marriage
of the Pensioner and his Spouse is subsequently legally
terminated or if the Spouse predeceases the Pensioner.
Notwithstanding the preceding sentence, a Pensioner
shall be allowed to change his pension election once
only, provided that the Pension meets all of the
following requirements:

     i)    The Pensioner was required to take mandatory
           distributions under section 7.05(f) of this
           Plan;
     ii)   The Pensioner continued to work in covered
           employment while receiving the mandatory
           distributions; and
     iii)  The Pensioner makes a new election at the
           time he terminates from covered employment.

The new election shall be final and binding on the
Pensioner and the Plan.

(d) <u>Waiver of the Joint Pension</u>. Effective January 1,
1985, the following spousal consent requirements shall
apply:

    (1) <u>Election Not to Receive Joint Pension Option</u>. A
married Participant and lawful Spouse may elect
<u>not</u> to receive the Joint Pension (see
subsection (2) below) during a ninety (90) day
period ending on the Participant's annuity
starting date (as defined in ERISA Section
201(h)(2)) by filing a written waiver of such
joint pension option with the Fund Manager on such
forms or in the manner as the Board of Trustees
requires. The Participant may revoke any previous
waiver, election, or revocation of a waiver up to
said Participant's retirement date.

    (2) <u>Spousal Consent</u>. An election by a married
Participant not to receive a Joint Pension is
effective only if the Participant's lawful Spouse
consents to such election in writing on a form to
be provided by the Plan and such election is

44

witnessed by a Plan representative or notary public.

Both the married Participant and Spouse electing not to receive the Joint Pension shall receive and acknowledge in writing that they have received a written explanation of the terms and conditions of the Joint Pension; the Participant's right to make, and the effect of an election to waive, the Joint Pension form of benefit; the rights of the Participant's Spouse; and the right to make, and the effect of, a revocation of an election.    A Participant's pension application may be delayed until said Participant and Spouse have submitted the documents required herein and any other documentation required by the Plan or the Board of Trustees.

(3)    <u>Limited Exceptions -- No Spousal Consent Required</u>. Spousal consent shall not be required if the Participant establishes to the satisfaction of the Board of Trustees that the consent required by the Spouse cannot be obtained because there is no Spouse or the Spouse cannot be located or because of other unusual circumstances. Spousal consent shall also not be required as allowed by federal law, court decisions, or regulations.

(4)    <u>Limited Effect of Spousal Consent/Spouse Determination</u>. A consent by a Spouse is effective only with respect to that Spouse, and a determination that the consent of a Spouse cannot be obtained is also effective only with respect to that Spouse.

(e)    <u>Joint Pension for Disabled, Married Participants</u>. Effective April 1, 1987, the Joint Pension shall be payable to a married Participant receiving a disability retirement benefit pursuant to Sections 4.06 and 4.09 above upon the first day of the month following the date said Participant attains age 65, unless such Participant and his lawful Spouse waive such Joint Pension in the manner set forth above in subsection (d).

<u>Section 6.02 - Pre-Retirement Survivor Annuity</u>.

(a)    <u>Participant's Death Before Attainment of Age 62</u>. Effective August 23, 1984, if a married Participant who earned an hour or more of Covered Employment on or after April 1, 1976, who was alive on August 23, 1984, and who had not begun receiving an annuity dies before

45

**EXHIBIT R**

LEONARD CARDER, LLP

VICTORIA CHIN
LYNN ROSSMAN FARIS
ERIC M. FINK
SHAWN GROFF
KATE R. HALLWARD
CHRISTINE S. HWANG
ARTHUR A. KRANTZ
DANIELLE LUCIDO
PHILIP C. MONRAD
ELEANOR I. MORTON
ROBERT REMAR
MARGOT A. ROSENBERG
BETH A. ROSS
MATTHEW D. ROSS
JACOB F. RUKEYSER
PETER W. SALTZMAN
FRANCISCO UGARTE
RICHARD ZUCKERMAN

PLEASE REFER TO OUR FILE NO.
                              124-127

ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612

TELEPHONE: (510) 272-0169
FAX (510) 272-0174
www.leonardcarder.com

NORMAN LEONARD
(1914 - 2006)

OF COUNSEL

WILLIAM H. CARDER
SANFORD N. NATHAN
KIRSTEN L. ZERGER

SAN FRANCISCO OFFICE
1188 FRANKLIN STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA 94109
TELEPHONE: (415) 771-6400
FAX: (415) 771-7010

May 11, 2007

**VIA UPS INTERNATIONAL**

Juanita E. Suguitan
2509 La Union
Gonzales, Tubao
Philippines 601

RE:   **Appeals Related to your Late Husband, Pedro T. Suguitan**

Dear Ms. Suguitan:

Please be advised that the Plan Office is in receipt of your April 12, 2007 letter in regards to your prior appeal of the San Francisco Culinary, Bartenders & Service Employee Pension Plan's denial of any survivor benefits related to the accrued pension benefit of Pedro Suguitan, your late husband.

As outlined in the Plan Office's December 7, 2006,  February 5, 2007 and April 5, 2007 correspondence to you, your appeal was given a full and fair review by the Board of Trustees at their recent meeting.  Unfortunately, the Board of Trustees denied your appeal request.

As outlined in the Plan Office's December 7, 2006, February 5, 2007 and April 5, 2007 letters, because you were not married to your husband at the time of his retirement (or during the accrual of his benefit in the Plan), you could not, based upon the Plan document and applicable federal law, be the "surviving spouse" for purposes of his pension benefits from the Pension Plan.

With respect to your February 21, 2007 letter, which is titled as a 'Civil Complaint,' the San Francisco Culinary, Bartenders and Service Employees Pension Fund ("Fund") denies all of the claims set forth in such letter.  Furthermore, your "Civil Complaint" has not been properly served upon the Fund.

Specifically, the Fund denies that it denied any claim for benefits related to John E. Suguitan or derived from a 'Family Protection Plan' of your late member/husband Pedro T. Suguitan.  Furthermore, the Fund denies that John E. Suguitan is entitled to any benefit from the Fund.

LEONARD CARDER, LLP

*Juanita E. Suguitan*
*May 11, 2007*
*Page 2*

The Fund's policies are not one-sided or unconstitutional, do not deprive employees of their rights and are applied in accordance with the applicable collective bargaining agreements. Moreover, the Fund did not violate Section 502(a) of the Employee Retirement Income Security Act of 1974. Your February 21, 2007 letter (which titled a "Civil Complaint") is not a matter of national public interest and the Fund's denial of your claim is not detrimental to the rights of all workers and employees of the United States of America. Moreover, the Fund denies that you are entitled to the sum of $1,000,000.00 as you have not been damaged by the Fund's actions in any manner.

The Fund's decision to deny your appeal, which was communicated to you in the Plan Office's December 7, 2006 letter, is the Board of Trustee's final and binding decision. <u>You have exhausted all of your appeal rights within the Plan.</u> You are, however, free to pursue your right to file a lawsuit in federal court, pursuant to Section 502 (a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), with regards to your claim for survivor benefits. A copy of Section 7.04 of the Plan Document/Summary Plan Description, which is entitled "Right of Appeal and Determination of Disputes," is enclosed for your review and records.

Furthermore, the request for a "pure settlement" in your April 12, 2007 letter, is also hereby denied. There is absolutely no basis for your requests and, therefore, the Fund will not provide you with <u>any</u> settlement in this matter.

Very truly yours,
**LEONARD CARDER, LLP**

By: _____
     Shawn C. Groff

Enclosures
cc:    John E. Suguitan (via UPS Internat'l.)
       Joel M. Simon, Esq.
       Board of Trustees
       Kirsten Brooks

# ARTICLE 7 - APPLICATIONS, BENEFIT PAYMENTS, AND RETIREMENT

Section 7.01 - Applications and Payment.

(a) Any claim to pension benefits, including Normal Retirement, Early Retirement, Pre-Retirement Survivor Annuity and Disability Retirement Benefits, or claims under the Plan or against the Fund shall be made on a form and in a manner prescribed by the Trustees.

Normal Retirement Pension Benefit (Sections 4.02 and 4.03), shall be payable commencing as of the first day of the month following the month in which the Participant fulfills all the conditions of entitlement to benefits. Early Retirement Pension Benefit provided for in Sections 4.04 and 4.05 and the Pre-Retirement Survivor Annuity provided for in Section 6.02, shall be payable commencing as of the first day of the month following the month in which the Participant or his Spouse fulfills all the conditions of entitlement to benefit and files an application for such benefits. The dates stated herein applicable to Normal Benefits, The Early Retirement, and Pre-Retirement Survivor Annuity shall be the Effective Date of Pension as that term is used in the Plan. Disability Retirement Benefits provided for in Sections 4.06 to 4.08 shall be payable in accordance with the provisions of Section 4.09.

(b) Payment of benefits to a Participant who is entitled to a Normal Pension Benefit under the provisions of the Plan effective and payable on the date referred to in Section 7.01(a), shall be made and distributed no later than the 60th day after the latest of the close of the Plan Year in which:

(1) the Participant attains the age of 65;

(2) the Participant terminates his service with his last Covered Employer;

(3) the Participant has either reached (a) the tenth (10th) or the fifth (5th) anniversary of the year in which the Participant commenced Participation in the Plan whichever is applicable under Sections 1.12 and 4.02, without an intervening Permanent Break-in-Service, or (b) the Participant has attained ten (10) years of Vesting Service without an intervening Permanent break-in-Service.

(4) A Participant with at least one hour of service on or after April 1, 1989 employed by a Union or an Association or who is employed with a contributing employer or who is employed with a collective bargaining agreement who has either reached (a) the tenth (10th) anniversary of the year in which the Participant commenced Participation in the Plan without an intervening Permanent Break-in-Service; or (b) fifth (5th) anniversary of Participation in year in which the Participant commenced Participation in the Plan whichever is applicable under Sections 1.12 and 4.02, without an intervening Permanent Break-in-Service, or (c) the Participant has attained five (5) years of Vesting Service without an intervening Permanent Break-in-Service.

At the option of the Board of Trustees, said benefit payments or distributions shall include a lump sum equal to any unpaid benefits accruing from the Effective

32

Date of Pension (see Section 7.01(a)), or monthly payments actuarially increased to take into account any delay between the Effective Date of Pension and commencement of benefit payments or distributions.

Notwithstanding the foregoing, if a Participant has received a distribution of his vested benefit under Section 7.07(a), below, and such benefit has not been restored under Section 7.07(b), below, than no additional benefit shall be payable under this section.

Section 7.02 - Information Required. Each Participant, Beneficiary, Pensioner, or any other claimant shall furnish to the Board of Trustees any information or proof requested by it and reasonably required to administer the Pension Plan. Failure on the part of any Participant, Pensioner, or claimant to comply with such request promptly, completely, and in good faith shall be sufficient grounds for denying, suspending, or discontinuing benefits to such person. If a Participant, Beneficiary, Pensioner, or other claimant makes a false statement material to his claim, the Board of Trustees shall recoup, offset, or recover the amount of any payments made in reliance on such false statement in excess of the amount to which such Participant or Pensioner or other claimant was rightfully entitled under the provisions of this Plan.

Section 7.03 - Action of Board of Trustees. The Board of Trustees shall, subject to the requirements of the law, be the sole judge of the standard of proof required in any case, and they shall have the discretionary authority to determine the eligibility for benefits of any Plan Participant and/or to construe the terms of this Plan and to apply and resolve the Pension Plan, and its decision of the dispute shall be final and binding on all parties, subject only to such judicial review as allowed by federal law.

Section 7.04 - Right of Appeal and Determination of Disputes.

(a) No Employee, Pensioner, or other Beneficiary or claimant shall have any right or claim to benefits under the Pension Plan, other than as specified herein. Any dispute as to eligibility, type, amount, or duration of benefits shall be resolved by the Board of Trustees under and pursuant to the Pension Plan, and its decision of the dispute shall be final and binding upon all parties thereto.

(b) Any person whose application for benefits under the Plan has been denied in whole or in part by the Board of Trustees, or whose claim to benefits is otherwise denied by the Board, shall be notified of such decision in writing by the Board of Trustees and may petition the Board to review the decision. A petition for review shall be in writing, shall state in clear and concise terms the reason or reasons for the disagreement with the decision of the Board of Trustees, and shall be filed with the Board of Trustees within 60 days after the date shown on the notice to petitioner of this decision. Upon good cause shown, the Board may permit the petition to be amended or supplemented. Except for good cause shown, the failure to file a petition for review within such 60-day period shall constitute a waiver of the claimant's right to review the decision on the basis of the information

33

and evidence submitted prior to the decision. Such failure will not, however, preclude the claimant from establishing eligibility for benefits at a later date based on additional information and evidence which was not available to the claimant at the time of the decision.

(c) The Board of Trustees shall have the discretionary authority to determine the eligibility or benefits of all Plan Participants and/or to construe the terms of the Plan. A decision of the Board of Trustees or petition for review shall be final and with respect to a parties, including the applicant or binding upon all pension claiming under the applicant and any provisions of this section shall apply and include any and every claim to benefits from the Fund and regard-or right asserted under the Plan or against the Fund regardless of the basis asserted for the hich the claim is less of whom the act or omission upon based occurred.

Section 7.05 – Benefit Payments Ge... rally. A Partici-part who is eligible to receive a pensio... ce with the rules Plan and makes application in accord... ions provided for of this Pension Plan shall be entitled... provided for the receive the monthly pension benefit... pouse (unless the remainder of his life and the life of... provisions of this joint Pension is waived), subject to... to benefits. (See Section 7.01.)

(d) If a Participant previously denie... f entitlement to additional Pension Credit, his increa... l pension, if any, will become effective retroactively to... Effective Date of Pension, i.e., first day of the month f... wing the month to the Participant fulfilled all the condi... ns of entitlement

(For purposes of applying the limitations of Internal Revenue Code ("IRC") Section 415, the term "compensation" includes:

A participant's earned income, wages, salaries, fees for personal service and other amounts received in the course of employment with an employer maintaining the plan (including, but not limited to, commissions, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips and bonuses). Compensation shall also include (and not include) income and funds received as provided in IRC Regulation Section 1.415-2(d).

Compensation for any limitation year is the compensation actually paid or includable in gross income during such year.

In determining whether the Plan meets the Internal Revenue Code maximum limitations on benefits, the maximum dollar and compensation limits are to be reduced where a participant begins to receive benefits under the Plan. The reduction is made by multiplying the applicable limitation by a fraction, the numerator of which is the limitations by a fraction, the numerator of which is the years of service as of, and including the current limitation years, and the denominator of which is ten (10).

If the benefit commences before a participant attains age sixty-two (62), the maximum permissible amount may not exceed the lesser of the actuarial equivalent of a $90,000 annual benefit beginning at age 62 or the Participant's highest average compensation. This actuarial adjustment shall not reduce the $90,000 limitation below $75,000 if the benefit begins at or after age 55.

Effective April 1, 1988, and each January 1 thereafter, the $90,000 limitation above will be automatically adjusted to the new dollar limitation determined by the Commissioner of Internal Revenue Service for that year. The new limit will apply to limitation years ending within the calendar year of the date of the adjustment.

(e) If any benefits are due and payable at the time of the Pensioner's or Beneficiary's death, such benefits shall be paid to the estate of the Pensioner or Beneficiary unless any other person is entitled to such benefits by law. Such payments must be made, except in the case of a surviving Spouse, within five (5) years of the death of the Participant.

(f) In the event that there are conflicting claims to a benefit payable under the terms of the Plan, the Board of Trustees may interplead the claimants by appropriate proceedings in a court of competent jurisdiction. In such event, the claimants shall submit their respective claims to the court in which the interpleader proceedings are pending.

Upon deposit with the court of the accrued benefits, the Board of Trustees shall be entitled to be dismissed from the interpleader proceedings and to payment of its costs in connection therewith, including reasonable attorney's fees. Thereafter, a final decision of the court in the proceedings shall bind all claimants to the benefit and shall

34

35

**EXHIBIT S**

Gonzales
mubao 2509
To Union
PHILIPPINES 601.

July 5, 2007

SHAWN C. GROFF
LEONARD CARDER, LLP
Attorneys
1330 Broadway, Suite 1450
Oakland, California 94612
U.S.A.

Re: Appeals Related to Pedro T. Suguitan

Dear Sir:

I have your letter of June 25, 2007 and the dispositive
portion thereof is you are requiring me to notify the Fund office
of our specific claim/s in writing, and with the instruction to
send it to the proper address you provided.

I am supposed to be very careful in complying because currently
my complaint against the Fund is pending before the District Court,
and perhaps, I maybe affected, but being one of the unrepresented
plaintiff, I discovered that I may not be placed in flaunting the
jurisdiction of the Court as I think that our complaint must be
construed liberally. United States v. Ubalde Consol. Indep. Sch. Dist.
625 F. 2d 547, 549 (5th Cir. 1980). This is especially true for a
Pro Se Complainant under Haines v. Kerner et.,al., 404 U.S. 519.
Anyway, I lean that it is not even necessary for me to request appro-
priate relief, properly categorize legal theories, or point to any
legal theory at all. Tell v. Caroll Touch, Inc. 377 F. 2d 1129, 1134
(7th Cir. 1992), therefore, I am safe to tell you our specific claim/s
which are the following:

   a) My accrued Childs and Educational Benefits since the time I
      was born on Feb. 12, 1979 up to the age of 23;

   b) My allowance for medical and basic needs;

   c) My fundamental right to derive the U.S. Citizenship of my
      late father member, Pedro T. Suguitan;

   d) The burial and funeral benefits of member and monthly pension
      of my mother, Juanita E. Suguitan since the time she was married
      to my father on January 27, 1983 up to present;

   e) The Union Voluntary Contributions of all the members of the
      company in accordance with the provision of the CBA;

   f) One lumpsum death gratuity from the Fund itself;

   g) Medicaid for both of us.

I hope that the Court may conduct a pre-trial conference for
Alternative Dispute Resolution, and if so required, I shall be ordered
to come to the U.S. to confer with the Fund representatives for any
amicable settlement.

Thank you that at long last our plight is given such great
importance, and rest assured that our complaint is limitted to our
interest alone without implicating outside forces for confidentiality
reasons.

Very truly yours,

JOHNNY/A. SIGUITMAN

PS    Kindly indorse this letter to the proper agency you
recommended where I shall submit this letter.

**EXHIBIT T**

LEONARD CARDER, LLP

VICTORIA CHIN
ALANNA D. COOPERSMITH
LYNN ROSSMAN FARIS
SHAWN GROFF
KATE R. HALLWARD
CHRISTINE S. HWANG
ARTHUR A. KRANTZ
DANIELLE LUCIDO
PHILIP C. MONRAD
ELEANOR I. MORTON
ROBERT REMAR
MARGOT A. ROSENBERG
BETH A. ROSS
MATTHEW D. ROSS
JACOB F. RUKEYSER
PETER W. SALTZMAN
PHIL A. THOMAS
FRANCISCO UGARTE
RICHARD ZUCKERMAN

ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CALIFORNIA 94612

TELEPHONE: (510) 272-0169
FAX (510) 272-0174
www.leonardcarder.com

NORMAN LEONARD
(1914 - 2006)

OF COUNSEL

WILLIAM H. CARDER
SANFORD N. NATHAN
KIRSTEN L. ZERGER

SAN FRANCISCO OFFICE
1188 FRANKLIN STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA 94109
TELEPHONE: (415) 771-6400
FAX: (415) 771-7010

July 25, 2007

124-127

PLEASE REFER TO OUR FILE NO.

**VIA UPS INTERNATIONAL**

John E. Suguitan
2509 La Union
Gonzales, Tubao
Philippines 601

RE:  **Claims Related to the San Francisco Culinary, Bartenders & Service
Employees Pension Fund**

Dear Mr. Suguitan:

Please be advised that I am in receipt of your July 5, 2007 letter regarding your alleged "claims" against the San Francisco Culinary, Bartenders & Service Employees Pension Fund ("Fund"). I will forward this "claim" to the Plan office for review and processing.

However, I did note that, in the second paragraph of your letter, you reference a "complaint against the Fund pending before the District Court". However, neither I nor the Plan Office is aware of any complaint which has been filed in any of the District Courts throughout the Federal court system. Specifically, the Fund has not been properly served with any time-stamped copy of a "Complaint" filed against it by you and/or Juanita Suguitan.

If you have a filed a complaint against the Fund with any U.S. District Court, or any other Court for that matter, please provide me with the name and location of such court and the case number assigned to such complaint and/or case.

If you have any questions please feel free to contact me.

Very truly yours,
**LEONARD CARDER, LLP**

Shawn C. Groff

cc:  Joel M. Simon, Esq.
Janet MacEachern
Kirsten Brooks

**EXHIBIT U**

Sept 07, 2007
~~October 1, 2007~~

124-127

**VIA UPS INTERNATIONAL**

John E. Suguitan
2509 La Union
Gonzales, Tubao
Philippines 601

     **RE:   Claims Related to Pedro T. Suguitan**

Dear Mr. Suguitan:

     Please be advised that the Plan Office for the San Francisco Culinary, Bartenders and Service Employees Pension Fund and the San Francisco Culinary, Bartenders & Service Employees Welfare Fund (hereinafter referred to as "Funds") is in receipt of a copy of your July 5, 2007 letter to Attorney Shawn C. Groff regarding your "alleged claims" which appear to be against the Funds. This letter should have been sent by you to the Plan office, as indicated in Mr. Groff's June 25, 2007 letter to you.

     With respect to the allegations/claims in your July 5, 2007 letter, the Funds hereby deny each and every claim set forth in your letter. Specifically, the Funds assert as follows:

    1)    You are not entitled to any "Childs and Educational Benefits" from the Funds. In fact, no such benefits are provided by the Funds;

    2)    You are not entitled to any "allowance for medical and basic needs" from the Funds. In fact, such an allowance is not provided by the Funds;

    3)    You are not entitled to any "U.S. Citizenship rights" from the Funds. In fact, no such rights are provided by the Funds;

    4)    You are not entitled to "burial and funeral benefits" from the Funds as such benefits are not provided by the Funds;

    5)    You are not entitled to any "monthly pension" benefits of Juanita E. Suguitan from the Funds as she is not entitled to any pension benefits from the San

*John E. Suguitan*
*September 26, 2007*
*Page 2*

Francisco Culinary, Bartenders and Service Employees Pension Fund[1];

6)      It is not clear what you are requesting in your claim for "the Union Voluntary Contributions of all members of the company in accordance with the provision of the CBA. In any event, you are not entitled to "the Union Voluntary Contributions of all members of the company" from the Funds. Such "contributions" are not benefits provided by the Funds;

7)      You are not entitled to "one lumpsum death gratuity" from the Funds as such a

---

[1] As outlined in Part I, Section 23 (r) of the Plan Document/Summary Plan Description (a copy of which is attached hereto), "If you are married <u>on the date of Normal or Early Retirement</u>, you will receive a 50 percent Joint and Survivor benefit unless you and your Spouse elect in writing not to receive such benefit." See also, Section 6.01 of the Plan Document/Summary Plan Description, a copy of which is attached hereto. Based upon such provisions, Pedro T. Suguitan's spouse at the time of his retirement would be the <u>only</u> individual entitled to such "surviving spouse" benefits from the Plan. Indeed Pedro T. Suguitan, and his spouse <u>at the time of his retirement</u> (which was someone other than Juanita E. Suguitan), elected to not receive, and thereby waived, their right to receive his pension benefit in such benefit form.

As outlined in the Plan Office's December 7, 2006 and February 5, 2007 letters to Juanita E. Suguitan, because Juanita E. Suguitan was not married to Pedro T. Suguitan at the time of his retirement (or during the accrual of his benefit in the Plan), Juanita E. Suguitan could <u>not</u>, based upon the Plan document and applicable federal law, be the "surviving spouse" for purposes of his pension benefits from the Pension Plan.

*John E. Suguitan*
*September 26, 2007*
*Page 3*

gratuity is not provided b y the Funds; and

8)    You are not entitled to "Medicaid" from the Funds. Medicaid benefits are not provided by the Funds and such benefits are benefits provided by a governmental entity.

Moreover, the Funds deny that you are entitled to <u>any</u> benefit or payment from either Fund.

Please note that the Funds have never received documentary evidence of any familial or legal relationship between you and Pedro T. Suguitan. Accordingly, even if you were entitled to any benefit from the Funds no such benefits could be paid due to the lack of any evidence presented to the Funds, or the Plan office, of any such relationship between you and Pedro T. Suguitan.

<u>This letter shall constitute a full and complete denial of all of your claims</u>. **You are free to appeal this denial of your claim and entitlement to any benefit to the Board of Trustees.** A copy of Section 7.04 of the Plan Document/Summary Plan Description, which is entitled "Right of Appeal and Determination of Disputes," is enclosed for your review and records.

**Any such appeal should be addressed to: San Francisco Culinary Bartenders & Service Employees Pension and Health and Welfare Trust Funds, P.O. Box 24514, Oakland, CA 94623.**

If you have any questions please feel free to contact our office.

Very truly yours,

Janet MacEachern

Cc: Shawn C. Groff, Esq.
    Joel M. Simon, Esq.
    Board of Trustees
    Kirsten Brooks

**EXHIBIT V**

UNITED OF OMAHA LIFE INSURANCE COMPANY
8-GROUP LIFE CLAIMS
3300 MUTUAL OF OMAHA PLAZA
OMAHA, NE 68175-0000
1-800-775-8805
FAX# 402-351-8565



January 7, 2008


ATTN: HUMAN RESOURCES
SAN FRANCISCO CULINARY BARTENDERS
& SERVICE EMPLOYEES WELFARE FUND
642 HARRISON ST
SAN FRANCISCO CA 94107

Claim No GL: 10019959
Group Policy No: GLUG-21Y8
Re: Pedro Suguitan

Dear Sir or Madam:

I am writing in response to your recent phone call regarding life insurance benefits, on behalf of
Pedro Suguitan, under the above group policy.

According to our records, benefits in the amount of $2,000.00 were paid to Juanita Suguitan on
March 24, 1998.

If you should have any questions, please contact me at the address on this letterhead or toll free
at 1-800-775-8805.

Sincerely,


Darlene Wiebelhaus
Group Life Claims